IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC. | Case No. 10 C 715 (Consolidated with: 10 C 716, 10 C 718, 10 C 720, 10 C 721, 10 C 726, 10 C 882, 10 C 883, 10 C 884 10 C 885, 10 C 929, 10 C 931) |
| Plaintiff, | |
| v. | |
| BCG PARTNERS, INC. | |
| Defendant. | Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Trading Technologies, International, Inc. ("TT") filed this case alleging defendants BGC Partners, Inc. ("BGCP"), Cantor Fitzgerald, L.P. ("Cantor") BGC Holdings, L.P. ("BGCH"), and BGC Partners, L.P. ("BGC U.S.") (together, the "BGC Defendants") infringed on certain patents held by TT relating to computer-based tools for trading on exchanges, including the eSpeed software. The BGC Defendants have moved to dismiss for lack of personal jurisdiction and for improper venue (Doc. 46), asserting they are holding companies with insufficient contacts with Illinois, not the operating subsidiaries selling the software allegedly infringing on TT's patents. TT asserts personal jurisdiction is proper in Illinois and if it has not met its prima facie burden, that it should be granted leave to take jurisdictional discovery. (*See* Doc. 53.) For the reasons set forth below, the Court denies the BGC Defendants' motion without prejudice and grants TT's motion for leave to take limited jurisdictional discovery and file an amended complaint in accordance with this opinion.

## I. Jurisdictional Facts

### A. Jurisdictional Allegations in TT's Complaint

In its complaint, TT alleges that Cantor controls BGCP, that BGCP controls and manages BGCH, and that BGCH controls and manages BCG U.S. (Doc. 34, Second Amend. Compl. ¶¶ 2-11.) As a result, BGC controls and manages BGC U.S. through its control of BGCH, and Cantor controls and manages BGC U.S. through its control of BGC. (*Id.* at ¶¶ 12-13.)

### B. Lampert Declaration

In support of its motion to dismiss, the BGC Defendants submitted the declaration of Michael Lampert, who holds various in house legal positions with all four BGC Defendants. (Lampert Dec. ¶ 1.) Lampert states that BGCP, BGCH and BGC U.S. are all holding companies that exist to own other companies, not to produce anything or provide any service. (*Id.* ¶ 3.) BGCP, BGCH and BGC U.S. were created in order to effectuate a merger between eSpeed, Inc. ("eSpeed"), a publicly traded corporation, and an LLC owned by Cantor. (*Id.*) The multiple holding companies were required to "recogniz[e] the equity and voting interests of the various classes of stockowners and partners of [eSpeed and the LLC]." (*Id.* ¶ 11.) After the merger, Cantor owns a majority stake in BGCP, which in turn owns a controlling interest in BGCH and a limited interest in BGC U.S. (*Id.* ¶ 10 Chart.) Cantor also owns a limited partnership stake in BGCH. (*Id.*) BGCH owns the controlling interest in BGC U.S. (*Id.*) BGC U.S. is a holding company created to hold all of BCGP's domestic operating subsidiaries under a single umbrella. (*Id.* ¶ 14.) BGCH is an intermediate holding company that exists to preserve certain partnership interests and allocate a portion of profits and losses of the operating businesses to Cantor. (*Id.* ¶ 13.) Cantor does not operate any of the electronic trading businesses relevant to TT's complaint. (*Id.* ¶ 15.) Each of the BGC Defendants is organized

under Delaware law, has its principal place of business in New York, and is not qualified to do business as a foreign corporation in Illinois. (*Id.* ¶¶ 16-17.) Further, none of the BGC Defendants "has a regional office in this district, regularly conducts business in this district, provides trading software for use with exchanges in this district, or has committed any acts in this district, of infringement or otherwise." (*Id.* ¶ 18.) Rather, "all operating business are held in companies further down the organizational chart" from the BGC Defendants. (*Id.* ¶ 11.)

### C. TT's Evidence of Personal Jurisdiction

In response to the BGC Defendants' motion to dismiss, TT submitted the following evidence.[1] First, TT points to various securities filings by BGCP. These securities filings describe BGCP "together with its subsidiaries." (*See e.g.*, Doc. 52-2 at 9[2].) BGCP's securities filings refer to BGC U.S. as an "operating subsidiar[y]" or as an "operating partnership[]." (*See* Doc. 47-1 at 74, Doc. 34-2 at 29.) In BGCP's 2009 10-K, BGCP states that the corporate structure "entitle[s] [BGCH] (and thereby [BGCP]) to control . . . BGC U.S.," and that "[u]nder the [BGCH] limited partnership agreement we [BGCP], as the [BGCH] general partner, manage the business and affairs of [BGCH]." (Doc. 52-2 at 33.) The same 10-K states that "Cantor[3] will continue to exercise control over our management and affairs and all matters requiring stockholder approval . . . ." (*Id.* at 228.) The BCG U.S. partnership agreement states that "the management and control of this

---

[1] The Court will take judicial notice of the publicly available securities filings and websites cited by the parties. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (finding a court may take judicial notice of public record documents without converting motion to dismiss into motion for summary judgment).

