UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Trading Technologies, International, Inc., | |
| | Case No. 10 C 715 |
| Plaintiff, | (Consolidated from 10 C 715, 10 C 716, 10 C 718, 10 C 720, 10 C 721, 10 C 726, |
| v. | 10 C 882, 10 C 883, 10 C 884, 10 C 885, 10 C 929, 10 C 931) |
| BGC Partners, Inc.; Cantor Fitzgerald, L.P.; BGC Holdings, L.P.; BGC Partners, L.P.; SunGard Data Systems, Inc.; SunGard Investment Ventures, LLC; GL Trade Americas, Inc.; CQG, Inc.; CQGT, LLC; FuturePath Trading, LLC; IBG, LLC; Interactive Brokers Group, Inc.; IBG Holdings LLC; Interactive Brokers LLC; Cunningham Commodities, LLC, Stellar Trading Systems, Ltd.; Stellar Trading Systems, Inc.; thinkorswim Group, Inc.; TD AMERITRADE, Inc.; TD AMERITRADE Holding Corp.; TradeStation Securities, Inc.; TradeStation Group, Inc.; Open E Cry, LLC; optionsXpress Holdings, Inc.; Rosenthal Collins Group, LLC; and Tradehelm, Inc., | District Judge Virginia M. Kendall  Magistrate Judge Sidney I. Schenkier |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International, Inc. ("TT") has sixteen cases pending in the Northern District of Illinois alleging patent infringement, four of which were filed in 2005 and the rest of which were filed in 2010. Discovery in the 2005 cases is governed by a protective order entered by Judge James Moran on August 7, 2006 ("2006 PO"). On January 18, 2011, this Court denied a motion to modify the 2006 PO in two of the 2005 cases which had been consolidated because there was not good cause to change the 2006 PO. *See Trading Techs. Int'l, Inc. v. GL*

*Consultants*, Nos. 05 C 4120, 05 C 5164, 2011 WL 148252, at *1 (N.D. Ill. Jan. 18, 2011). In this Court's judgment, the 2006 PO has been functioning acceptably well in those cases, facilitating discovery and protecting the parties' legitimate interests.

On February 3, 2011, Judge Kendall consolidated the twelve 2010 cases (*see* doc. # 70: 2/3/2011 Order). Several of the defendants in the 2005 cases are also defendants in the 2010 consolidated case. On March 29, 2011, the Executive Committee referred all pending motions for a protective order ("PO") in the 2010 consolidated action to this Court pursuant to Local Rule 72.1, to conduct hearings and enter appropriate orders (docs. ## 142, 143). The following motions are pending before this Court: (1) Motion for Entry of Collective Protective Order by TT (doc. # 104); (2) Motion for Protective Order by defendant FuturePath (doc. # 91); (3) Motion for Entry of Protective Order by defendants thinkorswim Group, Inc., TD AMERITRADE, Inc., TD AMERITRADE Holding Corp., IBG LLC, Interactive Brokers LLC, TradeStation Group, Inc., TradeStation Securities, Inc., CQG, Inc. CQGT, LLC, Stellar Trading Systems, Ltd., Stellar Trading Systems, Inc., Open E Cry, LLC, and optionsXpress Holdings, Inc. (collectively, "thinkorswim defendants") (doc. # 98);[1] (4) Motion for Entry of Protective Order by defendants SunGard Data Systems, Inc., SunGard Investment Ventures LLC (collectively, "SunGard"), and GL Trade Americas, Inc. ("GL") (collectively, "SunGard defendants") (doc. # 53 (Case No. 10 C 716));[2] and (5) TT's Combined Cross-Motion for Entry of the Same Protective Order Governing Related Actions (doc. # 79 (Case No. 10 C 716)). In addition, defendants BGC Partners, Inc., Cantor Fitzgerald, L.P.,

---

[1] This motion is identical to the motion listed at docket entry # 94, except that the later docket entry includes the additional defendants Open E Cry, LLC, and optionsXpress Holdings, Inc.

[2] The protective order briefing involving the SunGard defendants was completed in Case Number 10 C 716 before it was consolidated with the above-captioned cases.

2

BGC Holdings L.P., and BGC Partners, L.P. (collectively, "BGC defendants") have submitted a "Statement" discussing their views of which PO should govern the consolidated action (doc. # 102).

