IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | Case No. 10 C 715 |
| TRADING TECHNOLOGIES | ) | (Consolidated with: |
| INTERNATIONAL, INC. | ) | 10 C 716, 10 C 718, |
| | ) | 10 C 720, 10 C 721, |
| Plaintiff, | ) | 10 C 726, 10 C 882, |
| v. | ) | 10 C 883, 10 C 884 |
| | ) | 10 C 885, 10 C 929, |
| BCG PARTNERS, INC. | ) | 10 C 931) |
| | ) | |
| Defendant. | ) | Judge Virginia M. Kendall |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International, Inc. ("TT") filed 12 cases in this District, now

consolidated before this Court, against various defendants, alleging they infringed on TT's electronic

trading patents. On June 15, 2011, pursuant to the Court's scheduling order, TT filed a series of

amended complaints. The defendants[1] moved to dismiss TT's indirect infringement claims, asserting

they do not sufficiently plead their knowledge (1) of TT's patents and (2) that they were infringing

TT's patents under 35 U.S.C. § 271(b) and (c) in light of the Supreme Court's recent decision in

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011). Some of the defendants also

move to strike certain parts of TT's complaints under Federal Rule of Evidence 408 because TT

alleged knowledge of the patents using references to settlement and licensing negotiations. Finally,

TT has moved to strike certain affirmative defenses and counterclaims raised in a handful of the

defendants' answers. For the below reasons, the Court grants the defendants' motion to strike TT's

---

[1]The parties filed dozens of briefs on the issues decided by this opinion. Various defendants filed combined
briefs, and in many instances chose to join certain briefs of other defendants. The defendants' positions are the same
for the most part. For convenience, the Court treats the defendants' arguments as if they were raised by all the
defendants and analyzes them in aggregate.

allegations concerning settlement agreements, denies the defendants' motions to dismiss, and denies TT's motions to strike.

## I.      DEFENDANTS' MOTION TO STRIKE

Prior to evaluating the sufficiency of TT's complaints, the Court first considers whether some of TT's allegations should be stricken per Rule 12(f).   In a number of the amended complaints, TT alleged various defendants had knowledge of TT's patents based on settlement negotiations between TT and those defendants after TT filed these suits in February 2010.   TT also references a licensing term sheet that it allegedly provided to a number of defendants setting out standard prices and conditions to license TT's patents.   That term sheet has "For Settlement Purposes Only / Subject to F.R.E. 408" emblazoned at the top of each page.   The defendants assert that under Rule 408, these allegations should be stricken as they are inadmissible to prove liability for infringement.

Rule 12(f) allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from any pleading, but motions to strike are generally disfavored due to their tendency to delay proceedings. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  Rule 408 makes "conduct or statements made in compromise negotiations" regarding a claim inadmissible "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount."   Rule 408 is "inapplicable," however, when "compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim."  Fed. R. Evid. 408 advisory committee's note.  The rule is not waivable - a party cannot introduce evidence of its own settlement offers.  *Id.*   "The primary policy reason for excluding settlement communications is that the law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution."

*Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 689 (7th Cir. 2005). "In deciding whether Rule 408 should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations." *Id.*

In *Fidelity National Title Co. v. Law Title Insurance Co.*, cited by both TT and various defendants, one court in this District considered a motion to strike a letter attached to the complaint as exhibit, asserting that the letter was a settlement offer and fell within Rule 408. The court asked three questions: (1) whether the letter was written in an effort to settle the parties' dispute; (2) whether the plaintiff wanted to use the letter to establish the defendant's liability; and (3) whether the letter concerned liability that the defendant had otherwise admitted. *See* No. 04 C 6382, 2005 WL 1126899 at *5-7 (N.D. Ill. May 3, 2005); *see also Geary v. Motel Props., Inc*. No. 06 C 225, 2006 WL 1344015, at *1 (S.D. Ind. May 16, 2006) ("This court is of the belief that allowing the use of compromise materials in pleadings runs against the intent of F.R.E. 408 to encourage settlement discussions at all points of a dispute.") The *Fidelity* analysis is consistent with both the language and purpose of Rule 408. The first two questions are straight from the text of the rule; the last question recognizes that the rationale for the rule falls away if the defendant had already admitted to the liability in question.

