**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC. | Case No. 10 C 715 (Consolidated with: 10 C 716, 10 C 718, |
| Plaintiff, | 10 C 720, 10 C 721, |
| | 10 C 726, 10 C 882, |
| v. | 10 C 883, 10 C 884, |
| | 10 C 885, 10 C 929, |
| BGC PARTNERS, INC. | 10 C 931) |
| Defendant. | Judge Virginia M. Kendall |

**JOINT CASE STATUS REPORT**

Pursuant to the Court's order dated March 15, 2012, the parties jointly submit this status report as to the disposition of the patents-in-suit following the Court's summary judgment order of February 9, 2012. The parties attach a table summarizing these positions as Exhibit A.

**TT's Preliminary Statement**

TT understood from the discussion with the Court at the March 15 status conference that the purpose of this filing was to provide the Court with a summary of agreements and disagreements regarding the impact of the Court's '411 patent summary judgment ruling on the remaining patents-in-suit, and the reasons for any disagreement. To provide a list of points of disagreement without any supporting rationale would be of no assistance to the Court. In that vein, TT provided a draft of its positions to Defendants on April 24, 2012. (Ex. B.) TT had previously provided Defendants with its positions in a call in March and an e-mail dated April 4, 2012 (Ex. C.), and the April 24 draft merely provided additional detail. This is what TT is now providing to the Court.

### Defendants' Preliminary Statement

Defendants submit their section of this status report to assist the Court in its understanding of how the parties view the import of the Court's summary judgment ruling on the various patents that TT has asserted against Defendants and what the next steps are likely to be. In this regard Defendants would be pleased to provide the Court with additional information as necessary.

TT's sections of this status report are not anything that could even remotely be called a "status;" rather its sections are transparently a brief (or, more accurately, "re-brief"). TT has gone far beyond the limited purpose of a status report and essentially sought both to reargue matters that it previously raised in its "clarification"/reconsideration motion and to argue new issues that will be appropriately addressed, if at all, in the future if and when they are properly before the Court. Accordingly, Defendants are limiting their submissions to matters that are properly directed to a report on status, and have not attempted to respond, on the merits, to TT's premature and unripe arguments raised in this report. Defendants will respond fully to those arguments if and when they are properly before the Court.

Defendants note, however, that TT has now provided some useful clarification of its position on the '566 and '724 patents. In particular, TT has now conceded that, even though both of those patents on their face purport to claim priority to the filing date of the '132 patent and the Provisional Application filed March 2, 2000 (the "2000 Provisional Application"), the '566 and '724 patents cannot claim such priority. This is significant because, for both of those patents, a later priority date means that there will be a later and wider base of prior art that the Court can appropriately consider for invalidity purposes. Once TT specifies exactly **what**

2

priority dates it is asserting for those patents, Defendants will be able to analyze more concretely what the next steps should be for those two patents.

## I.    The '411, '768, and '374 patents

### TT's Position

TT has set forth its positions with respect to these patents in its motion for Rule 54(b) appeal. (Dkt. No. 474). Defendants' opposition was filed on April 26, 2012 and TT will file its reply concurrently with this submission. However, some of the issues TT raised in its motion now appear to be resolved. The parties are now in agreement that the only claims of these patents that remain valid in view of the Court's summary judgment ruling are claim 15 of the '411 patent and claims 7 and 11 of the '374 patent.

Unfortunately, Defendants' position on Rule 54(b) has been an ever-moving target where when TT gives an inch, the Defendants want a mile. It was initially the Defendants who suggested that Rule 54(b) might be appropriate. Then, when TT agreed, they characterized this as a "knee-jerk reaction" to the Court's ruling. When the parties then discussed their positions on a Rule 54(b) appeal, the Defendants raised the concern that there can be no final judgment of invalidity with respect to the '411 and '374 patents if the case still includes these dependent claims. In response to this concern, several weeks ago, TT informed the Defendants that it would not assert these claims unless the Federal Circuit reverses or remands the summary judgment ruling. This position was recapped in the chart and positions TT sent to Defendants on April 24, 2012. (Ex. B.) On April 25, 2012, Defendants responded with a further revision to their portion of the chart (originally scheduled to be filed on April 26). (Ex. D.) In that chart, with respect to the '411 and '374 patents, Defendants stated:

> All '374 patent claims are invalid under the '411 Ruling, except claims 7 and 11. The
> Defendants oppose a Rule 54(b) appeal and the cases should proceed on claims 7 and 11,
> unless TT gives a covenant not to sue and a dismissal with prejudice. Otherwise a live
> and immediate case or controversy exists.

(Ex. D.) Defendants argued that they did not view TT's proposed conditional covenant not to

sue as adequate to moot their defenses and counterclaims with respect to the dependent claims.

