IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TRADING TECHNOLOGIES | ) | 10 C 715 |
| INTERNATIONAL, INC., | ) | (Consolidated with: 10 C 716, 10 C |
|             Plaintiff, | ) | 718, 10 C 720, 10 C 721, 10 C 726, |
|      v. | ) | 10 C 882, 10 C 883, 10 C 884, 10 C |
|  | ) | 885, 10 C 929, 10 C 931) |
|  | ) |  |
| BCG PARTNERS, INC., | ) | Judge Virginia M. Kendall |
|          Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

In its Order of February 9, 2012, this Court granted Trading Technologies International, Inc.'s (hereafter "TT's") motion for summary judgment with respect to the '056 Patent; granted the moving Defendants' motion for summary judgment that under *Trading Technologies, International, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010), the '411 Patent's claims are invalid to the extent that they cover price axes that move automatically or through automatic re-centering; denied TT's cross-motion that the '411 Patent's claims meet the written description requirement; and granted Defendants Open E Cry, LLC and optionsXpress Holdings, Inc.'s motion for summary judgment regarding prosecution history estoppel with respect to the first set of Brumfield family patents and denied the motion as moot with respect to the second set of Brumfield family patents. *See Trading*

1

*Technologies Intern., Inc. v. BCG Partners, Inc.*, Nos. 10 C 715, 10 C 716, 10 C 718, 10 C 720, 10 C 721, 10 C 726, 10 C 882, 10 C 883, 10 C 884, 10 C 885, 10 C 929, 10 C 931, —F. Supp. 2d—, 2012 WL 434674, *2 (N.D. Ill. Feb. 9, 2012) (Kendall, J.).  TT now moves this Court to clarify certain aspects of its Order with respect to the '411 Patent and to reconsider its ruling with respect to the '055 Patent.  TT also moves the Court to enter a final judgment of invalidity of all asserted claims of the '411 Patent, the '768 Patent, and the '374 Patent and to dismiss the Defendants' remaining defenses and counterclaims relating to those patents without prejudice, and to certify the case for appeal to the Federal Circuit pursuant to Federal Rule of Civil Procedure 54(b).  For the reasons set forth below, the Court denies TT's Motion for Clarification and Reconsideration.  The Court grants TT's Motion for a Rule 54(b) Certification and certifies the February 9, 2012 Order as a final judgment for the purposes of taking an interlocutory appeal under Rule 54(b) finding that there is no just reason to delay an appeal.

## I.  Clarification and Reconsideration

The material undisputed facts of this case are contained in the Memorandum Opinion and Order of February 9, 2012.  *See Trading Technologies Intern.*, 2012 WL 434674, at *1-*11.  The Federal Rules of Civil Procedure do not provide for a motion to clarify or for a motion to reconsider.  *See Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994); *see also GHSC Assocs. Ltd. P'ship. v. Wal-Mart Stores*, 29 Fed. Appx. 382, 384 (7th Cir. 2002).  The Court thus

presumes that TT's Motions are brought as motions to alter or amend pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) ("...it is the substance, rather than the form, of a post-judgment motion that determines the rule under which it should be analyzed."). A Rule 59(e) motion must be brought no later than 28 days after the entry of judgment. *See* Fed. R. Civ. P. Rule 59(e). The Court entered judgment in this case on February 9, 2012, and the Plaintiff brought its Motion to Clarify and for Reconsideration on March 8, 2012, exactly 28 days after the entry of judgment and in time for the Court to construe the instant Motion as arising under Rule 59(e).

Under Federal Rule of Civil Procedure 59(e) a district court may entertain "[a] motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). Motions to reconsider should be granted only in rare circumstances. *See Bank of Waunakee v. Rochseter Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)) (". . .the motion to reconsider should be equally rare."). A party moving for reconsideration bears a heavy burden and its motion must be supported by a showing of extraordinary circumstances. *See Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). A motion for reconsideration is not an appropriate vehicle for relitigating arguments that the court previously rejected or for arguing issues that could have been raised during the

consideration of the motion under reconsideration.  *See Id*.  Motions for reconsideration are

utilized for a very limited purpose: to correct manifest errors of law or fact or to present

newly discovered evidence.  *See Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*,

762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.