[2] For clarity the Court uses the page numbers in the filing headers.

[3] The 10-K defines "Cantor" as "Cantor Fitzgerald, L.P. and its affiliates." (Doc. 52-2 at 7.)

3

business and affairs of [BCG U.S.] shall be vested solely in, and directed and exercised solely by, the General Partner [BGCH]." (Doc. 32-7, at 15.)

BGCP's securities filings and the website www.bgcpartners.com ("the BGC website"), show office space occupied by BGCP or one of its subsidiaries in Chicago. (*See* Doc. 52-2 at 9, 271.) The BGC website further states that the office space in Chicago was a former eSpeed sales office. (*Id.* at 271.) An affidavit submitted by TT states that BGCP is listed as the tenant in the office space in Chicago and that a reverse-telephone directory indicates that BGCP is the owner of the telephone number listed for that Chicago office space. (*Id.* at 275-76.) The BGC website also lists a Chicago employee as a sales contact for eSpeed services and software, which is at issue in this case, and that "BCG's Ecco software business is also based in Chicago." (*Id.* at 288.) The website associated with Cantor, www.cantor.com ("the Cantor website"), lists Chicago office space in the same location as the BGC website. (*Id.* at 291.) TT also points out a job listing on the Cantor website for a job in the "Chicago Office" selling "eSpeed" software. (*Id.* at 296.)

## II.   Personal Jurisdiction Tests and Standard of Review

To determine whether the Court has personal jurisdiction over a nonresident defendant in a patent case, it applies the law of the federal circuit rather than that of the regional circuit in which it arises. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001); *MacLean-Fogg Co. v. Edge Composites, LLC*, No. 08 C 6367, 2009 WL 1010426, at *4 (N.D. Ill April 14, 2009). The Court may exercise personal jurisdiction over a defendant in a patent infringement case if two requirements are met: (1) jurisdiction must exist under Illinois' long-arm statute and (2) jurisdiction must be consistent with the limitation of the due process clause. *See Trintec Indus. v. Pedre Promotional Prods. Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). The Illinois long-arm statute is

coextensive with federal due process requirements and therefore the two-step inquiry collapses into one: whether the exercise of personal jurisdiction over the defendants comports with constitutional due process. *See* 735 ILCS 5/2-209(c); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

Personal jurisdiction is proper under constitutional due process only when the defendant has "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Under the "minimum contacts" test, a defendant may be subject to either general or specific jurisdiction. *See LSI Indus. Inc., v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). For general jurisdiction, a defendant must have "continuous and systematic" contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Autogenomics, Inc. v. Oxford Gene Tech.*, Ltd., 566 F.3d 1012, 1017 (Fed. Cir. 2009). For specific jurisdiction, the Federal Circuit has established a three-prong test that must be satisfied: (1) whether the defendant purposely directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *See Holly Anne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307-08 (Fed. Cir. 1999).

"Where the district court's disposition as to the personal disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *See Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). "In the procedural posture of a motion to dismiss a district court must accept the

uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

As jurisdictional discovery is not unique to patent law, the Court applies Seventh Circuit precedent to determine whether the plaintiff is entitled to jurisdictional discovery. *See Patent Rights Protection Grp., LLC v. Video Gamin Tech., Inc.,* 603 F.3d 1364, 1371 (Fed. Cir. 2010) (citing *Autogenomics*, 566 F.3d at 1021-22 and applying regional circuit precedent to review whether district court abused its discretion in denying the plaintiff's request for jurisdictional discovery). "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *C. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2003). Generally, jurisdictional discovery is justified if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdictional issue. *See The Ticketserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (noting the "standard is low, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction.")

**III. Discussion**

TT, which has the burden, asserts three different grounds for personal jurisdiction over the BGC Defendants in Illinois. First, TT asserts that the BGC Defendants have office space or employees in Illinois, which would subject them to general personal jurisdiction here. Second, TT argues BGC Defendants, even if holding companies, control their subsidiaries operating in Illinois, and consequently the subsidiary's contacts with Illinois or presence in Illinois should be imputed to the BGC Defendants. Finally, TT claims that BGCP has inherited eSpeed's jurisdictional contacts

6

as eSpeed's successor. The Court addresses the first and third grounds together first, and then turns to the second ground.