I.

Under Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). We apply Federal Circuit law to decide these motions because they involve the question of whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution. *See Trading Techs.*, 2011 WL 148252, at *1 (citing *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010)). To establish good cause under Rule 26(c), the moving party must present a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981). The district court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *Deutsche Bank*, 605 F.3d at 1380.

The parties all agree that some form of protective order is necessary, and we concur. In their various motions, however, the parties dispute what provisions the protective order should include. For its part, TT seeks entry of the 2006 PO that has governed discovery in the 2005 cases. Other parties seek various terms that differ from those in the 2006 PO.

The arguments in the SunGard defendants' motion for protective order track their motion to modify the 2006 PO, which this Court denied on January 18, 2011. *Trading Techs.*, 2011 WL 148252, at *1. The SunGard defendants' proposed protective order seeks to: (1) preclude TT's in-house counsel and Executive Vice President of Intellectual Property, Steven Borsand, from having

access to any information defendants designate "Highly Confidential"; (2) broaden the definition of "Primary Responsibility for the Preparation and Prosecution of Patent Applications"; (3) broaden the definition of "Related to the Subject Matter of the Patents-In-Suit"; and (4) create a fourth tier of confidentiality (in addition to "Confidential," "Highly Confidential - Attorneys' Eyes Only," and "Highly Confidential - Patent Prosecution") for source code — "Highly Confidential - Attorneys' Eyes Only - Source Code" — which would establish numerous additional restrictions on a party's ability to review source code information (doc. # 55 (10 C 716): SunGard Defs.' Mem. in Supp. of Mot. for Protective Order at 2-5).

The thinkorswim defendants' proposed protective order adopts the SunGard defendants' proposed protective order as to the first three issues (doc. # 101: thinkorswim Defs.' Mem. in Support of Mot. for Protective Order at 2). The thinkorswim defendants also seek to create a fourth tier of confidentiality for source code; however, their proposal for additional restrictions in producing source code differs from that proposed by the SunGard defendants (*Id.* at 2-3). In addition, the thinkorswim defendants propose a provision not sought by the SunGard defendants: a provision that would prohibit the sharing of one defendant's confidential information with other defendants (*Id.* at 6).

The BGC defendants "are in general agreement" with the thinkorswim defendants' proposed protective order (doc. # 102: BGC's Statement at 1). However, these defendants seek to designate three in-house attorneys rather than one – as proposed by the thinkorswim defendants – to receive "Confidential" information (*Id.* at 1-2; Ex. A, BGC Defs.' Proposed PO at 4).

FuturePath's motion adopts the SunGard defendants' motion for protective order in its entirety (doc. # 91: FuturePath's Mot. at 1-2). In addition, FuturePath contests the prohibition

4

proposed by the thinkorswim defendants on the sharing of one defendant's confidential information with other defendants (doc. # 149: FuturePath's Reply at 2).

## II.

### A.

We first consider the proposal to exclude Mr. Borsand from viewing all documents defendants designate as Highly Confidential – a provision that all of the defendants seek. The 2006 PO allows "Confidential" and "Highly Confidential - Attorneys' Eyes Only" information to be disclosed to TT's in-house attorney, Mr. Borsand, and to the defendants' designated in-house attorney. *Trading Techs.*, 2011 WL 148252, at *3. In addition, the 2006 PO states that a party receiving "Highly Confidential - Patent Prosecution" information may disclose it to Mr. Borsand and other designated in-house attorneys "provided that they agree not to have primary responsibility for preparation and prosecution of patent applications . . . related to the subject matter of the patents-in-suit." *Id.*

In determining the proper scope of a patent prosecution bar in a protective order, a court must consider, on a counsel-by-counsel basis, "whether an unacceptable opportunity for inadvertent disclosure" of confidential information by the opposing party's attorney to his or her client exists. *Deutsche Bank*, 605 F.3d at 1378. The risk of inadvertent disclosure turns on "the extent to which counsel is involved in competitive decisionmaking with its client." *Id.* If an unacceptable risk exists, the court "must balance the risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380.