Here, the Court may skip over the first question in *Fidelity* because TT concedes that the amended complaints describe settlement discussions. As to the second question, to establish induced infringement and contributory infringement under 35 U.S.C. § 271(b) and (c), TT must ultimately show that the defendants had knowledge of its patents. *See Global-Tech*, 131 S. Ct. at 2067-68. Put another way, knowledge of the patent is a prerequisite for both types of indirect infringement. *Id.*

3

TT is explicit that it wants to use the settlement negotiations to establish (or at least plead) the defendants' knowledge of its patents and, consequently, liability for indirect infringement.[2]  There is no dispute that TT and the defendants were trying to settle the exact claims TT brings here. Finally, the issue of defendants' knowledge of TT's patents (and their liability for induced infringment) is hotly disputed.  *Fidelity*'s analysis dictates that the Court strike TT's references to settlement negotiations and the licensing sheet.

Moreover, striking the references to settlement negotiations promotes the purpose of Rule 408.  If patent holders could lure suspected infringers to settlement negotiations, only to turn around and use those negotiations to level additional indirect infringement claims at the purported infringer, parties will be less likely to negotiate a settlement or engage in licensing discussions in the first place.  In other words, settlement negotiations should not subject parties to more liability for indirect infringement - their purpose is the precisely the opposite.

The cases TT cites for the proposition that compromise evidence is admissible even to show an element of a claim are distinguishable.  For example, *Zurich* is clear that Rule 408 allows admission only for purposes unrelated to establishing liability for the claim at issue.  *See Zurich*, 417 F.3d at 689 (compromise evidence has been "admitted by courts for additional purposes *other than* establishing liability.") (emphasis added).  In *United States v. Haubert*, the Seventh Circuit upheld admission of compromise evidence to allow the Government to rebut the defendant's contention that he had a subjective misunderstanding of his legal duty to report income, but the evidence was not offered to directly prove that failed to pay his taxes.  *See* 40 F.3d 197, 200 (7th Cir. 1994).  Cases

---

[2]TT is candid that it "seeks to admit the references to the settlement negotiations solely as one piece of evidence demonstrating that the Defendants had knowledge and notice of the Asserted Patents . . . as is required for pleading induced infringement."  (Doc. 325 at 7.)

like *Halbrucker v. Waste Mgt. of Wisconsin*, No. 07 C 11, 2007 WL 3125276, at \*2 (E.D. Wis. Oct. 24, 2007), which refused to strike complaint allegations, are distinguishable because there it was unclear for what purpose the plaintiff intended to use the settlement negotiations. Here, TT is upfront that it wants to use the settlement negotiations to establish liability for indirect infringement. The Court strikes all references to TT's settlement negotiations with defendants and TT's licensing term sheet used in those negotiations from TT's amended complaints.[3]

## II.     DEFENDANTS' MOTIONS TO DISMISS

### A.     Standard

The defendants next assert that in light of *Global-Tech*, TT has not plead enough facts that the defendants knew about TT's patents and that they knew their products, if used by someone else, would infringe on TT's patents to successfully plead indirect infringement claims.

A Rule 12(b)(6) motion to dismiss for failure to state a claim "is a purely procedural question not pertaining to patent law," so the Court applies Seventh Circuit precedent. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must be "plausible on its face," taking the plaintiff's allegations as true. *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (noting "'plausibility' in this context does not imply that the district

---

[3] TT urges the Court to wait to decide this evidentiary issue. The risk of chilling settlement negotiations, however, is just as apparent now as down the road. Striking such allegations at this stage is not unusual. *See e.g., United States ex rel Alsaker v. Centracare Health System, Inc.*, No. 99 C 106, 2002 WL 1285089, at \*2 (D. Minn. Jun. 5, 2002) (collecting cases).

court should decide whose version to believe, or which version is more likely than not.") A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Determining whether a complaint states a plausible claim for relief requires "the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "Specific facts are not necessary . . . the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Swanson*, 614 F.3d at 404 (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, under *Iqbal*, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together . . . the court will ask itself could these things have happened, not did they happen." *Swanson*, 614 F.3d at 404.