Defendants insisted that only an unconditional dismissal of those claims with prejudice will do

the trick. This appears to be inconsistent with their position on the asserted claims, which also

cannot be asserted against the Defendants unless the Court's ruling is reversed or remanded. TT

therefore disagrees with this position because TT's proposed covenant not to sue places the

dependent claims in the exact same state as the other claims of the '411 and '374 patents that

have been found invalid – they cannot be asserted ever unless the Court's SJ ruling is reversed or

remanded.[1]

However, considering that the dependent claims at issue are similar to claims of other

patents-in-suit ('132 and '304 patents) and in the spirit of compromise, TT stated in its Rule

54(b) motion that it would be willing to provide the requested unconditional covenant not to sue

if the Court deemed that necessary. After seeing this concession from TT, Defendants have

"moved the line" and now argue that even if TT gives such an unconditional covenant not to sue,

a Rule 54(b) appeal is still not appropriate. In any event, TT has decided that if this Court grants

a Rule 54(b) appeal on the '411, '768 and '374 patents, TT will provide a unconditional covenant

---

[1] TT fails to see how the Defendants can say TT's cite to the *Jervis* case is inapposite. Defendants admit
that the case dealt with counterclaims directed to claims that were not asserted, just as is the case here.
The case did not state that its rationale only applied to claims that were asserted in the complaint as
opposed to the claim set later asserted. Defendants have not cited here, or in their opposition to TT's Rule
54(b) motion any case law that states an unconditional covenant not to sue is required for a Rule 54(b)
appeal to be proper.

not to sue with respect to dependent claim 15 of the '411 patent and dependent claims 7 and 11 of the '374 patent. Thus, there are no claims left for this Court to address. TT's concession on this point removes even the tenuous arguments being made by Defendants in opposition to a Rule 54(b) appeal. All issues with respect to these patents are unquestionably disposed of, all defenses and counterclaims are moot, and the Court's invalidation of the patents is ripe for Rule 54(b) appeal. For the reasons set forth in TT's motion for Rule 54(b) appeal, the Court should enter judgment with respect to the '411, '768 and '374 patents and then certify an appeal of these three patents.

### Defendants' Position

Defendants' position on a potential Rule 54(b) certification has been fixed and is the same now. While counsel for SunGard initially, just after the Court's summary judgment ruling was issued, stated they were thinking of certification with respect to the '411 patent, that was not a "position" but, as TT recognizes, an in-the-moment comment that was never acted on. When the idea of Rule 54(b) certification was formally raised, that was done **solely** by TT. Defendants objected then, and we object now. Our reasons why are fully briefed in Defendants' opposition to TT's Tule 54(b) motion, and we will not repeat those reasons here.

Regarding the '411, '374 and '768 patent claims that are **not** invalid under the Court's summary judgment ruling, the parties agree that the only such claims are claim 15 of the '411 patent and claims 7 and 11 of the '374 patent. These claims should proceed unless and until TT dismisses them with prejudice and provides an unconditional covenant not-to-sue.

TT's position on these remaining patent claims remains unclear. TT now states that it is willing to provide a conditional covenant not-to-sue, but only if the Court grants its motion for Rule 54(b) certification. Yet, this offer is meaningless since, in its position above, TT states that,

5

under its "proposed covenant not to sue" (the exact terms of which TT has never provided to the Defendants),[2] claim 15 of the '411 patent and claims 7 and 11 of the '374 patent could not be asserted "unless the Court's SJ ruling is reversed or remanded.

And, even if TT's "offer" to provide a covenant not-to-sue conditioned upon it prevailing on its Rule 54(b) motion were real (which does not appear to be the case), that would add nothing to the analysis, because:

(a) a claim is either in the case or not. If TT is willing to dismiss claim 15 of the '411 patent and claims 7 and 11 of the '374 patent with prejudice and provide an unconditional covenant not-to-sue **now**, then Defendants would obviously not object. However, **unless and until** TT does that, then those patent claims are in the case, are subject to Article III jurisdiction[3],

---

[2] TT contends above that it "stated in its Rule 54(b) motion that it would be willing to provide the requested unconditional covenant not to sue" is factually inaccurate. From Defendants' review of TT's Rule 54(b) motion, TT stated only that it would agree not to assert claim 15 of the '411 patent and claims 7 and 11 of the '374 patent if the Court's summary judgment ruling is reversed by the Federal Circuit. *See, e.g.*, Dkt. #474 at pp. 2, 4 n.2, and 8. That representation is not an unconditional covenant not-to-sue.