Supp. 656, 665-666 (N.D. Ill. 1982), *aff'd and adopted in relevant part*, 736 F.2d 388, 393 (7th

Cir. 1984)).

A district court reviews its prior judgment under Rule 59(e) to determine whether

"there exists a manifest error of law or fact so as to enable the court to correct its own errors

and thus avoid unnecessary appellate procedures."  *Divane v. Krull Elec. Co., Inc.*, 194 F.3d

845, 847 (7th Cir. 1999) (citing *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996)); *see also*

*Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008).  It is well-settled that a motion to

reconsider is not a proper vehicle to advance arguments or legal theories that could and

should have been made before the district court entered judgment or to present evidence

that was available earlier.  *See Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007)

(citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)); *Anderson*

*v. Flexel, Inc.*, 47 F.3d 243, 247-48 (7th Cir. 1995); *King v. Cooke*, 26 F.3d 720, 726 (7th Cir.

1994).  Instead, a Rule 59(e) motion must establish either a clear manifest error of law or fact

or must present newly discovered evidence.  *See LB Credit Corp.*, 49 F.3d at 1267 (quoting

*FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).  A manifest error of law is the

4

"disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). The decision to grant a Rule 59(e) motion lies in the sound discretion of the district court, and its ruling is reviewed deferentially and will only be disturbed upon a showing that the court abused its discretion. *See Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991).

TT seeks clarification of four statements from this Court's prior Order. In particular, TT states that the following statements are ambiguous and in need of clarification:

> [U]nder the *eSpeed* Decision, the '411 patent['s] claims are invalid to the extent they cover price axes that move automatically or through automatic re-centering. *See Trading Technologies Intern.*, 2012 WL 434674, at *2 and *19.

> [T]he '411 patent's claims are invalid to the extent they claim price axes that move automatically. *See Trading Technologies Intern.*, 2012 WL 434674, at *9 n.9.

> [T]o the extent that '411 patent claims seek to cover price axes that move automatically or re-center automatically, rather than static price axes that require manual re-centering, they are invalid and the Court grants the moving defendants' motion for summary judgment and denies TT's cross-motion. *See Trading Technologies Intern.*, 2012 WL 434674, at *16.

> [T]he '411 patent's claims are invalid under § 112 to the extent they claim price axes that move automatically. *See Trading Technologies Intern.*, 2012 WL 434674, at *16 n.13.

TT argues that "a product with 'automatic' re-centering can still meet the 'static' limitation so long as it has a 'static' mode." It seeks clarification of these statements to provide that

the patent claims are invalid to the extent that they cover price axes that are not "static"–which TT asserts includes automatic re-centering. The statements identified by TT are not ambiguous and require no clarification by this Court. TT is in effect seeking to have this Court render an advisory opinion on a non-infringement issue that was not previously before the Court on summary judgment. Furthermore, the Court held that the claims in the patent were invalid under the prior decisions in the *eSpeed* case, which are entirely consistent with the Court's Order and these four statements in particular.

TT is essentially asking the Court to decide a non-infringement issue, something it previously explicitly disclaimed it was not doing on summary judgment. *See* TT's Opposition to Defendants' Motion for Summary Judgment (Doc. 395, pg. 5 n. 6) ("*While not relevant to the present motion*, some Defendants mischaracterize the scope of 'static' by arguing that any automatic movement takes the product outside the scope of the claims.") (emphasis supplied). In the present Motion, TT makes the same concession, stating that "the meaning of the construction *was not at issue in the motion*." (emphasis supplied). Thus, TT is now asking the Court to clarify a non-infringement issue that it previously claimed was not before the Court. TT is essentially asking the Court to decide whether an accused "product meets the 'static' limitation by providing a mode or condition in which the price levels do not move unless moved manually (i.e., a condition or mode in which there is no possibility of 'automatic movement'), even if that product also has 'automatic' re-centering

in a different non-infringing mode." TT therefore incorrectly assumes that the Court

previously decided issues of non-infringement as part of its prior Order. It did not. *See*

*Trading Technologies Intern.*, 2012 WL 434674, at *1-*2. TT is therefore in essence seeking an

advisory opinion from this Court in the guise of a Motion to Clarify, asking the Court to

hold that a product with automatic re-centering can still meet the "static" limitation. This

Court does not sit to render advisory opinions—that is beyond its constitutional authority

to decide actual cases and controversies. *See* U.S. Const. art. III, § 2; *Preiser v. Newkirk*, 422

U.S. 395, 401 (1975) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *Aetna Life Ins.*

*Co. v. Haworth*, 300 U.S. 227, 241 (1937)) ("[A] federal court['s]. . . judgments must resolve

a real and substantial controversy admitting of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts.") (internal citations and quotations omitted); *accord*

*Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir.