The BGC and Cantor websites list eSpeed's former space in Chicago as an office location. It is not clear whether that office space has employees working for Cantor, BGCP, BGCH, BGC U.S., one of BGC U.S.' operating subsidiaries or some combination of entities, but it is clear that some member(s) of the Cantor/BGC corporate family is subject to general jurisdiction in Illinois.[4] *See Helicopteros*, 466 U.S. at 414-15 (1984) (noting that having an office in a state is an example of "continuous and systematic" contacts supporting general jurisdiction). Though the Lampert Declaration states that BGCP has no offices in Illinois, the website and TT's other evidence suggest otherwise, and TT receives the benefit of all factual doubts. Further, from a specific jurisdiction standpoint, TT has presented evidence that one or more of the Cantor/BGC entities is purposefully availing itself of Illinois by selling the allegedly infringing software out of that Chicago office, or, making a reasonable inference, marketing it to players in Chicago's active options and futures trading market. *See Patent Rights*, 603 F.3d at 1372 (allowing jurisdictional discovery and noting that "it was simply unrealistic to contend" that a gaming company would go to a tradeshow in Las Vegas, "one of the world's larger gaming markets, . . . without some prospect of commercial benefit."); *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232-33 (Fed. Cir. 2010) (finding that a defendant purposefully availed itself of the forum by selling the allegedly infringing software there).

---

[4]Because one or more of the BGC/Cantor entities took over eSpeed's office in Chicago, that BGC/Cantor entity would be subject to general jurisdiction on account of its own presence. For the purposes of granting leave to TT to take jurisdictional discovery, the Court does not need to impute that eSpeed presence to the resident BGC/Cantor entity or entities.

Turning to the issue of imputing contacts to holding companies, the Court notes that Federal Circuit precedent analyzing the contacts of holding companies does not require veil piercing and is looser than the tests applied by the authority cited by the BGC Defendants. In *Abbyy Software*, one of the defendants argued it was simply a holding company that "neither imports nor sells goods in [the forum state] or elsewhere." *Id.* at. 1235. The Federal Circuit reversed the district court's dismissal for lack of personal jurisdiction and granted jurisdictional discovery, explaining that the holding company in that case was "more than a holding company" because the branded website presented the corporate family as "a single company" with offices in many different locations and overlapping management teams. *See id.* (citing with approval *Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 08-098, 2009 WL 361069, at *1-2 (E.D. Tex. Feb. 10, 2009) and explaining that *Cardsoft* also found that enjoying the revenues from the sales of allegedly infringing products subjected a holding company to personal jurisdiction); *see also Dianippon Screen Mfg. Co., Ltd. v. DNS Elec., LLC*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (finding holding company created to hold intellectual property was subject to personal jurisdiction because it received royalties from its sister company to make products allegedly infringing on the patent-in-suit and the sister company had sales agents in the forum to market the products). Ultimately, the Federal Circuit granted leave for jurisdictional discovery to allow the plaintiff the opportunity to establish which company was selling the product. *Abbyy Software*, 626 F.3d at 1235. The facts here are very similar to *Abbyy Software*. The BGC and Cantor websites present unified companies and list several common executives. Indeed, Lampert holds senior positions with all four BGC Defendants. Further, BGCP's public securities filings state that BGCP has control over BGCH, and BGCH has control over BGC U.S. The Lampert Declaration states that this web of holding companies exists so that "the profits and losses of the

operating businesses are allocated properly to the divergent stakeholders." (Lampert Dec. ¶ 11.) Like in *Abbyy Software*, it is unclear which entity or entities is selling the allegedly infringing products, but it is reasonable to infer that one or more of the BGC Defendants, through the holding company structure, are receiving the benefits of the sales of such products. This evidence is more than "colorable" and is sufficient to justify jurisdictional discovery. *See Reimer*, 230 F.3d at 946.

**IV. Conclusion**

For the foregoing reasons, TT is entitled to jurisdictional discovery to identify which Cantor/BGC entity or entities is subject to personal jurisdiction in Illinois. The BGC Defendants' motion to dismiss for lack of personal jurisdiction and improper venue (Doc. 46) is denied without prejudice. The Court will allow TT to take the following limited jurisdictional discovery to oppose any further motions to dismiss for lack of personal jurisdiction according to the following schedule. TT has until April 6, 2011 to serve a single Rule 30(b)(6) deposition notice on the BGC Defendants, collectively. By April 13, 2011, the BGC Defendants shall designate the individual(s) to sit for the Rule 30(b)(6) deposition, and by April 29, 2011, TT shall take that deposition. By May 11, 2011, TT shall file an amended complaint naming the entities that, based on the Rule 30(b)(6) deposition or any other evidence it has gathered, it has a good faith basis to believe (1) have infringed on its patents and (2) are subject to personal jurisdiction in Illinois. By May 31, 2011, the parties named in TT's new complaint will answer or otherwise plead. Any responses by TT to any motions to dismiss for lack of personal jurisdiction will be filed by June 10, 2011 and any replies in support of such motions are due by June 17, 2011.

As the Court noted above, as a practical matter one or more of the Cantor/BGC entities is going to be subject to general jurisdiction in Illinois or involved in the sale or marketing of the

allegedly infringing software or services in Illinois. In allowing jurisdictional discovery, the Court suggests it should be superfluous and encourages the parties to work out among themselves, prior to the deadline for TT's new complaint, which Cantor/BGC entities are subject to personal jurisdiction in Illinois.

```
_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois
```

Date: March 28, 2011