The arguments that defendants now make as to why Mr. Borsand should be excluded from material designated as Highly Confidential are substantially the same ones that GL and FuturePath

unsuccessfully offered in their recent motion to modify the 2006 PO.[3] Defendants argue that the 2006 PO allows for an unacceptable risk that Mr. Borsand would use their Highly Confidential information to defendants' competitive detriment because he is intimately involved in TT's patent prosecution, is responsible for managing TT's intellectual property assets and litigation, and is an "active inventor" in connection with the type of technology at issue in this litigation (SunGard Defs.' Mem. at 9-13; *cf. Trading Techs.*, 2011 WL 148252, at *3). In our January 18, 2011 opinion, this Court held that Mr. Borsand's work does not currently involve inventive activity or direct involvement in patent prosecution activity. *Trading Techs.*, 2011 WL 148252, at *6.

Defendants argue that the relevant facts have changed since our earlier opinion, and that Mr. Borsand has shown additional inventive activity and competitive decisionmaking because he was listed as the sole inventor and attorney of record on a continuation patent application filed October 21, 2010, and published February 17, 2011 (thinkorswim Defs.' Mem. at 4; Ex. C). We disagree. As TT points out, this application was the latest in a series of continuation applications for a patent application that was originally filed on October 1, 2003, and Mr. Borsand has not made any inventive contributions since then (doc. # 134: TT's Opp'n to thinkorswim Defs.' Mot. at 7). This Court previously considered whether continuation applications to the original 2003 patent application listing Mr. Borsand as an inventor constituted competitive decisionmaking, and we found that it did

---

[3]For a complete discussion and application of *Deutsche Bank* to the proposal to bar Mr. Borsand's access to Highly Confidential information, please see this Court's prior opinion, *Trading Techs.*, 2011 WL 148252, at *5-8.

6

not.[4] *Trading Techs.*, 2011 WL 148252, at *5-6. The filing of a new continuation application linked to a 2003 patent application does not persuade us to depart from that analysis.

Furthermore, we previously held that although Mr. Borsand's position presents some risk of inadvertent disclosure because he "mak[es] strategic decisions on the type and scope of patent protection that might be available or worth pursuing" for TT's inventions, this risk is small compared to the harm TT would suffer if denied Mr. Borsand's counsel in this litigation. *Trading Techs.*, 2011 WL 148252, at *6 (citing *Deutsche Bank*, 605 F.3d at 1380). Mr. Borsand has been TT's lead counsel in litigation involving the patents-in-suit since 2003 and is intimately involved in TT's overall litigation strategy. *Trading Techs.*, 2011 WL 148252, at *7. On the other hand, there is not a great risk of inadvertent disclosure because Mr. Borsand does not himself now engage in patent prosecution or inventive activity, and he has abided by the 2006 Order for the last four years.[5] *Id.* at *8. Defendants have not presented any new arguments or facts that persuade us to strike a different balance in this case (*see, e.g.*, doc. # 148: thinkorswim Defs.' Reply at 5-8). Although defendants are correct that Mr. Borsand has "authorization" and the "opportunity" to direct the scope of TT's claims, as we explained before quoting Judge Moran, "a party . . . has a choice to say, okay, I am going to use this attorney as part of my litigation team. Or I am going to use this attorney as part

---

[4]The SunGard defendants make one new argument on this issue: that because Mr. Borsand has a continuing duty of candor as to the continuation applications to disclose all information material to patentability to the PTO, defendants' confidential technical information will end up in TT's patent prosecutions (doc. # 81 (10 C 716): SunGard Defs.' Reply at 8). This argument does not change our analysis, because under the 2006 PO, Mr. Borsand has already given up his prosecution activities and thus is not in a position to disclose any of defendants' confidential information.

[5]Although the SunGard defendants have argued that Mr. Borsand has had improper contact with their consultant EIP, the SunGard defendants have stated that because that argument is now the subject of a separate motion to disqualify Mr. Borsand, they will wait for the district court judge to resolve that argument rather than raising it again here (SunGard Defs.' Reply at 2-3).

7

of my patent application team." *Trading Techs.*, 2011 WL 148252, at *8. TT has made its choice: Mr. Borsand is a member of the litigation team.

Accordingly, we find that defendants have not presented good cause that the protective order in the consolidated 2010 cases should bar Mr. Borsand from all Highly Confidential information.