## B.     TT's Allegations of Indirect Infringement and *Global-Tech*

As noted above, in *Global-Tech* the Supreme Court established that the plaintiff must show the alleged infringer must have knowledge of the patent at issue (or at least "willful blindness"[4] to the patent) and knowledge that the infringer's product infringed on that patent to prove a claim for contributory infringement (35 U.S.C. § 271(b)) and inducing infringement (35 U.S.C. § 271(c)). *See Global-Tech*, 131 S. Ct. at 2068-69. At the outset, it is important to note two things. First, *Global-Tech* concerns the interpretation of § 271 and what TT must eventually prove, not Rule 8 pleading standards. *See id.* Consequently, putting *Global-Tech* together with *Iqbal*, the question before the Court on defendants' motions to dismiss is whether TT has plead sufficient facts—minus the facts stricken above—for the Court to *infer* that the defendants had knowledge of TT's patents and that their products infringed on those patents. *Iqbal*, 129 S.Ct. at 1949. TT's claim must also be

---

[4]The Supreme Court considered "willful blindness" to be the equivalent of actual knowledge.

plausible. *Id.* Second, Rule 9, which sets out a higher pleading standard for fraud or mistake, allows "conditions of a person's mind" like knowledge to be alleged generally. *See* Fed. R. Civ. P. 9(b). Indeed, the Court must be "realistic" as to what TT could plead at this point, *see Swanson*, 614 F.3d at 404, especially with respect to what another party knew.

Here, even without the allegations concerning the settlement agreements, TT has plead enough facts for the Court to infer that the defendants knew about TT's patents. First, TT alleges generally that the defendants had actual knowledge of the patents at issue. By itself, that general allegation would likely be too conclusory and not set out a plausible claim. But TT sketches out more. Each defendant is in the business of providing electronic trading software (*see e.g.* Doc. 228, FuturePath Compl., ¶ 4), and TT alleges that it marked its product with the patent number. It is not a stretch to infer that the defendants are competitors with TT and would be keeping an eye on patents issued to TT and other competitors.[5] It also alleges that the defendants had notice of various patents through these lawsuits, but continue to sell their infringing products to their customers, who also infringe. The parties cite conflicting caselaw regarding whether TT may plead that the defendants had knowledge of the patents at issue via this lawsuit. *Compare Groupon Inc. v. MobGob LLC*, No. 10 C 7456, 2011 WL 2111986, at *3 (N.D. Ill. May 25, 2011) ("It is reasonable to infer that MobGob had actual knowledge of Groupon's public patent (or at the very least that it has such knowledge now and allegedly continues its activities).") *with Mallinckrodt Inc. v. E-Z-EM Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009) ("The Court is not persuaded by Plaintiffs' contention that the requisite

---

[5]The Court does not suggest that competitors may plead knowledge for the purpose of indirect infringement solely by pleading that the competitor would be monitoring the plaintiff's patent filings and any patents issued to it. However, that the litigants are competitors in the same industry is a fact that makes knowledge of the patent at issue *more* plausible, even if not sufficiently plausible by itself to pass muster under *Iqbal*.

knowledge can be established by the filing of the Plaintiffs' Complaint."). The Court believes the *Groupon* approach is the more practical one, assuming the plaintiff can plead that the defendant continues to sell its infringing product. The Court sees no reason why a defendant who is directly infringing on a product should avoid liability for an indirect infringement claim when it continues to sell the allegedly infringing product and encourages others to infringe, simply because it happened to learn of the patent in connection with a lawsuit. In addition to the above inferences, which are sufficient under Rule 8, depending on the defendant TT alleges various other grounds from which the Court may infer actual knowledge of the patents at issue, including press coverage, previously filed litigation, consent judgments entered in companion cases and complaints filed against other defendants in this consolidated proceeding.

TT has also sufficiently alleged that the defendants knew that their products infringed on those patents and intended that their customers use the product in an infringing way. First, TT alleges that the defendants promoted and advertised their allegedly infringing products to others and encouraged them to infringe specifically through their websites and release notes, and that there was no non-infringing use of their product. Put another way, TT alleges that the defendants sold their products to customers knowing that they had no other use than one that infringed on TT's patents and showed them how to infringe on those patents with their websites and instructions. Those allegations are sufficient to show specific intent as well, because the Court may infer that by selling their infringing products the defendants intended their customers to use them and thus infringe TT's patents. In sum, from TT's allegations concerning the defendants' websites and instructions, the Court may infer that the defendants knew that their products infringed on TT's patents and intended those customers to infringe on TT's patents.