[3] There is nothing inconsistent about Defendants' position. The claims that are invalid under the Court's summary judgment ruling are no longer in the case (or, more accurately, will no longer be in the case once an order implementing the Court's ruling, as to all affected claims, has been entered). Likewise, if claim 15 of the '411 patent and claims 7 and 11 of the '374 patent are dismissed with prejudice, they will be out of the case. Until then, they are not.

TT's citation to *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1398-1400 (Fed. Cir. 1984), is completely inapposite. That case involved counterclaims seeking declaratory relief as against claims that the plaintiff, in its complaint, had not alleged to be infringed. Here, Defendants' request for declaratory judgments are directed to the **same** claims that, in the various amended complaints, TT has accused Defendants of infringing. While TT states above how it "fails to see" why this difference is meaningful, the reason is clear. In *Jarvis*, because plaintiff had not alleged infringement of the unasserted claims (which is why they were, in fact, "unasserted"), the defendants there were not at risk of litigation with respect to those claims. Here, by contrast, claim 15 of the '411 patent and claims 7 and 11 of the '374 patent are among the numerous claims that TT **has** accused Defendants of infringing

and should proceed accordingly;[4] and

 (b) for all the reasons in Defendants' opposition to TT's Rule 54(b) motion, irrespective of whether claim 15 of the '411 patent and claims 7 and 11 of the '374 patent remain in the case, there is no basis for a Rule 54(b) certification now, given the numerous and intertwined issues that the Court must address with the multiple **other** asserted Brumfield-family patents.

## II. The '055, '724, and '566 patents

### TT's Position

 TT contends that each of these patents should remain in the case. However, if the Court disagrees and adopts Defendants' position, these patents may need to be added to any Rule 54(b) appeal.

 The Defendants have previously taken positions with respect to these patents that were internally inconsistent and potentially led to nonsensical results. The problems with what appear to be the Defendants' arguments are readily evident in their position on the '566 patent. Defendants claim that all claims of the '566 with the exception of claim 4 are invalid under the Court's SJ ruling. Based on the Defendants' approach to the '411, '768 and '374 patents, it appears that Defendants argue that the '566 patent should be invalid because it must be limited to "static" price axes as construed by Judge Moran. This, however, cannot be the case.

 The '566 patent is a continuation-in-part ("CIP") application directed to a different innovation, specifically price consolidation. It does not share the same specification as the '132 and '304 patents, nor do the claims of the '566 patent recite a "static" price axis. Therefore,

---

[4] If these claims are not dismissed with prejudice, Defendants intend to move for summary judgment of non-infringement regarding claim 15 of the '411 patent and claims 7 and 11 of the '374 patent at the appropriate time. (Dkt. #476.) Defendants note that these claims also may be invalid on grounds other than those grounds raised in the recent summary judgment motions.

there is no basis for the claims of the '566 patent to be limited a "static" implementation as construed by Judge Moran. Indeed, nothing during the prosecution of the '566 patent claims (including the prior art considered by the PTO) suggested that the claims needed to be limited to a "static" price axis. The principle of claim differentiation also demonstrates that the claims of this patent were never meant to be limited to a static price axis, as dependent claim 4 specifically recites that the price axis of claim 1 is static. However, should the Court rule that any patent that is a CIP of the '132/'304 patents must necessarily be invalid if the claims do not require a "static" price axis as construed by Judge Moran, this would result in the claims of the '566 patent, with the exception of claim 4, being invalid. Such a result would be manifestly incorrect, arbitrarily resulting in some patents being found invalid merely because they are a CIP and others that are not a CIP not being found invalid.[5]

The same rationale applies with respect to the '724 patent, which Defendants have changed position on and now assert is invalid under the Court's ruling. The '724 patent is also a CIP application directed to a separate innovation, namely dragging and dropping working orders to modify them. None of the claims of the '724 patent recite a "static" price axis. Therefore, there is no justification for limiting the claims of the '724 patent to "static" implementations as construed by Judge Moran.[6]

---

[5] In any event, if the Court does agree with Defendants on this point, TT would request that the Court enter judgment and certify for Rule 54(b) appeal the '566 patent as well. Just as with the '411 and '374 patents, TT would then agree to provide an unconditional covenant not to assert claim 4 against defendants. With such a covenant, all issues with respect to the '566 patent would be fully resolved.

[6] If, however, the Court finds that any CIP of the '132/'304 patents is invalid if the claims do not require a "static" price axis as construed by Judge Moran, then all claims of the '724 patent would be invalid, and TT would request that the Court enter judgment and certify as part of the Rule 54(b) appeal the '724 patent as well.