1984) (citing *United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947)).

Furthermore, both Judge Moran and the Federal Circuit clearly rejected the

argument that TT is now advancing in its Motion to Clarify in their decisions in the *eSpeed*

case. In his initial *Markman* opinion, Judge Moran concluded that a "static" price axes is

one with price levels that do not change position unless a manual re-centering command

is received. *See Trading Technologies Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL

3147697 (N.D. Ill. Oct. 31, 2006).  TT moved for reconsideration of Judge Moran's claim

construction, arguing that a price axes with automatic re-centering that has a "mode" or

a period between the times when it automatically re-centers during which the price axes

remains motionless was "static."  Judge Moran disagreed with TT's argument advanced

on reconsideration and adhered to his original construction of the term "static."  *See Trading*

*Technologies Intern., Inc. v. eSpeed, Inc.*, 507 F. Supp. 2d 854 (N.D. Ill. 2007). On appeal to the

Federal Circuit, TT argued that Judge Moran had incorrectly concluded that the possibility

of any automatic re-centering of price levels takes a mode of a product outside the scope

of the patents' claims.  In affirming Judge Moran's claim construction of the term "static,"

the Federal Circuit rejected this argument, and held that the "static" limitation covers only

"software with a manual re-centering feature and without automatic re-centering feature."

*eSpeed*, 595 F.3d at 1353.  Thus, the clarification that TT now seeks to have the Court make

directly contradicts the Federal Circuit law that this Court applied to decide the invalidity

issue on summary judgment.  *See Trading Technologies Intern.*, 2012 WL 434674, at *15-*16.

For these reasons, the Court denies TT's Motion to Clarify.

TT also seeks reconsideration of the Court's prosecution history estoppel ruling with

respect to the '055 Patent.  TT argues that the '005 Patent included new subject matter in

the specification ascribing a different meaning of "static" to the '055 Patent than to the '132

and '304 Patents.  This Court concluded in its summary judgment Order that with respect

to a product that only occasionally re-centered, the Federal Circuit had definitively determined that such a product would not infringe under the doctrine of equivalents because "during prosecution, the inventors surrendered any subject matter that moves automatically." *See Trading Technologies Intern.*, 2012 WL 434674, at *11 and *16 (quoting *eSpeed*, 595 F.3d at 1357). Thus, this Court concluded that prosecution history estoppel "prevented TT from asserting that products with prices axes that move automatically or with automatic re-centering infringe under the doctrine of equivalents." *See Trading Technologies Intern.*, 2012 WL 434674, at *16. The Court held that "TT is estopped from asserting that any of the claims of the Brumfield children [which includes the '055 Patent] can be infringed under the doctrine of equivalents by a product that has a price axes that moves automatically or re-centers automatically." *See Trading Technologies Intern.*, 2012 WL 434674, at *18. The Court also held that "[w]here the same claim term is at issue in the same context, TT's disclaimer as to the '304 Patent applies to the Brumfield children [which includes the '055 Patent]." *See Trading Technologies Intern.*, 2012 WL 434674, at *17. In the present case, the Court found that "all the Brumfield children's claims include the limitation of 'common static price axis,' just like the '304 Patent, and flow from the same specification as the '304 Patent (in the case of the '382 and '996 Patent), or a similar specification (in the case of the '056 Patent)." *Id*.

The Court explicitly considered and rejected the argument that TT is advancing here

as grounds for reconsideration: that the disclaimer should not apply to the '055 Patent because it is only a continuation-in-part of the '304 Patent and its specification is different than the common specification for the '132, '304, '384 and '996 Patents. Citing *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1335 (Fed. Cir. 2003), this Court held that the fact that the '055 Patent is only a continuation-in-part makes no difference. *See Trading Technologies Intern.*, 2012 WL 434674, at *17 n.15. Quoting *Omega Eng'g Inc.*, 34 F.3d at 1335, the Court concluded that "it is settled that prosecution disclaimer attaches to progeny continuation in part applications where the same claim limitation is at issue." *Trading Technologies Intern.*, 2012 WL 434674, at *17 n.15.