**B.**

The next two arguments made by the SunGard defendants and adopted by the other defendants in this consolidated action – to broaden the definition of primary responsibility for patent prosecution and the definition of the subject matter of the patents-in-suit – are also substantially the same as those made by GL and FuturePath in the motion to modify the 2006 PO that we recently ruled upon. The 2006 PO – like the one TT proposes here – states that in order to see "Highly Confidential - Patent Prosecution" information, the designated in-house attorney "must, prior to disclosure, elect in writing to forego Primary Responsibility for Preparation and Prosecution of Patent Applications Related to the Subject Matter of the Patents-in-Suit until 1 year after conclusion of the proceedings." *Trading Techs.*, 2011 WL 148252, at *9. Defendants seek to expand the definition of primary responsibility for patent prosecution to include activities which, as this Court previously explained, the Federal Circuit has stated present a low risk of inadvertent disclosure. *See Id.* at *9-11. Defendants have not presented any new evidence or arguments as to why these activities present a higher risk of disclosure in the consolidated 2010 case. Thus, we deny this proposal to expand the definition of primary responsibility for preparation and prosecution of patent applications.

In addition, defendants propose to expand the definition of the subject matter of the patents-in-suit. The 2006 PO, and TT's current proposal, defines the subject matter of the patents-in-suit

8

as "patent applications seeking to claim a graphical user interface for manual order entry." Defendants ask to expand this definition to embrace "patent applications seeking to claim subject matter related to the electronic trading of commodities." On this score, the thinkorswim defendants contend that the 2010 cases present a "unique posture." The 2005 cases all involve claims of infringement of the same two patents: the '304 and '132 patents. By contrast, the 2010 consolidated case involves claims of infringement of these two patents plus eight others: (1) the '411, '768, and '382 patents (which, like the '304 and '132 patents, are from the Brumfield family of patents); (2) the '999, '416, and '016 patents from the Friesen family of patents; and (3) the '357 and '651 from the Buck family of patents. The thinkorswim defendants argue that a broader definition of the subject matter of the patents-in-suit is thus needed in the 2010 consolidated case than in the 2005 cases, because the 2010 consolidated case involves "a wide range of differing and unrelated products," "many of the defendants are competitors with each other, as well as with TT," and TT "continues to expand its ever-growing suite of products" (doc. # 132: thinkorswim Defs.' Opp'n at 12-13).

We disagree that these considerations warrant an expanded definition of the subject matter of the patents-in-suit. *First*, TT and the defendants in the 2005 cases are competitors, as defendants and TT are in the 2010 consolidated case; that consideration is thus not unique to the 2010 consolidated case. *Second*, changing the definition of the subject matter of the patents-in-suit as defendants request would bar any attorney who accessed Highly Confidential information from electronic trading fields that are wholly unrelated to the pending litigation, such as algorithmic trading, back end architecture, and matching engines — "essentially TT's entire patent application portfolio" (TT's Opp'n to thinkorswim Defs. at 10). As we found in considering this proposed

9

change to the 2006 PO, that is a restriction that sweeps far too broadly. *Third*, defendants' argument that the current litigation involves "a wide range of differing and unrelated products," also does not provide good cause for expanding the definition of the subject matter of the patents-in-suit in this litigation. While this case involves more patents and more products than the 2005 cases, the district court judge has found "significant overlap" in the patents-in-suit, all of which fall within the same three patent families (2/3/2011 Order). The district court judge also found a common thread that unifies the 2010 cases: all the patents involve products for "trading [financial instruments] on a graphical user interface with a price axis" (*Id.*).

In these circumstances, we consider it appropriate to limit the subject matter of the patents-in-suit here – as in the 2006 PO – to "patent applications seeking to claim a graphical user interface for manual order entry." We find that this definition appropriately protects the parties' legitimate interests, without creating a prosecution bar that would be excessively broad.

### C.

Defendants next seek to expand the protections afforded to "source code" material in the protective order with a fourth category of confidentiality: "Highly Confidential-Attorneys' Eyes Only-Source Code." The SunGard defendants propose the same "elaborate" and "extensive" restrictions that they proposed in seeking to modify the 2006 PO, including the establishment of a secure facility to house source code material and a prohibition on removing any copies of the material. *Trading Techs.*, 2011 WL 148252, at *12. As we held before, these proposed procedures are "labyrinthian" and unnecessary, and we deny the SunGard defendants' motion to impose them. *See Id.* at *13.