8

As the Court noted in its May 5, 2011 opinion concerning the previous motions to dismiss, TT's complaints are not fulsome but the Court "must be realistic about how much detail TT could provide at this point." (*See* Doc. 186 at 8.) Rules 8 and 9, *Iqbal* and *Swanson* dictate that TT need not plead more detail with respect to what the defendants knew. At this point, TT has presented a story that "holds together," and the defendants have the notice they are entitled to. *See Swanson*, 614 F.3d at 404.

## III. TT'S MOTIONS TO STRIKE

TT has filed four motions to strike against various defendants, asserting that: (1) the defendants' non-infringement affirmative defenses are not proper affirmative defenses; (2) the defendants' invalidity affirmative defenses do not meet the notice pleading requirements; and (3) the defendants' counterclaims for declaratory judgment of non-infringement and invalidity of the patents-in-suit are redundant and unnecessary. For the below reasons, TT's motions to strike are denied.

A Rule 12(f) motion to strike "is the appropriate remedy for the elimination of impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Again, Motions to strike are generally disfavored because they are often intended to cause delay. *See Heller* 883 F.2d at 1294. Accordingly, courts are typically reluctant to decide disputed or substantial issues of law on a motion to strike. *Van Schouwen*, 782 F. Supp. at 1245. A motion to strike will be granted "if the affirmative defenses are insufficient as a matter of law or present no questions of law or fact," *Heller*, 883 F.2d at 1294, but denied "if the insufficiency of the defense is not clearly apparent on the face of the pleadings, nor can reasonably be inferred from any state of facts in the

9

pleadings." *416 Acres*, 514 F.2d at 631.

The Court addresses TT's three contentions, none of which have any merit, quickly in turn.

First, the Patent Act requires that defendants plead non-infringement and invalidity as defenses:

> The following *shall be defenses* in any action involving the validity or infringement of a patent and *shall be pleaded*: (1) Noninfringement, absence of liability for infringement, or unenforceability; (2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability; (3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title; (4) Any other fact or act made a defense by this title.

35 U.S.C. § 282 (emphasis added). Second, the defendants' affirmative defenses of invalidity are short statements putting TT on notice that the defendants are challenging the validity of its patents, and they comply with Rule 8. The defendants' validity defenses, as drafted, reflect standard patent litigation practice as approved by the Federal Circuit and are consistent with the Local Patent Rules, which require detailed invalidity contentions at set times during discovery. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2005) (noting that another district's local patent rules, like our Local Patent Rules, require "early notice of . . . infringement and invalidity contentions" and require the parties "to proceed with diligence in amending those contentions when new information comes to light in the course of discovery."); L.P.R. 2.3. Perhaps the best indicator that TT's motions to strike are a waste of time is that TT's affirmative defenses to one defendant's counterclaims are substantively identical to the defenses TT wants to strike. (*See* Doc. 324 at 7.) Finally, the Court will not strike the defendants' counterclaims for declaratory judgment of non-infringement and invalidity. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1347-48 (Fed. Cir. 2005) ("a case or controversy adequate to support jurisdiction of a declaratory

10

judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent.")   There is a difference between the defendants fending off TT's infringement claims and winning declaratory judgment that they have not infringed on those patents  or that TT's patents are invalid; in the former, TT has the burden of proof, in the latter, the defendants have it.   Moreover, a judgment that one of TT's patent is invalid is a different question than whether the defendants infringed on that patent.  *Id.* ("a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of non-infringement.")[6]

## IV.    CONCLUSION

For the foregoing reasons, defendants' motions to dismiss or strike (Docs. 261, 266, 273, 276, 278, 281, 289, 295 and 297) are granted in part and denied in part.  TT's motions to strike (Docs. 319, 320, 321 and 322) are denied.  For the same reasons, TT's previously filed motions to strike (Docs. 96/194-1/174, 144) are also denied to the extent they have not been mooted by the amended complaints filed June 15, 2011.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 2, 2011

---

[6]Several of the parties in this case have the habit of referring to decisions from all the district court judges and magistrate judges in the Northern District of Illinois as decisions from "this Court."  While it is technically correct that there is just one United States District Court for the Northern District of Illinois, this practice is confusing and "this Court" should only be used refer to the decisions of the district court judge presiding over the case at bar.