Defendants sent TT their detailed positions on these patents for the first time yesterday afternoon (May 2), having never before raised their arguments during the discussions between the parties. TT was surprised to see that Defendants are claiming that they believe TT is asserting that the '566 and '724 CIPs are entitled to the March 2, 2000 priority date of the '132/'304 patents. This is simply not the case and TT thought that was self-evident from the claims themselves. Indeed, notwithstanding their lengthy discussion of continuation-in-part patents, the majority of which TT agrees contains correct statements of law, Defendants' application of those arguments shows that it is they who do not properly comprehend the import of the continuation-in-part status of these patents. The claims of the '566 patent are generally directed to the innovation of price consolidation – which was not described in the '132/'304 patents. Each claim of the '566 patent requires this new innovation.[7] Accordingly, the '566 patent claims cannot be entitled to the priority date of the '132 patent. Rather, the '566 patent is a different patent with a different priority date. Similarly, the claims of the '724 patent are generally directed to the innovation of dragging and dropping multiple working orders – which was not described in the '132/'304 patents. Each and every claim of the '724 patent requires this new innovation. Accordingly, the '724 patent claims cannot be entitled to the priority date of the '132 patent. Rather, the '724 patent is a different patent with a different priority date. TT believes this moots Defendants' arguments that the '566 and '724 patents are invalid in light of the Court's SJ ruling.

---

[7] It is not uncommon for continuation-in-part applications to contain claims that have a scope commensurate with the earliest filing in the chain. It is in those situations that Defendants' arguments about priority date are applicable. However, that fact pattern is not present with respect to these patents.

The '055 patent is an even more extreme example of the problem with applying the Court's ruling blindly to CIP applications. Defendants are correct that the '055 patent should not be found invalid in light of the Court's SJ ruling and that the case should proceed. However, Defendants' contention is based on flawed reasoning, and there is a significant dispute between the parties on this point. It appears that Defendants' position arises from their view that the '055 patent claims are limited to "static" as construed by Judge Moran. Indeed, Defendants' extreme interpretation of the Court's summary judgment ruling, and their insistence that the ruling limits claims in later continuation-in-part applications that contain additional disclosure, demonstrates why TT was forced to seek reconsideration. As set forth below, Defendants' position is manifestly incorrect. If the '055 patent claims were read that way, the claims would be inoperable and invalid. In reality, the term "static" in the '055 patent claims does not and cannot have the same meaning as Judge Moran's construction. Nonetheless, for the same reasons set forth above, the '055 patent should not be impacted by this Court's SJ ruling and the case should proceed. Presumably, Defendants would contend that if the '055 patent claims are broader than "static" as construed by Judge Moran, the claims should be found invalid. This is incorrect.

As with the '724 and '566 patents, the '055 patent is a CIP application directed to a new innovation – this time one that specifically includes automatic recentering. However, unlike the '724 and '566 patents, the claims of the '055 patent require a "static" price axis. Even with the static requirement, the '055 patent makes clear from the very beginning that it is not directed to "static" price axes as construed by Judge Moran. Indeed, automatic repositioning of the price axis is set forth in the title of the '055 patent: "System and Method for *Automatic Repositioning* of Market Information in a Graphical User Interface." The whole point of the '055 patent and its new disclosure (that was not part of the '132/'304 patent specification) was to focus on the

innovation of automatic recentering of the static price axis based on the number of price levels

the market has moved from the center:

> In one embodiment, the trading application tracks the market's activity by **automatically centering**, for example, the inside market or the Last Traded Price ("LTP") on the display **with respect to a static axis or scale of prices**.
> * * *
> When either the highlighted LTP cell or the inside market line is outside of the viewable area of a trader's display, or is more than a predetermined distance away from a location on the display, the LTP cell or **the inside market line will automatically** be placed at a predetermined location on the display.

*See* Ex. 9 in Dkt. 455, TT's Motion for Clarification and Reconsideration, at Col 25, Lines 6-10,

32-38.  None of this disclosure is in the specification of the '132/'304 patent.  Importantly, the

'055 patent is a completely separate and different patent than the '132/'304 patent, with a later

filing date and describing and claiming a different invention.  Like the '724 and '566 patents, the

'055 patent claims are not entitled to the priority date of the '132 patent.

All of the independent claims of the patent also require automatic repositioning of the

price axis.  For example, claim 1 starts by making clear that it is claiming a "method for

repositioning a static price axis . . ." and requires "receiving the reposition command to

reposition the static price axis when a designated price level is within a designated number of

price levels from the lowest value or the highest value along the static price axis."  Claim 1 goes

on to state "[R]esponsive to receiving the reposition command, automatically repositioning the

static price axis on the graphical user interface."  Col. 34, lines 64-66.  The claims originally

filed with the '055 patent application (which are considered part of the patent's disclosure)

similarly required automatic repositioning of the static price axis. (Ex. E.) This makes sense –

because the '055 patent is directed to that innovation.   The features described and claimed in the

'055 patent are those such as found in the eSpeed's Dual Dynamic product, which was found not to infringe the '132 and '304 patents.