TT's Motion for Reconsideration must be rejected because TT is simply rehashing arguments that were made to this Court on summary judgment and rejected by it then. *See Caisse Nationale*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). In almost every case that comes before this Court on a motion for summary judgment one party loses, but that is not a proper basis upon which to allow the losing party to reargue its failing position to the Court over again. *See Oto*, 224 F.3d at 606 ("A manifest error is not demonstrated by the disappointment of the losing party [but by] the wholesale disregard, misapplication, or failure to recognize controlling precedent.") (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997))

(internal quotations omitted). Just as TT argued on summary judgment, it now argues that the prosecution history estoppel holding in *eSpeed* should not apply to the '055 Patent because the '055 Patent is a continuation-in-part of the '304 Patent and has a different specification ascribing a different meaning to the term "static" in the original application and during prosecution of the '055 Patent.

As has been noted, this Court rejected that argument on summary judgment. The Court determined that TT's argument that the prosecution histories of the '055 Patent is different from the '304 Patent, and that TT told the examiner during prosecution of the '055 Patent that having "static" did not operate to limit the claims to price axes that do not move absent manual re-centering, does not negate TT's clear disclaimer. *See Trading Technologies Intern.*, 2012 WL 434674, at *18. The Court held that if such an argument prevailed then "TT would be able to assert 'common static price axis' means one thing for one patent in the family, and something else for another patent in the same family." *Id*. The '055 Patent is in the same Brumfield family of patents as the other patents that were at issue before the Court on summary judgment, including and especially the '304 Patent. The Court held:

> The Federal Circuit clearly determined that whether a price axis is static is determined by how it is re-centered, and regardless of what TT told the patent examiner, the Federal Circuit found that by inserting 'common static price axis' into the claims of the '304 Patent, TT gave up all price axes that move automatically. TT put the same language in the Brumfield children. The legal effect of putting in that language is no different for the Brumfield children than the '304 Patent considered by the Federal Circuit. In sum, TT is estopped from asserting that any of the claims of the Brumfield children

> [including the '055 Patent] can be infringed under the doctrine of equivalents
> that has a price axes that moves automatically or re-centers automatically.

*See Trading Technologies Intern.*, 2012 WL 434674, at *18.  Thus, the Court considered and

rejected the argument that TT now makes when it decided Defendants Open E Cry, LLC

and optionsXpress Holdings, Inc.'s motion for summary judgment on prosecution history

estoppel.  TT cannot relitigate the responsive argument that it made and lost on summary

judgment in a motion to reconsider.  *See Caisse Nationale*, 90 F.3d at 1270.  Therefore, TT has

not met its burden of establishing that reconsideration is warranted or appropriate in this

case and because the Court previously considered and rejected the claims that TT now

makes, a Motion for Reconsideration is not an appropriate vehicle for TT's arguments.

## II.  Rule 54(b) Certification

In general, the Federal Circuit reviews only final orders and decisions of a district

court.  *See* 28 U.S.C. § 1295(a)(1).  Rule 54(b) of the Federal Rules of Civil Procedure allows

the Court to certify a partial final judgment for the purpose of taking an interlocutory

appeal by directing entry of a final judgment as to one or more, but fewer than all, of the

claims or parties, if the Court explicitly determines that there is no just reason to delay an

appeal.  *See* Fed. R. Civ. P. 54(b).  Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a
> claim, counterclaim, cross-claim, or third-party claim, or when multiple
> parties are involved, the court may direct the entry of a final judgment as to
> one or more but fewer than all of the claims or parties only upon an express
> determination that there is no just reason for delay and upon an express

direction for the entry of judgment.