The thinkorswim defendants have proposed heightened, but somewhat less confining, measures for handling source code. In their proposal, access to source code material would be at the disclosing party's counsel's offices, and the receiving party would be allowed to print paper copies of selected portions of source code (thinkorswim Defs.' Mem., Ex. A at ¶ 10). However, while less onerous than the SunGard defendants' proposal, the thinkorswim proposal still would require parties to jump through many additional hurdles to view source code material. These hurdles would make it more cumbersome for parties to access and evaluate source code. That additional burden is unwarranted, because it is unnecessary to adequately protect defendants' interests. Even without the added burden, source code would be subject to the designation of Highly Confidential, which means that no inside TT attorneys other than Mr. Borsand could review it. And, as we have explained in this opinion and in our ruling on the request to modify the 2006 PO, *Trading Techs*, 2011 WL 148252, at *12, Mr. Borsand is not involved in prosecuting related patents, and the risk of inadvertent disclosure by Mr. Borsand is low. As we noted in our prior opinion, parties in related cases have continued to produce source code under the 2006 PO without issue. *Id.* We expect that to occur in this case as well.

In addition, as explained above, the patents-in-suit in the 2010 consolidated case include all the patents at issue in the 2005 action. We agree with TT that it could create significant problems "to have differing POs in these related cases that govern the same discovery, require different confidentiality designations for the same documents, impose conflicting restrictions on attorneys' activities and provide for conflicting rules as to which people are able to access the very same documents" (TT Cross-Mot. at 10). That does not mean that the protective order in the 2010 consolidated case automatically must move lock step with the 2006 PO. But neither is it the case

that we should disregard the experience of the successful operation of the 2006 PO, and put into place in the 2010 consolidated case a protective order that makes improvident changes that will not provide additional necessary safeguards but that instead will impose unnecessary burdens and conflicting obligations.

For all of the foregoing reasons, we deny defendants' motion to create a separate category of confidentiality for source code material.

**D.**

The thinkorswim defendants next propose that confidential information produced by one defendant should not be produced to another defendant because of the risk of disclosure of confidential information to competitors (thinkorswim Defs.' Mem. at 6). The 2006 PO does not contain such a provision. The thinkorswim defendants argue that because a "majority of defendants" agree that they should not produce their confidential information to other defendants, and because prior to consolidation, protective orders in individual cases prohibited TT from disclosing defendants' confidential information in other cases, this Court should approve a protective order with such a provision (thinkorswim Defs.' Reply at 13). The thinkorswim defendants suggest that if "isolated instances exist where defendants believe that another defendant's highly confidential information should be available for use by outside counsel in this consolidated case, those instances can be handled by requesting consent from the defendant who produced the highly confidential information" (*Id.* at 14).

TT and defendant FuturePath disagree with thinkorswim. FuturePath contends that after a protective order is adopted by this Court, all defendants should produce their confidential information not only to TT but to all the other defendants (FuturePath's Reply at 2). FuturePath

argues that: (1) it will be at a disadvantage without this information; and (2) separate motion practice will be necessary to serve subpoenas or document requests seeking production of "such relevant information" (*Id.* at 2).

TT calls the thinkorswim defendants' proposal to preclude co-defendants from exchanging confidential information with each other "strange, as it is contrary to their own discovery requests" (which seek co-defendants' confidential information) and "ignores that merely because something is confidential does not take it outside the scope of relevance for discovery purposes" (TT's Opp'n to thinkorswim Defs. at 2). TT argues that certain categories of defendants' confidential documents may be relevant across all cases, such as transaction data and evidence of copying (*Id.* at 14). Furthermore, TT contends that the 2006 PO adequately protects defendants' information because it prohibits use of confidential information in another proceeding not involving the same patents-in-suit and precludes Highly Confidential information from being shared with competitive decisionmakers (*Id.*). TT further notes that defendants Open E Cry, TradeStation, and FuturePath have already requested that TT produce their co-defendants' confidential information (*Id.*).