Therefore, the term "static" cannot and does not mean the same as it was construed in the eSpeed case, and as the Defendants presumably assert it should be construed here. Defendants' contention to the contrary leads to a nonsensical result, i.e., if "static" is limited to require a mode with no possibility of automatic recentering as was done in the eSpeed case for the '132/'304 claims, then the claims of the '055 patent would be internally inconsistent and inoperable. Furthermore, such a result would be inconsistent with the specification of the patent. Accordingly, Defendants' position that the claims of the '055 patent require "static" as construed by Judge Moran should be rejected. Furthermore, the Court should reject what would presumably be Defendants' alternative position – that if the '055 claims are broader than "static" as construed by Judge Moran they are invalid in light of this Court's SJ ruling. The '055 has a different specification that makes clear that "static" as used in those claims means something different.[8]

### Defendants' Position

TT's arguments on the '055 patent are nothing more than further (and improper) argumentation on its pending motion for clarification/reconsideration. TT has already litigated that issue and lost, and nothing it says here changes the Court's ruling. Accordingly, the Defendants will not address the '055 patent in this report.

The '566 and '724 patents, unlike the '055 patent, were not addressed as part of the Court's summary judgment ruling. Both of these patents are continuations-in-part and, as such,

---

[8] If the Court should accepts Defendants' argument on this point, then all claims of the '055 patent will be invalid and it should also be included in the Rule 54(b) appeal.

present some additional issues. Defendants are pleased to report that, through dialog on the preparation of this status report, TT has made a significant clarification as to the priority date of these patents, which Defendants believe will further streamline the disposition of those patents.

To put this in context, some brief explanation as to differences between continuation and continuation-in-part patents is warranted. By definition, a continuation patent contains the same specification as the earlier-filed application upon which it claims priority, the so-called parent application. As a result, claims within a continuation patent are afforded the same priority date as the parent application upon which the continuation relies, assuming compliance with 35 U.S.C. § 112. *See* 35 U.S.C. § 120. By comparison and also by definition, the specification of a CIP patent contains portions of the parent application and some additional, new subject matter. *PowerOasis, Inc. v. T-Mobile USA, Inc.* 522 F.3d 1299, 1304 (Fed. Cir. 2008). This additional, new subject matter is called "new matter"—a term of art under the patent law. Any claim in a CIP patent reciting "new matter" is afforded a different priority date than the parent application. *PowerOasis, Inc.*, 522 F.3d at 1306 (explaining that a CIP application is entitled to the benefit of the filing date of a parent only if the disclosure of the parent provides written description support for the CIP claims). Such a claim is given a priority date of the CIP application that discloses the new matter. *Studiengesellschaft Kohle m.b.H. v. Shell Oil Co.*, 112 F.3d 1561, 1564 (Fed. Cir. 1997); *see also* Manual Patent Examination and Procedure § 201.11 ("Claiming the Benefit of an Earlier Filing Date Under 35 U.S.C. 120 and 119(e)"). Put another way, the determination of the priority date for CIP patents is performed on a claim-by-claim basis. So claims reciting only "old matter" are afforded the priority date of the parent application, whereas claims containing any "new matter" are afforded the later priority date associated with the filing of the CIP application.

13

Under the Court's summary judgment ruling, any patent claim within the Brumfield family that claims priority to the '304 or '132 patents, or the 2000 Provisional Application, or to a specification using the term "static" in the same way, but purports to cover price axes that move automatically or re-center automatically—rather than being limited to "static" price axes that require manual re-centering—is invalid for a lack of written description under 35 U.S.C. § 112, ¶1.

Until today, Defendants had believed that TT was asserting that the '566 and '724 patents were entitled to the filing dates of the '132 patent and the 2000 Provisional Application. TT states above that it was "surprised" about our belief and thought it was "self-evident" that TT was not claiming entitlement to those dates. We do not know why that would be so, since both patents, on their face, purport to claim priority to those filing dates. ('566 patent, col. 1: 5-12; and '724 patent, col. 1: 4-15.) In any event, TT has now represented to the Court that it is forfeiting such entitlement for the '566 and '724 patents.