Fed. R. Civ. P. 54(b). Absent a Rule 54(b) certification, there may be no appeal to the Federal Circuit from a judgment disposing of fewer than all aspects of a consolidated case. *See Spreytex, Inc. v. DJS&T*, 96 F.3d 1377, 1382 (Fed. Cir. 1996). To take an interlocutory appeal to the Federal Circuit, this Court must first certify that the judgement it has made is final, and then the Federal Circuit independently determines if that certification was proper in deciding whether it has jurisdiction over the appeal from the partial final judgment. *See Ultra Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003). The Federal Circuit reviews this Court's determination of whether a judgment is final with respect to one or more claims *de novo*, while this Court's determination of whether there is any just reason for delay is reviewed for an abuse of discretion. *See Spreytex, Inc.*, 96 F.3d at 1379 (citing *W.L. Gore & Accos., Inc. v. Int'l Med. Prosthetics Research Ass'n, Inc.*, 975 F.2d 858, 862 (Fed. Cir. 1992); *Houston Indus., Inc. v. United States*, 78 F.3d 564, 567 (Fed. Cir. 1996)).

The Supreme Court has established a two-step process for determining whether certification of a claim in a multiple claims action under Rule 54(b) is warranted. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980). First, the Court must determine that it is dealing with a "final judgment." *See Id.* The requirement of finality is statutorily mandated and not within the discretion of the district court to decide. *See*

*Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742 (1976). A court should not enter a final judgment under Rule 54(b) unless the judgment is an "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956). A district court's judgment is final where it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Second, the Court must decide whether there is any just reason for delay of an interlocutory appeal. *See Curtiss-Wright Corp.*, 446 U.S. 8.

Important factors in deciding whether there is any just reason to delay an appeal include judicial administrative interests and the equities involved. *See Curtiss-Wright Corp*, 446 U.S. at 8. The separateness of the claims for relief is another matter to be considered in determining whether there is any just reason to delay an appeal. *See W.L. Gore & Assoc.*, 975 F.2d at 862 (citing *Curtiss-Wright*, 446 U.S. at 8). The question there is whether the claims under review are separable from the others remaining to be adjudicated in the district court. *See Id.* The separability of the claims is thus central to determining whether or not there is just reason to delay certifying a partial final judgment for immediate appeal pursuant to Rule 54(b). In patent cases to be decided by the Federal Circuit, the separability of claims relates both to the potential factual and legal overlap of the claims. *See W.L. Gore & Assoc., Inc.*, 975 F.2d at 864 (citing *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 452 (1956)) (the "factual relatedness of separate claims for relief is one of the

factors a district court considers" in deciding whether to certify a final judgment for appeal under Rule 54(b)); *Chaparral Commc'n, Inc. v. Coman Indus., Inc.*, 798 F.2d 456, 459 (Fed. Cir 1986) (holding that "issues underlying all counts were sufficiently intertwined that the separate appeal of the summary judgment counts would complicate the trial of the remaining counts"). The matters involved in the first phase of a case in which one of the parties is seeking a Rule 54(b) certification must be factually and legally distinct from the remaining issues to be decided in the case. *See Osage Tribe of Indians of Oklahoma v. U.S.*, 263 Fed.Appx. 43, 44 (Fed. Cir. 2008). Although factual overlap is relevant, the existence of some factual overlap is not determinative under Rule 54(b). *See W.L. Gore & Assoc., Inc.*, 975 F.2d at 864 ("factual overlap on *only tangential issues* or on *'one aspect'* of a counterclaim is not adequate to show an abuse of discretion" in certifying a final judgment for appeal under Rule 54(b)) (emphasis supplied).

Another factor to be considered is whether the Federal Circuit will have to decide the same issue more than once even if there are successive appeals. *See W.L. Gore & Assoc.*, 975 F.2d at 864 (citing *Curtiss-Wright*, 446 U.S. at 8). Finally in determining whether to certify a final judgement for appeal under Rule 54(b), the Court must take into account "the historic federal policy against piecemeal appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8. The Federal Circuit has emphasized the policy against piecemeal adjudication, and has held that Rule 54(b) certification is only appropriate where the district court properly considers

the different equities involved and concludes that the need for an immediate appeal of a partial final judgment outweighs the presumption against piecemeal adjudication. *See Spraytex, Inc.*, 96 F.3d at 1382 (citing *Chaparral Communications, Inc. v. Boman Indus., Inc.*, 798 F.2d 456, 459 (Fed. Cir. 1986)). The general rule is that all issues decided by a district court should be resolved in a single appeal of a final judgment, and the district court must provide sound reasons for departing from that rule in certifying a case for immediate interlocutory appeal under Rule 54(b). *See iLOR, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008).