We reject thinkorswim's lead position, that all confidential information produced by one defendant be kept from all co-defendants. These cases have been consolidated precisely because, as the presiding district court judge has found, there is substantial overlap among the cases, the various suits all arise from the same transaction ("namely, the use of systems and methods that aid in the trading of financial instruments"), and "substantial time and effort" would be saved by consolidation (2/3/2011 Order). Limiting access by defendants to documents designated as confidential by other defendants would impair these efficiencies and is unnecessary in light of the safeguards the protective order will contain.

We further reject thinkorswim's fallback position, which is to keep from co-defendants all documents that a defendant labels as Highly Confidential. thinkorswim further proposes that upon request, a defendant may consent to allow Highly Confidential documents to be viewed by a co-defendant; if consent is given, those documents could be viewed only by a defendants' *outside counsel*. As explained elsewhere in this opinion, subjecting designated in-house counsel — who will be subject to the restrictions in the protective order set forth above — to greater restrictions than outside counsel is not necessary to adequately safeguard defendants' interests. The provisions in TT's proposed PO will adequately protect defendants' competitive information not only from Mr. Borsand's inadvertent disclosure, but from defendants' attorneys' inadvertent disclosure as well. If defendants wish to bar other defendants' access to certain specific documents, they can file a motion that explains why there is good cause to limit access to certain specific documents. thinkorswim's motion for a categorical limit on access is denied.

### E.

The BGC defendants move to allow access to Confidential information for a greater number of designated in-house attorneys, while maintaining the Highly Confidential restrictions proposed by the thinkorswim defendants (BGC Defs.' Statement at 1). The thinkorswim defendants note the BGC defendants' proposal as differing from theirs "only with respect to the number of in-house attorneys that may have access to confidential materials and in allowing in-house attorneys access to 'attorneys eyes only' materials that are not 'source code' or 'patent prosecution' materials, applicable to that case only" (thinkorswim Defs.' Mem. at 2 n.1). The thinkorswim defendants do not oppose the BGC defendants' motion, but we disagree with their interpretation of BGC's proposal

as being limited to "that case only." As we explained above, because these cases were consolidated for discovery purposes, only one collective protective order makes sense here.

While we have declined to expand restrictions to Highly Confidential and source code material as proposed by defendants, no party has presented argument as to why we should deny additional in-house attorneys access to the same information Mr. Borsand will be privy to, provided that those attorneys meet the same criteria as Mr. Borsand. Accordingly, requests by the parties to designate additional in-house attorneys to have access to confidential information should be considered on a case by case basis.

**F.**

The thinkorswim defendants also have proposed adding "an explicit procedure under which a party or interested member of the public can challenge the confidentiality designation of particular documents that have been filed under seal" (thinkorswim Defs.' Mem. at 3 n.2). We agree that such a provision should be included in the protective order. While "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record," the public does have a right to access records filed with the Court that may influence the judicial proceeding. *Bond v. Utreras*, 585 F.3d 1061, 1074-75 (7th Cir. 2009).

However, the thinkorswim defendants' proposed language improperly puts the burden on the party or member of the public seeking access to a document designated as Confidential or Highly Confidential (thinkorswim Defs.' Mem., Ex. A at ¶ 17). There is a "presumption of public access to discovery materials" filed with the court, and thus the burden is on the party seeking to maintain confidentiality to show good cause why the document should not be disseminated. *See* Fed. R. Civ. P. 26(c). Accordingly, we will include in the protective order a provision that allows any party or

member of the public to challenge the filing of information under seal, and that in the event of such a challenge, places the burden of proof on the one who is asserting confidentiality.

## CONCLUSION

For the foregoing reasons, TT's motions for entry of a protective order (doc. # 104; doc. # 79 (Case No. 10 C 716)) are granted. The defendants' motions for entry of a protective order are denied (docs. ## 91, 94, 98; doc. # 53 (Case No. 10 C 716)). The BGC defendants' request that more than one in-house counsel be designated in the PO is granted in part, as outlined above (doc. # 102). The request by TradeStation Securities, Inc. and TradeStation Group, Inc. (collectively, "the TradeStation defendants") — added to thinkorswim's reply brief — to join the thinkorswim defendants' motion for protective order (doc. # 148: thinkorswim Defs.' Reply at 14-15) is denied as moot. We enter today a collective protective order in the 2010 consolidated case that conforms to the analysis in this opinion.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: April 22, 2011**