TT's forfeiture, however, does not end the inquiry, because TT has failed to advise the Court (or the Defendants) what priority dates it **is** asserting for the '566 and '724 patents. Once TT finally asserts its position, which will presumably be through one or more stipulations, discovery and motion practice, the Defendants will need to analyze each of the '566 and '724 patents on a claim-by-claim basis compared with disclosures in the specifications to which TT asserts priority. Depending on the results of that analysis, the Defendants may conclude that some or all of the claims in those patents are invalid under the Court's '411 summary judgment ruling, or in the alternative, may conclude that none of those claims are affected by that ruling. The outcome of these questions, however, is something that cannot be know now but will be ascertainable only in the future.

14

Defendants' position as regards the '566 and '724 patents, as set out in the accompanying table, reflects their initial understanding.  If, following the analysis indicated above, that position changes with respect to either of those patents, Defendants will so advise the Court and TT.

## III.    The '382, '996, '424, and '929 patents

### TT's Position

The parties agree that these patents are not invalidated as a result of this Court's SJ ruling.  Defendants want to proceed, while TT submits that the best course of action for these patents should be a stay pending the results of the Rule 54(b) appeal.[9]  While the claims of each of these patents require a "static" price axis, TT contends that the term "static" in these claims is broader than Judge Moran's construction based on additional information in the file histories.  The question then becomes whether there is support for the broader construction in the original specification, as the '382 and '996 patents are straight continuations of the '132 and '304 patent family and share the same specification as the parent patents.

Both the '382 and '996 claim a static price axis.  However, in the file histories of these patents, there are explicit statements that define static more broadly than was construed by Judge Moran or as used by this Court in ruling on summary judgment.  During prosecution of the '382 patent, TT noted a discussion with the Examiner about the meaning of the word "static," wherein static was considered to include the possibility of automatic re-centering:

---

[9] TT is providing the Court with what it believes is the best way to proceed with the cases.  Defendants suggest that for a stay to be even discussed, TT must first file a motion.  Should the Court so desire, TT will do so.  However, in order to best facilitate discussion with the Court, TT is raising the concept of the stay in this filing as well.

> inside market.  This amendment was agreed upon with the understanding that "static" means what is stated in the specification – that the price levels "do not normally change positions unless a recentering command is received."   The Examiner acknowledged that the term "static" is not limited to situations where the price levels do not change positions unless a *manual* recentering command is received, but includes situations where the price levels change positions in response to either a manual (under the control of the user) or automatic (outside of the user's control) re-positioning command.

(Ex. F, Amendment dated May 20, 2008) at 8.)  The Examiner never countered this statement and the claims issued based on this understanding.

Similarly, during prosecution of the '996 patent, TT filed "Comments on Allowance" containing an explicit recognition that the same understanding as in the '382 patent applied:

> the '132 patent, among others, recite a "static" price axis.  Applicant wishes to make the record abundantly clear that both Applicant and Examiner interpreted the term "static" broader when prosecuting and examining the present application and other related cases (such as the '382 patent) than the courts did in the litigation of the '132 patent.  As such, the scope of the allowed claims in this case, like the claims granted in the '382 patent, which include a "static" price axis, encompass systems in accordance with the broader construction of a "static" price axis utilized by Applicant and Examiner during the course of prosecution.
>
> ....
>
> Accordingly, it is clear that in the present case, as in the '382 patent, automatic re-centering of a static price axis is merely an additional feature not precluded by the term "static."

(Ex. G, Comments on Allowance dated July 19, 2010, at 1-2.)  Once again, the Examiner did not disagree with this summary, and the claims issued based on this understanding.

Based on these statements in the file histories, TT contends that static should have a broader construction than that reached by Judge Moran and applied by this Court.  TT further contends that this broader construction is fully supported by the same specification as that for the '132 and '304 patents.  A Federal Circuit ruling on this Court's SJ opinion will have an impact

16

on this issue. Should the Federal Circuit decide, after hearing TT's Rule 54(b) appeal with respect to the '411, '768 and '374 patents that the specification would not support a broader reading, then TT will be limited to the Judge Moran construction of static. However, if the Circuit rules that the specification could support a broader reading, this Court will need to address the impact of the file history statements on the construction of static for purposes of the '382 and '996 patents. Thus, TT submits that judicial efficiency would be best served, and the parties would be in the best positions to present their cases, if the Court grants TT's motion for a Rule 54(b) certification and stays the proceedings with respect to the '382 and '996 patents. *See, e.g.*, *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 04-CV-00346, 2010 WL 4115427, at *5 (N.D. Ill. Oct. 18, 2010) ("[T]o the extent that the claims and counterclaims are linked by at least a common claim construction, any views on claim construction that the Federal Circuit expresses…would inform the litigation of the counterclaims following disposition of the appeal.").[10]

The applications leading to the '424 and '929 patents were also pending at the time of these discussions with the Examiner regarding the meaning of static during prosecution of the '382 and '996 patents. The '424 and '929 patents are continuation-in-part applications that describe and claim a feature known as price consolidation. These patents also require a "static" price axis. The new matter in these patents that causes them to be continuations-in-part is related to the price consolidation feature, not to the definition of static. However, TT contends that, for