The duty of this Court in deciding whether to certify a final judgment under Rule 54(b) is "to act as a dispatcher" to the Courts of Appeals. *See Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 436). In determining the appropriate time when each final decision in a multiple claims action is ready for appeal, this Court exercises a great deal of discretion in the interest of efficient administration of judicial resources. *See Id.* The Federal Circuit accords this Court "substantial discretion" in making the determination as to whether there is any just reason to delay an appeal. *See Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001). Even where certain factors weigh against granting a Rule 54(b) appeal, such an appeal my still be appropriate if the Court deems the factors weighing in favor of granting an immediate interlocutory appeal to outweigh the negative factors. *See Curtiss-Wright Corp.*, 466 U.S. at 4 n.1. It is permissible to grant a Rule 54(b) certification on certain

patents-in-suit and then proceed on other patents-in-suit that remain pending before the district court. *See Medeva Pharma Suisse A.G. v. Par Pharmaceutical, Inc.*, 430 Fed.Appx. 878, 879-880 (Fed. Cir. 2011). TT asks this Court to enter a final judgment of invalidity of the '411, '768, '374, and '055 Patents.[1]

The Defendants main argument in opposing a Rule 54(b) certification is that there are claims under the '411, '768, and '374 Patents that remain valid. The Defendants argue that without an unconditional release of these claims by TT, their controversy is live and the threat of continued litigation is credible. As a threshold matter, a judgment that does not dispose of pending counterclaims is not a final judgment, *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1362 (Fed. Cir. 2003), and stayed claims are not final judgments subject to appeal for the purposes of 28 U.S.C. § 1295. *See Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003). Here TT first asserted that it would agree to stay certain claims arising out of these patents pending the outcome of an appeal—taking something of a wait-and-see approach to litigating this suit. The claims that TT agreed to stay would result in a lack of finality of the Court's summary judgment Order for those

---

[1]TT asks that the '055 Patent be included in its Rule 54(b) Motion in the event that the Court denies its Motion for Reconsideration. Because that Motion is denied, the Court finds that the summary judgment Order invalidated the '055 Patent and therefore includes it in the Rule 54(b) Order for interlocutory appeal. TT also asks the Court to determine the validity of the '566 Patent and the '724 Patent, and include them in their request for an interlocutory appeal if they are deemed invalid. Now is not the appropriate time for the Court to rule on the validity of these patents. They were not at issue in the summary judgment Order that is the subject of this 54(b) appeal, and the parties still dispute their priority dates. The validity of the '566 and '724 Patents is not ripe for adjudication at this time.

patents out of which the claims arise. *See Nystrom*, 339 F.3d at 1351.

Article III jurisdiction comes to an end in a case concerning the dismissal of a patentee's claim and a defendant's declaratory judgment claim when the patent owner provides a covenant not to sue in a form that eliminates any risk to the defendant's activities, including future activities. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1299-1300 (Fed. Cir. 2009) (Article III jurisdiction comes to an end for lack of an existing case or controversy when a covenant not to sue encompasses the current products-in-suit, whether they were produced and sold before or after the covenant); *see also True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093 (D. Ariz. 2005) (the court has no Article III jurisdiction because the covenant not to sue extends to all products in existence on the day of the covenant, even if such products were produced and sold afterwards); *Crossbow Technology, Inc. v. YH Technology*, 531 F. Supp. 2d 1117, 1122 (N.D. Cal. 2007) (no Article III jurisdiction exists where the covenant not to sue extends to "manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling the [products-in-suit] as they exist today or have existed in the past."); *Tech. Licensing Corp. v. Technicolor USA*, 800 F. Supp. 2d 1116, 1121-1123 (E.D. Cal. 2011) (a covenant not to sue is needed for a patentee to eliminate Article III jurisdiction).

In reply to the Defendants' opposition to TT's Motion for a Rule 54(b) Certification, TT now states that it will agree to enter into a covenant not to sue on any of the remaining

valid claims of the '411, '768, '374, and '055 Patents. TT has thus provided an unconditional covenant not to proceed on infringement on these dependent claims if the Court certifies the case for a Rule 54(b) appeal. As a result, these claims will no longer be a part of the case, even if subsequent appellate decisions resurrect them. Thus, the Court finds that its prior summary judgment Order results in a final judgment of invalidity of all claims of the '411, '768, '374, and '055 Patents.