---

[10] Without a stay, the parties could proceed with the assumption that the term "static" in these patents has the same meaning as construed in the *eSpeed* case and limit the focus of the case to certain accused products. If the Court's SJ ruling is reversed, then the parties would likely have to backtrack and fill-in discovery with respect to other accused products. TT submits that this is not the best course for either the parties or the Court.

the same reasons as present in the '382 and '996 patents, the term "static" has a broader definition than was applied in the *eSpeed* case. So, just as with the '382 and '996 patents, there will be a construction issue for the Court if the Federal Circuit rules in TT's favor on appeal, but no issue will arise if the Circuit affirms. Therefore, judicial efficiency will be best served by allowing a Rule 54(b) appeal of the Court's summary judgment ruling and a issuing a stay of consideration of the '382, '996, '424 and '929 patents.

### Defendants' Position

The Defendants agree that '382, '996, '424, and '929 patents are not invalid under the summary judgment ruling, although those patents may be invalid for other reasons that will likely be the subject of future motions by Defendants. Despite this agreement, TT raises several *non sequitur* claim construction issues, apparently attempting to foreshadow its claim construction position. Rather than engage the Court in this premature discussion now, the Defendants will brief this issue if and when necessary later in the case. Lastly, even though this issue is not properly before the Court, the Defendants oppose a stay associated with a Rule 54(b) Certification. Should the Court grant TT's Motion for Rule 54(b) Certification, and assuming TT properly moves for a stay, which it has not yet done, so that the question of a stay is properly before this Court, then the Defendants will request a briefing schedule to address those issues.

## IV. The Remaining Patents

The parties agree that the cases should proceed with respect to all other patents-in-suit, namely, U.S. Patents 6,766,304; 6,772,132; 7,212,999; 7,412,416; 7,533,056; 7,783,556; 7,587,357; 7,613,651; and 7,930,240.

## IV.    Conclusion

### TT's Position

In summary, this Court's SJ ruling should result in the asserted claims of the '411, '768 and '374 patents being adjudged invalid, and that judgment should be promptly appealed pursuant to Rule 54(b).  No other patent-in-suit should be invalidated in light of the SJ ruling.  In particular, the CIP patents that do not claim "static" ('724 and '566 patents) should not be invalidated because those patents disclose new innovations separate from the disclosure of the '132/'304 patents and there is no reason that the claims should be limited to "static" as construed by Judge Moran.  Likewise, the '055 CIP patent should not be invalidated because it discloses and claims a new innovation separate from the disclosure of the '132/'304 patents.  This patent uses the word "static" but the face of the patent and the claims clearly show that there is no possible way for the term to be construed as having the same meaning found by Judge Moran in the '132/'304 patents.  Defendants request that the cases proceed with respect to the '055 patent, but on the flawed ground that the patent is limited to "static" as construed by Judge Moran – a nonsensical and impossible result.  Finally, there are several patents-in-suit not invalidated as a result of the SJ ruling but for which TT submits a stay pending a Rule 54(b) appeal would be the best course because the result of the appeal could affect the ultimate claim construction in those patents.

### Defendants' Position:

The Court's summary judgment order invalidated the following continuation patents: the '411 patent (except claim 15), the '768 patent, and the '374 patent (except claims 7 and 11).  Of the CIP patents, the summary judgment order also invalidated the '566 patent (except for claim 4), and the '724 patent due to their asserted priority to the 2000 Provisional Application.

However, TT has forfeited entitlement to the 2000 Provisional Application and conceded a later priority date for the '556 and '724 patents without asserting what the new priority dates are for those patents. Until TT decides to assert its position, the Defendants must presently rely upon the face of the '556 and '724 patents for priority. But after TT asserts its position, then the Defendants will address the resulting issues (including but not limited to priority date and prior art-based invalidity issues) later in the cases. All other patents-in-suit in the cases are not invalid under the summary judgment order, but may be invalid for other reasons and are not infringed.

The Defendants strongly oppose a Rule 54(b) Certification and addressed those issues in its Opposition to TT's Motion for Rule 54(b) Certification. (Dkt. #476.) In addition, while the issue is not properly before the Court now, because TT has failed to properly raise it, the Defendants will oppose a stay and brief this issue if and when appropriate.