The risk of overlap, specifically whether the Federal Circuit will have to decide the same issue more than once even if there are successive appeals, weighs in favor of certifying the case for a Rule 54(b) appeal. The Defendants do not seem to dispute that the risk of multiple appeals in this case is minimal. The issue before the Federal Circuit if this Court certifies the case for an interlocutory appeal will not be about the meaning of the term "static," as the Defendants suggest. Rather, the Federal Circuit will be faced with the narrow issue of whether the specification of the Brumfield family of patents supports a claim that is not limited to "static" as that term was construed by Judge Moran in *eSpeed* and affirmed by the Federal Circuit. This issue is one that the Federal Circuit would never have to revisit, even if successive appeals do follow. Nor does the appeal that TT wishes to take present a new appeal of the Federal Circuit's prior ruling with respect to the '132 Patent and the '304 Patent. The construction of the term "static" for the purposes of those patents has been conclusively resolved. TT wishes to appeal the '411 validity issue, which

has no impact on the '132 Patent or the '304 Patent. This Court's summary judgment Order on the validity of the '411 Patent does not overlap with any of the pending issues before the Court. Rather, the *eSpeed* issue is independent of the remaining infringement issues currently pending before the Court which require adjudication of the term "static."

There is likewise no overlap between the issue of section 112 support and the Defendants' other invalidity or non-infringement defenses that requires the Court to address those defenses prior to an appeal. TT's infringement claims of the '411, '768, '374, and '055 Patents are discrete claims, separate from the infringement claims of the other patents-in-suit and could have been brought separately. There are no overlapping issues of fact or law in the present case to prevent a Rule 54(b) certification.

The Defendants argue that the Federal Circuit should only be required to address in one appeal whether patents that share common disclosures, file histories and priority can have different definitions of the key term "static." Furthermore, the Defendants assert that issues of claim construction and infringement are the subjects of this Rule 54(b) request. But these were not the subjects that were before the Court on summary judgment, and they are not the subjects that TT seeks to have the Federal Circuit address. The *eSpeed* issue does not prohibit the Court from proceeding with the case with respect to the remaining patents-in-suit. The Court will be able to continue with the infringement analysis of the '132 and '304 Patents without revisiting the construction of the term "static" following a decision

from the Court of Appeals on the invalidity issues. Certifying the '411, '768, '374, and '055 Patents for appeal now will streamline the invalidity issues such that when infringement is addressed, the family of patents at issue will be uncontested and complete.

Furthermore, an appellate ruling on the '411 invalidity issue will advance judicial efficiency. With regard to the remaining Brumfield family of patents, a decision on the *eSpeed* issue may impact the Court's consideration of claim construction for several of these patents. The Court will benefit from the Federal Circuit's ruling on the *eSpeed* issue prior to conducting claim construction on later patents in the family. In addition, denying a Rule 54(b) certification will unduly prejudice TT in its ability to achieve finality in this case. Without being able to perfect an immediate appeal on the invalidity issue, the fundamental *eSpeed* issue will remain unresolved for years while protracted litigation proceeds over completely unrelated issues. Furthermore, the parties concede that the issue TT seeks to take an appeal on stands as a barrier to meaningful settlement discussions. The Supreme Court has held that the interest in facilitating settlement may be a significant enough factor in justifying a Rule 54(b) appeal even where other important factors weigh against an appeal. *See Curtiss-Wright Corp.*, 446 U.S. at 8 n.2.

The Court therefore concludes that there is no just cause for delay of an appeal with respect to the '411 Patent, the '768 Patent, the '374 Patent, and the '055 Patent. The balance of the equities favors certifying a Rule 54(b) appeal. There is no substantial overlap of legal

and factual issues on the claims that remain pending before this Court and those that TT seeks to appeal. The threat that the Federal Circuit will have to decide the same issue more than once even if there are successive appeals is almost non-existent. For these reasons, the Court enters a final judgment of invalidity with respect to the '411, '768, '374, and '055 Patents, dismisses the Defendants' counterclaims and defenses without prejudice, and certifies this case for an immediate interlocutory appeal to the Federal Circuit Court of Appeals pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.


_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 31, 2012