Date: May 3, 2012


 s/ S. Richard Carden
Leif R. Sigmond, Jr. (ID No. 6204980)
(sigmond@mbhb.com)
Matthew J. Sampson (ID No. 6207606)
(sampson@mbhb.com)
Michael D. Gannon (ID No. 6206940)
(gannon@mbhb.com)
S. Richard Carden (ID No. 6269504)
(carden@mbhb.com)
Jennifer M. Kurcz (ID No. 6279893)
(kurcz@mbhb.com)
Kirsten L. Thomson (ID No. 6293943)
(thomson@mbhb.com)
Ann C. Palma (ID No. 6302703)
(palma@mbhb.com)
**McDonnell Boehnen Hulbert
& Berghoff LLP**
300 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 913-0001
Fax: (312) 913-0002


Steven F. Borsand (ID No. 6206597)
(Steve.Borsand@tradingtechnologies.com)
**Trading Technologies
International, Inc**.
222 South Riverside
Suite 1100
Chicago, IL 60606
Tel: (312) 476-1000
Fax: (312) 476-1182


**Attorneys for Plaintiff, TRADING
TECHNOLOGIES
INTERNATIONAL, INC.**

Date: May 3, 2012


 s/ Gary Rosen (by permission)
***Counsel for BGC, et al.***
***(Case No. 10-CV-0715):***
Gary Rosen
Law Offices of Gary A. Rosen, P.C.
1831 Chestnut Street, 7th Floor
Philadelphia, PA 19103
grosen@logarpc.com

Andrew Johnstone
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
ajohnstone@winston.com


 s/ Adam G. Kelly (by permission)
***Counsel for CQG, et al.***
***(Case No. 10-CV-0718):***
Adam G. Kelly
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
akelly@loeb.com


 s/ Anthony B. Ullman (by permission)
***Counsel for FuturePath, Inc.***
***(Case No. 10-CV-0720):***
Anthony B. Ullman
Lora A. Moffatt
Salans LLP
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
lmoffatt@salans.com

|  | Philippe Bennett<br>Alston & Bird, LLP<br>90 Park Avenue<br>New York, NY 10016-1387<br>pbennett@alston.com<br><br> _s/ Michael B. Levin (by permission)_   ___Counsel for Interactive Brokers, LLC et al. (Case No. 10-CV-721):___<br>Michael Levin<br>Wilson Sonsini Goodrich & Rosati<br>650 Page Mill Road Palo Alto, CA 94304<br>mlevin@wsgr.com<br><br><br>Steven P. Mandell<br>333 W. Wacker Drive, Suite 300<br>Chicago, IL 60606<br>smandell@mandellmenkes.com<br><br><br><br> _s/ James J. Lukas, Jr. (by permission)_ <br>___Counsel for Open E Cry, et al.___<br>___(Case No. 10-CV-885):___<br>James J. Lukas, Jr. Eric J. Maiers<br>Greenberg Traurig, LLP<br>77 West Wacker Drive, Suite 3100<br>Chicago, IL 60601<br>Telephone: 312.456.8400<br>Fax: 312.456.8435<br>lukasj@gtlaw.com<br>maierse@gtlaw.com<br><br>Scott J. Bornstein<br>Jonathan M. Dunsay<br>Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: 212.801.9200<br>Fax: 212.801.6400<br>bornsteins@gtlaw.com<br>dunsayj@gtlaw.com |
|---|---|

Douglas R. Weider
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932-0677
Telephone: 973.360.7900
Fax: 973.301.8410
weiderd@gtlaw.com


_s/ Ralph Joseph Gabric (by permission)_
**Counsel for Stellar, et al.**
**(Case No. 10-CV-882):**
Ralph Joseph Gabric
Brinks Hofer Gilson & Lione
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
rgabric@usebrinks.com


_s/ Michael B. Levin (by permission)_
**Counsel for TD AMERITRADE, Inc. et al. (Case**
**No. 10-CV-883):**
Michael B. Levin
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
mlevin@wsgr.com

Steven P. Mandell
333 W. Wacker Drive, Suite 300
Chicago, IL 60606
smandell@mandellmenkes.com


_s/ David J. Healey (by permission)_
**TradeStation, et al. (Case No. 10-CV-884):**
David J. Healey
Fish & Richardson P.C.

One Houston Center
1221 McKinney, Suite 2800
Houston, TX 77010
healey@fr.com

|  |  _s/ Anthony B. Ullman (by permission)_ <br> **_Counsel for SunGard, et al. (Case No. 10-CV-716):_** <br> Anthony B. Ullman <br> Lora A. Moffatt <br> Salans LLP Rockefeller Center <br> 620 Fifth Avenue <br> New York, NY 10020-2457 <br> lmoffatt@salans.com <br><br> Philippe Bennett <br> Alston & Bird, LLP <br> 90 Park Avenue <br> New York, NY 10016-1387 <br> pbennett@alston.com |
|---|---|