**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC. | ) ) ) | Case No. 10 C 715 (Consolidated with: 10 C 716, 10 C 718, 10 C 720, |
| Plaintiff, | ) ) | 10 C 721, 10 C 726, 10 C 882, 10 C 883, 10 C 884, 10 C 885, |
| v. | ) ) | 10 C 929, 10 C 931) |
| BGC PARTNERS, INC. | ) ) | Judge Virginia M. Kendall |
| Defendant. | ) ) ) | |

**PARTIES' PROPOSED SCHEDULES FOR CLAIM CONSTRUCTION**

Pursuant to the Court's order dated April 21, 2014, and because no agreement was reached, the parties submit the following proposals.

## *TT'S POSITION*

It is time for this case to proceed, rather than continuing to litigate it one issue at a time, or, as Defendants now suggest, one sub-issue at a time. The "preliminary issues" that Defendants suggested in May 2011 would streamline the case if addressed early (Dkt. No. 205 at 3-5) have now been resolved, and, some 3 years later, rather than being farther along, the case has returned to its starting point. TT has received only limited amounts of discovery from some, but not all, of the Defendants in this case. In fact, TT has not even received initial disclosures from all parties in the case. Discovery should move forward so that all of the consolidated cases can be put in the same posture, and so that all of the parties can best assess what issues will be in the cases, and what reasonable chances for settlement, if any, exist.

While the parties informed the Court prior to the appeal of the Court's summary judgment ruling that the case could proceed with respect to any patents not at issue in the appeal (Dkt. No. 479 at Ex. A), no schedule was ever entered, and when TT attempted to raise one with the Defendants, it was told that discovery needed to await the outcome of the appeal. Ex. B. But, Defendants now ask the Court to again break the case down and delay any meaningful discovery or progress in the case by either (1) holding a *Markman* hearing on a single term from one of the 16 asserted patents or (2) staying the case pending rulings from the Patent and Trademark Office on covered business method (CBM) petitions that a single Defendant, TD Ameritrade, *intends* to file. Neither of these positions is a valid reason to continue to stall discovery or progress towards trial. Indeed, TT submits that it will be only when the Court constrains the parties to abide by a schedule that there will even be any meaningful progress towards resolution of this case. As just one example, history has proven that meaningful settlement discussions only occur if the case is proceeding with a concrete schedule

TT submits that the best procedure would be to avoid further fracturing the case, and instead move forward with a schedule that is consistent with the spirit of the Local Patent Rules in both structure and timing. Therefore, TT requests that the Court enter a full case management schedule, complete with limits on discovery and dispositive motions,[1] and initiate discovery as soon as possible. TT's proposed schedule is set forth in attached Exhibit A. While TT's schedule tracks the structure of the Local Patent Rules, there are portions of TT's proposal that extend the times set forth in the rules in recognition of the number of parties, the number of patents, and the likely number of issues in the case. Under TT's schedule, a claim construction hearing on all patents would take place in late February 2016, the deadline for filing dispositive motions would be mid-February 2017, and the parties would be trial ready shortly thereafter.[2] Defendants' proposal is some five months longer than TT's proposed schedule, but skews the schedule significantly. While TT must provide infringement contentions separately for each defendant as well as responding to all of Defendants' invalidity and unenforceability contentions, whereas the Defendants' need only respond individually to TT's infringement contentions, Defendants' schedule provides the bulk of time for purposes of Defendants' submissions.

In response to Defendants proposed July 7, 2014 deadline for TT to produce to Defendants all documents from related litigations, TT objects to Defendants' suggestion that TT

---

[1] Because the Court did not ask for the parties to address discovery or dispositive motion practice, TT is not discussing those issues in this filing. TT notes, however, that both parties previously presented discovery proposals in 2012 (Dkt. No. 458). TT requests that it be allowed to present, whether in a filing or in a status discussion with the Court, a proposal that details discovery limits and limits to the number of dispositive motions allowed in the case. Absent reasonable limits on dispositive motions, Defendants will simply file serial motions in a further attempt to take the case one issue at a time and delay final resolution of the case. By setting limits, all parties will be forced to prioritize their issues, presenting only the most significant to the Court, rather than asking the Court to decide each and every issue on summary judgment.

[2] TT notes that it and the CQG defendants currently have a February 2015 trial date in front of Judge Coleman for the 2005 case (Civil Action No. 05-CV-4811), and that, should trial go forward in the 2005 Sungard/GL case (Civil Action No. 05-CV-4120), it also potentially will occur in 2015.

3

should be forced to reproduce CQG's and Sungard's own confidential and public documents back to them and the other Defendants. This is particularly problematic given that 1) CQG has produced over 14 million pages of documents to TT that due to the immense burden and cost, TT has not indexed for confidentiality and thus cannot segregate by confidentiality (the complexity and burden of doing so further compounded because CQG has lowered the confidentiality designation of many of its documents without ever re-branding them and re-producing them to TT) and 2) Sungard has previously threatened to seek sanctions for protective order violations for reproducing its confidential information in a related litigation pursuant to a request for such information from CQG, even though TT provided advance notice to Sungard without receiving any objections. Instead, TT proposes that the Court enter a date for the parties to submit a separate filing addressing their respective positions regarding documents from related litigations, and how costs should be allocated for such a production.

TT submits that, even should the Court wish to conduct a separate proceeding on the '411 patent, that it enter TT's proposed schedule with respect to all other patents in the case.

## I.    Conducting An Expedited Claim Construction Proceeding Regarding the Term Price Axis in the '411 Patent Will Be Inefficient and Ineffective

Defendants' request that the parties and Court move forward only with claim construction proceedings regarding the term "price axis" in the '411 patent, while all other issues are stayed. TT does not read the Order as being so limiting, but instead reads the Order as the requesting a full case schedule, as one has never been entered.

Defendants' piecemeal approach to claim construction will significantly lengthen the course of the case, and TT contends that this would not be an effective use of the Court's or the parties' time and resources. Indeed, it is not bad enough that Defendants are asking for separate *Markman* proceedings on only one of 16 patents, but they are potentially asking for more than

one *Markman* proceeding with respect to the '411 patent alone. When asked during discussions about the schedule, Defendants would not commit that there are no other terms in dispute. This type of approach will not facilitate resolution of the case, but will instead serve to further delay proceedings that are now in their fifth year.

Even were the Court to agree that a separate early proceeding for the '411 patent is desirable, TT submits that it should follow the process set forth in the Local Patent Rules, beginning with an exchange of all claim terms that the parties believe will be in dispute, accompanied by the parties' constructions of those terms. LPR 4.1. As intended when implemented, the Local Rules process may serve to narrow the number of issues for the parties and the Court to address during claim construction and subsequent proceedings.[3] In parallel, the case should proceed according to the schedule set by the Court on all other issues.

Defendants are simply attempting to obtain a piecemeal claim construction in order to front load one of their defenses, i.e. a written description issue with the '411 patent. As set forth above, that is not an appropriate process. Even assuming the Court was to take this issue out of turn, Defendants' written description argument cannot be fully addressed simply by construing "price axis" in isolation. For example, part of Defendants' reasoning (which TT contends is flawed) is that it is relevant whether the scope of the claims covers any generic price axis. If the Court entertains this argument, it would then need to address other related claim terms (e.g. moving indicators relative to the price axis) that impact the scope of the claims. Thus, having an early claim construction proceeding on the '411 patent limited to the term price axis will not assist in further advancing the case, but will instead simply be another imposition on the time and resources of the Court and the parties. Moreover, even were the Court to decide there would

---

[3] At the time of submission, TT had not seen a proposed schedule from Defendants that included the initial exchange of positions with respect to all terms potentially at issue in the '411 patent.

be some benefit in having an early *Markman*, there would still need to be time for some preliminary discovery (as set forth in the Local Patent Rules) in order to fully focus and limit the issues that the Court would need to address in the *Markman* hearing to those that are truly relevant to the case.

## II.     The Court Should Not Stay the Case Further Pending the Results of Any Covered Business Method Petitions Filed

A CBM review is a special limited review procedure under Section 18 of the AIA.  While CBM review has been available since September 2012, the Defendants did not raise the possibility of filing CBM petitions with respect to any of the patents-in-suit (and an associated stay of these proceedings) until April 30, 2014, after the Court entered its order requiring the parties to submit a schedule.  Clearly, filing CBM petitions now is an attempt to further delay this lawsuit and would amount to a vexatious multiplication the litigation.  While TT contends that the timing of these petitions alone suggests further delay attempts, the intended CBM petitions that any of the Defendants may later file are not relevant to whether the case should move forward.

Any CBM filing against the patents-in-suit would be frivolous.[4]  For example, in addition to being filed for purposes of delay, Section 18 of the AIA was put in place to address bad patents being asserted by non-practicing entities and the purpose was to help the economy and job growth.  TD's threatened abuse of this process to attack important patents being asserted by a real business practicing the protected technology is nothing short of bullying – equivalent to the

---

[4] The AIA was clear that post-grant proceedings should not be used for improper purposes.  To address this type of misuse, Section 326(a)(6) of the AIA provides that the PTO Director shall create sanctions for "abuse of discovery, abuse of process, or any other improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding."  Patent Reform Act of 2011, Pub. L. 112-29, H.R. 1249, Section 6 (35 U.S.C. § 326(a)(6)) (2011)

alleged "patent troll" problem on the plaintiff side. Even though any threatened CBM filing will ultimately fail, it could cost TT significant amounts of money to defend against such a filing by its competitor, as well as further erode TT's market share. It is not appropriate for a large multi-billion dollar company such as TD to use such a proceeding to seek delay and to unreasonably burden a small business such as TT. The costs are real for a local company like TT – hurting the economy and threatening jobs. This is directly contrary to the whole point of the CBM law. TT will substantively address TD Ameritrade's request for a stay if and when it is filed. TT does note that the mere fact that Defendants seek CBM review of one or more of the patents does not in any way guarantee that review will be granted. And the PTO itself has indicated that a stay of other proceedings is inappropriate simply because a CBM petition has been filed. *Chicago Mercantile Exchange, Inc., v. 5th Market, Inc.*, Case CBM2014-00114 (PTAB Apr. 15, 2014) ("We explained that it is premature to stay the co-pending reexamination at such an early stage of this proceeding because we have yet to determine whether to institute a covered business method patent review of the '387 patent.") (Ex. C.) Moreover, TT is presently unaware of the number of petitions Defendants intend to file or which patents they will address. If CBMs are filed and if TD Ameritrade moves for a stay, at that time TT will also address whether a stay is appropriate in view of the fact that only one of the Defendants appears to be involved in the CBM process. A stay is should not even be considered in the first place unless all parties are clearly bound by any estoppel applying to TD Ameritrade under Section 18 of the AIA in order to bar endless litigation of the same issue and endless stays occasioned by multiple defendants filing separate CBM petitions.

Thus, the Court should not at this time consider whether the proposed CBM petitions may or not be filed and perhaps granted at a later date, but should require that the cases move

forward and readdress the issue, if necessary, once the parties all know whether any petitions

have been granted, and how the petitions impact the full scope of the asserted patents.

### *DEFENDANTS' POSITION*

All Defendants provide their position below, except for the TradeStation Defendants which provide a separate position statement at pp. 18-19.

As an initial matter, the TD Ameritrade defendants (collectively, "TD Ameritrade") provide a statement in Section A below regarding their intention to seek administrative patent review before the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTAB"), and a corresponding stay of the litigation. Defendants believe it would make the most sense for the Court to postpone consideration of case scheduling issues until it has the motion to stay before it.

With respect to the scheduling issues, there is some disagreement as to the scope of the claim construction schedule referred to in the minute order of April 21, 2014 ("Minute Order"). Whereas, in discussions with TT, a number of Defendants indicated that they believe the Minute Order is reasonably and appropriately read as requesting solely a schedule for construction of the term "price axis" as used in the '411 patent, TT indicated that it believes the Minute Order calls for the preparation of a schedule for the case as a whole, including all 16 patents-at-issue and covering all events listed in the Local Patent Rules up to the time of trial. For the sake of completeness, and in the event the Court wishes to address scheduling issues now, Defendants have prepared and propose two schedules: first, a schedule for claim construction on the term "price axis" as used in the '411 patent, discussed in detail in Section B below; and second, a schedule for the case as a whole, addressed in Section C below.

### A. Consideration of Scheduling Issues Should Be Deferred Slightly until TD Ameritrade's Motion for a Stay Has Been Filed.

TD Ameritrade wishes to inform the Court that it intends to file a number of petitions for

Covered Business Method (CBM) Patent Review[5] before the PTAB. The petitions will address some of the most important patents asserted against TD Ameritrade in this litigation. With respect to timing, TD Ameritrade anticipates that its petitions for CBM review will be on file in the next few weeks. Shortly thereafter, TD Ameritrade intends to file a motion to stay this litigation pending the review proceedings. In light of the foregoing, TD Ameritrade respectfully requests that the Court defer setting a schedule for this litigation until after it has considered TD Ameritrade's forthcoming motion to stay. The remaining Defendants concur in this request.[6]

**B. Early and Discrete Resolution of the Construction of "Price Axis" as that Term Is Used in the '411 Patent Will Save Millions of Dollars in Attorneys' Fees and Costs and Resolve the Most Common Issues as to All Defendants.**

Recognizing that there is disagreement with TT as to the scope of the claim construction contemplated by the Minute Order, Defendants propose the schedule set forth below for claim construction of the term "price axis" as used in the '411 patent. If the Minute Order was directed to claim construction of the term "price axis" as used in the '411 patent, as a number of

---

[5] Although CBM review is a relatively new post-grant review proceeding from the Leahy-Smith America Invents Act (AIA), it was expressly designed for cases just like this. The proceedings are only available for patents that claim "a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service." AIA § 18(d)(1). Also, Congress intended CBM review to be "an efficient administrative proceeding, avoiding costly litigation." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011). For example, the PTAB must issue its final decision within approximately 18 months of the petition being filed – which is approximately half the time it would take to get to trial under TT's proposed litigation schedule. Congress also expressly contemplated stays of litigation while the PTAB conducts its CBM review. AIA § 18(b). Indeed, Congress envisioned that "it is nearly impossible to imagine a scenario in which a district court would not issue a stay" during the pendency of a CBM review. *Id.* Current statistics suggest there is an 88% likelihood that the PTAB will grant TD Ameritrade's petitions and institute CBM proceedings on the subject patents. Notably, out of the 11 CBM petitions that have been granted and proceeded to a final written decision to date, 100% of the claims at issue have been cancelled.

[6] Defendants asked TT to join in a request to adjourn the schedule submission date set out in the Court's Minute Order by fourteen days. TT refused that request.

Defendants understood,[7] Defendants respectfully submit that this proposed schedule should be adopted.

Proceeding now with claim construction of the term "price axis" as used in the '411 patent, will promote efficiency. Both the Court and the parties have expended substantial resources concerning the written description issues raised by Defendants' renewed motion for summary judgment, which TT objected to on the ground that it purportedly needed claim construction of the term "price axis."[8] Under Defendants' proposed schedule, to the extent TT really believes the term "price axis" needs to be construed, that discrete issue can be teed up for resolution, with a *Markman* hearing on it held, by the end of July 2014 -- within the next three months.

The efficiencies achieved would be substantial. If, following the proposed claim construction process, Defendants' renewed motion is granted (as Defendants believe it should be), that will directly invalidate the '411 patent. Also, the written description ruling on the '411 patent (*i.e.*, that the specification does not provide written description support for a display with a non-static price axis) will, *ipso facto*, mandate similar rulings on the '768 and '374 patents, which have the same specification as the '411 patent, and, likewise, claim displays with price

---

[7] This is the same term that was the subject of Defendants' renewed motion for summary judgment, in response to which TT argued that claim construction of the term "price axis" was needed. (*E.g.*, DE 534 at 6 & n.4.) This is a position TT reiterated at the March 6, 2014 hearing before the Court. (*E.g.*, Tr, Hearing of March 6, 2014, at 13, 18-19, 24-26.) The Minute Order, ordering the parties to propose a schedule for claim construction, then followed.

[8] In discussions concerning the Minute Order, counsel for TT indicated that it may agree during the exchange of proposed constructions that (as Defendants have contended) there is in fact no claim construction dispute concerning the term "price axis"; and, that (again as Defendants have contended) a *Markman* hearing on the term "price axis" is not necessary. Should such occur, Defendants' renewed motion for summary judgment could then promptly be refiled.

axes that are not limited to static but include automatic as well.[9] This would completely eliminate three patents from the case and avoid the needless expenditures of substantial time and money -- potentially millions of dollars -- on discovery relating to those patents.

In addition, while an early ruling on Defendants' renewed motion for summary judgment on the '411 patent would not be dispositive of all of the patents-in-suit, it would substantially streamline the issues relating to a number of them. For example, the '382, '996, '424, and '929 patents are all claimed to be continuations or continuations-in-part of the '132 patent, claim displays with price axes that are static and, relative to the description of "price axis", have specifications that are the same as or substantially similar to the specification of the '411 patent (which is itself claimed by TT to be a continuation of the '132 patent). With respect to these patents, TT has previously taken the position that the term "static," as used in these patents, includes automatic repositioning. (*E.g.*, Dkt. No. 479 at 15-18.) However, TT has also stated that, if it is concluded that the specification does not provide written description support for a non-static price axis, it will agree that the term "static" as used in those patents should be construed to exclude automatic. (*Id.* at 17 n.10.) Accordingly, an up-front ruling on the "non-static" written description issue would limit the scope of the claims of the '382, '996, '424, and '929 patents, as well as the prior art pertinent to them, and would narrowly focus the infringement issues to products with price axes that are truly static. Again, the cost savings would be tremendous.[10]

---

[9] As the Court may recall, it was for this reason that, following the Court's decision on the prior summary judgment motion, TT agreed that, if the '411 patent was invalid, then the '768 and '374 patents were also invalid.

[10] TT, presumably, will argue that an early construction of "price axis" as used in the '411 patent would be "piecemeal" claim construction that should be avoided. However, such an argument, to the extent made, is shortsighted and wrong. As discussed above, claim construction of the term "price axis" as used in the '411 patent can be completed within the next few months and, as such, would result in no

Therefore, assuming that these proceedings are not stayed in light of TD Ameritrade's intended CBM petitions and motion for a stay, Defendants propose the following schedule for claim construction of the term "price axis" as used in the '411 patent -- because the issue is not complicated, Defendants propose that the process begin at the end of May 2014 and culminate with a *Markman* hearing approximately two months later in July 2014. In the interest of clarity, the schedule below pertains solely to claim construction of the term "price axis" as used in the '411 patent, and not to the construction of any other term used in that patent (as to which Defendants reserve all of their rights). Also, Defendants propose that (absent a stay) this schedule be followed irrespective of whether there is any other case schedule that may be entered with respect to the patents-in-suit, including the '411 patent.

| Date | Event |
|------|-------|
| 5/23/14 | Parties exchange proposed constructions of term "price axis" |
| 5/30/14 | Parties meet and confer regarding proposed constructions |
| 6/13/14 | Defendants file single, consolidated opening brief on construction of "price axis" |
| 6/27/14 | TT files its responsive brief |
| 7/3/14 | Defendants file single, consolidated reply brief |
| Week of 7/21/14 | *Markman* hearing (no more than 1 hr. per side in duration) |

## C. If the Minute Order Contemplated the Preparation of a Proposed Schedule for All 16 Patents-in-Suit, Defendants' Proposed Case Schedule Should be Adopted.

In the event the Minute Order was seeking such a schedule for the case as a whole, attached as Exhibit D is a proposed schedule for the case as a whole, which would be applicable

---

appreciable delay to the case as a whole, but has the potential for very substantial efficiencies and narrowing of the issues for discovery, as well as future summary judgment motions, and (if there is one) trial. This presents an opportunity that should be seized.

to activities relating to all 16 patents-in-suit.[11]  For comparison, Defendants have also included the dates proposed by TT.

Generally speaking, the schedule proposed by Defendants provides some additional amount of time relative to the schedule proposed by TT.  For example, Defendants' proposed schedule has the *Markman* hearing for construction of terms in all 16 patents-in-suit in August 2016, whereas TT's proposed schedule has it occur in February 2016, six months earlier.  For activities prior to the *Markman* hearing, TT's proposed schedule is similarly more accelerated than Defendants' proposed schedule.  However, in light of the large number of patents-in-suit, and claims in the case as a whole, Defendants believe that their proposed schedule is in fact already very constricted, and that any further cuts to the schedule, such as those proposed by TT, would severely limit Defendants' ability to prepare and would prejudice Defendants.

The differences in dates between Defendants' and TT's schedules reflect the reality of the many Defendants' different products, different business models, and the different patents asserted against each of them.  There is not complete overlap of products or patents in this case.

Moreover, prior experience, including, in particular, the experience of the SunGard and FuturePath Defendants in connection with their other separately pending litigation with TT (05-cv-4120 consolidated with 05-cv-5164), and the experience of the CQG Defendants in connection with their other separately pending litigation with TT (05-cv-4811), teaches that despite the parties' good faith efforts to streamline the issues in these cases and act expeditiously, the issues generated in these litigations will inevitably be complex and demand extensive and

---

[11] A schedule that includes claim construction schedule for all 16 patents-in-suit, unlike a claim construction schedule for the term "price axis" as used in the '411 patent, would necessarily require scheduling all the antecedent discovery and other activities referred to in the Local Patent Rules; and, as the parties agree, would result in claim construction taking place **no earlier** than 2016.  By contrast, in the past, when the Court wished the parties to propose schedules that included matters such as discovery, it asked for that explicitly.  *E.g.,* DE 217 at 5 (referring to DE 205), DE 447.

time-consuming work at all states of the discovery process. Notably, in the SunGard/ FuturePath/CQG 2005 cases, only two patents—the '132 and '304 patents—are at issue. Here, however, while the same '132 and '304 patents are asserted against some of the Defendants (who have yet had no discovery with respect to them), 14 other patents, including patents from patent "families" different to the '132 and '304 patent family, are also asserted. Under these circumstances, TT's proposal to effectively truncate Defendants' proposed schedule—by a full six months as of the time of the *Markman* hearing and even more so for post-*Markman* activities—is manifestly unreasonable and should be rejected.

Also, Defendants have included, within their proposed "whole case" schedule, a July 2014 *Markman* hearing for claim construction of the term "price axis" as used in the '411 patent. The dates for the associated exchange of proposed constructions, meet and confer, and *Markman* briefing, as regards this term, that are set out at p. 13 above would also apply. Defendants believe that in light of the clear efficiencies that would be achieved by early rulings on the construction of the term "price axis" as used in the '411 patent and on Defendants' renewed motion for summary judgment (discussed at pp. 10-13 above), the two should proceed in parallel. Put simply, in the event that discovery proceeds for the case as a whole, an early disposition of the issues raised by Defendants' renewed motion for summary judgment on the '411 patent could substantially streamline case proceedings involving not only the '411 patent, but also the '768, '374, '382, '996, '424, and '929 patents.[12]

Finally on this subject, Defendants feel compelled to address one additional issue, pertaining to the implementation details of certain proposed discovery concerning the production of documents from prior litigations, that Defendants do not believe is ripe or appropriate for the

---

[12] The proposed schedules end at the deadline for filing dispositive motions. Each Defendant is entitled to, and may request, a separate trial if any one or more of these cases proceeds to trial.

Court to address at this juncture since it goes well beyond the schedule itself. But, TT has raised this issue with Defendants in discussions over the schedule and has indicated that it intends to raise it with the Court as part of this submission. In the event that TT does so,[13] Defendants request that the Court consider the following:

Defendants' proposed schedule lists, as the first event, the production, by TT, of all documents produced to or by TT and its related entities in all the prior patent infringement actions filed by TT in this District concerning any one or more of the patents-in-suit, excluding at this time documents produced by defendants in those actions that were designated as "Highly Confidential," "Highly Confidential - Patent Prosecution," "Attorneys' Eyes Only," and/or "Highly Confidential – Attorneys' Eyes Only". In discussions, counsel for TT has advised that it is agreeable to producing, to the Defendants, documents that TT produced **to** defendants in the other litigations, but is not willing to produce documents that TT received **from** those defendants. The sole reason given by TT is that, for productions that it received from some of those defendants, TT did not catalog which documents fall into one or more of the "Highly Confidential" or "Attorneys Eyes Only" categories, and thus has no easy way to withhold such documents from production to Defendants in this case. That purported excuse is untenable and should be rejected.

In fact, TT has previously been ordered to do as Defendants request herein. For example, on December 28, 2005, Judge Moran ordered TT to turn over "all discovery" and "all forms of discovery" from the *eSpeed* case to all defendants who were then consolidated before him for the purpose of addressing "common issues". (Dkt. Nos. 219 and 220 in 04-05312.) Judge Moran

---

[13] TT and Defendants each prepared their own position statements for inclusion in this joint filing, and no draft statements were exchanged. Accordingly, neither side has had an opportunity, prior to filing, to review the other side's position statement or revise its own in light of it.

ordered that the documents from the *eSpeed* case being produced in other cases were subject to the *eSpeed* Protective Order.

Further, on March 30, 2011, Magistrate Judge Schenkier, in the SunGard/FuturePath 2005 case, ordered TT to comply with Judge Moran's prior order in the consolidated cases and produce to SunGard/FuturePath in their 2005 "all" documents that had been produced in the *eSpeed* case. (Dkt. No. 453 in 05-4120.) While Judge Moran had ordered production of "all discovery" without any opportunity for objection because the *eSpeed* protective order prevailed, Magistrate Judge Schenkier afforded eSpeed and nonparties an opportunity to object to their documents from the *eSpeed* case being produced to SunGard/FuturePath in their 2005 case. As provided for in Magistrate Judge Schenkier's Order, eSpeed objected to the production of certain documents to SunGard/FuturePath and TT, and, in doing so, submitted to the Magistrate Judge Schenkier charts of what eSpeed contended were "Discoverable" and "Non-Discoverable", and which TT and SunGard/FuturePath pursued to the result of TT making a production to SunGard/FuturePath of documents from various sources on April 15, 2011. Thus, TT has no argument with respect to eSpeed's documents not being catalogued, at least as a starting point.

Additionally, TT recently produced SunGard's/FuturePath's documents from their 2005 case to CQG in the CQG 2005 case; and, according to TT, TT did not produce any "Confidential" and/or "Highly Confidential" documents to CQG, having allegedly somehow separated such documents. If TT could separate the documents then, it can do so again now.[14]

---

[14] In discussions with counsel for Defendants, counsel for TT suggested that, because of certain effective re-designations of production materials that occurred in the *CQG* litigation, TT cannot tell what documents are "Highly Confidential" and thus should be withheld from production in this case. That is a straw man and untrue. In the *CQG* litigation, CQG designated as "Highly Confidential – Patent Prosecution" certain documents that were not source code. Although TT contested that designation under the Protective Order in the CQG case, the parties eventually agreed to treat those documents as "Highly Confidential – Attorneys' Eyes Only". (W. Voller Ltr. to J. Kurcz at 3, Nov. 16, 2012; R. Carden Ltr. to J. Schenkier at 2, Nov. 21, 2012.) When CQG refused to formally re-designate the documents, TT moved

Moreover, TT undoubtedly has all of the documents stored in an electronic database. Thus, a simple search across any electronic database for the various "Highly Confidential" categories pursuant to the Protective Order would yield the documents that could be excluded from production at this time. Therefore, TT's position is unavailing.

The documents produced in other cases relating to the same patents-in-suit are clearly relevant to this suit and could save the parties significant resources and time, at least with respect to prior art discovery relevant to the '132 and '304 patents. The documents produced in other cases in some instances are no longer available to the Defendants herein by way of subpoena to the original producing party. For example, Refco no longer exists today. However, TT has the documents that Refco produced, and thus it is prejudicial for TT to have the benefit of those documents while not producing them to Defendants herein.

### TradeStation Defendants' Position

The TradeStation Defendants request the same proposed dates for a case schedule submitted herewith by the other defendants (including an accelerated track for claim construction and renewed motions on the "price axis" issues in the '411 patent) but does not join the rest of the other defendants' submission. As for the "fast track" *Markman* and summary judgment proposal for the "price axis" term in the '411 patent, this one streamlined procedure could save

---

to compel a new production of these documents with the "Highly Confidential – Attorneys' Eyes Only" designation. However, Magistrate Judge Schenkier denied TT's motion because "it is in everybody's interest to have [the parties] focus on more substantive things." (05-cv-4811 Schenkier Hr'g Tr. 14:23-16:6, Dec. 3, 2012.)

Thus, although some of CQG's documents are designated "Highly Confidential – Patent Prosecution", when they are being treated as if they were "Highly Confidential – Attorneys' Eyes Only", this framework should not impede TT's ability to differentiate between CQG's highly confidential documents and CQG's non-highly confidential documents for purposes of production in this litigation. In each instance, CQG's highly confidential documents are designated as either "Highly Confidential – Patent Prosecution" or a "Highly Confidential – Attorneys' Eyes Only" -- and thus would not be producible to Defendants other than CQG. Accordingly, TT can readily distinguish between CQG documents, and the purported impediment to production here that it has asserted does not in fact exist.

millions of dollars amongst the parties and is the most efficient way to resolve a lynchpin of these disputes outside of the USPTO. As for the overall case schedule, the Defendants' proposed dates reflect the reality of the timing and complexity of these multiple cases, which involve many parties, many patents (with incomplete overlap between the cases), as well as different accused products in each case and each Defendant being entitled to a separate trial. The Court should enter a schedule through the date for filing of dispositive motions but not beyond that date. Defendants are entitled to separate trials under *In re EMC Corporation*, 677 F.3d 1351 (Fed. Cir. 2012) (holding that cases must be tried separately where different products are accused regardless of the existence of common pretrial issues) and/or pursuant to 35 U.S.C. § 299 (statutory provision for joinder of parties). Accordingly, trial dates (including deadlines for trial motions) for each individual Defendant should be set, if necessary, only after all dispositive motions have been resolved.

Date: May 5, 2014


s/ Andrea K. Orth
Leif R. Sigmond, Jr. (ID No. 6204980)
(sigmond@mbhb.com)
Matthew J. Sampson (ID No. 6207606)
(sampson@mbhb.com)
Michael D. Gannon (ID No. 6206940)
(gannon@mbhb.com)
S. Richard Carden (ID No. 6269504)
(carden@mbhb.com)
Jennifer M. Kurcz (ID No. 6279893)
(kurcz@mbhb.com)
Andrea K. Orth (ID No. 6301900)
(orth@mbhb.com)
**McDonnell Boehnen Hulbert**
**& Berghoff LLP**
300 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 913-0001
Fax: (312) 913-0002


Steven F. Borsand (ID No. 6206597)
(Steve.Borsand@tradingtechnologies.com)
**Trading Technologies**
**International, Inc**.
222 South Riverside
Suite 1100
Chicago, IL 60606
Tel: (312) 476-1000
Fax: (312) 476-1182


**Attorneys for Plaintiff,**
**TRADING TECHNOLOGIES**
**INTERNATIONAL, INC.**

Date: May 5, 2014


s/ Adam G. Kelly (by permission)
***Counsel for CQG, et al.***
***(Case No. 10-CV-0718):***
Adam G. Kelly
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
akelly@loeb.com


s/Anthony B. Ullman
***Counsel for FuturePath, Inc.***
***(Case No. 10-CV-0720):***
Anthony B. Ullman
SNR Denton Europe LLP
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
anthony.ulman@dentons.com


Lora A. Moffatt
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 1002-2544
lmoffatt@crowell.com


Philippe Bennett
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016-1387
pbennett@alston.com


**OF COUNSEL:**
Brian W. Norkett
BULLARO & CARTON PC
200 North LaSalle St., Suite 2420
Chicago, IL 60601
Tel: 312-831-1000 / Fax: 312-831-0647

s/ Michael B. Levin
**Counsel for Interactive Brokers, LLC et al.**
**(Case No. 10-CV-721):**
Michael B. Levin
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
mlevin@wsgr.com

Steven P. Mandell
333 W. Wacker Drive, Suite 300
Chicago, IL 60606
smandell@mandellmenkes.com

s/ James J. Lukas, Jr.
**Counsel for Open E Cry, et al.**
**(Case No. 10-CV-885):**
Daniel D. Rubinstein
James J. Lukas, Jr.
Eric J. Maiers
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: 312.456.8400
Fax: 312.456.8435
rubinsteindd@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com

Scott J. Bornstein
Jonathan M. Dunsay
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.801.9200
Fax: 212.801.6400
bornsteins@gtlaw.com
dunsayj@gtlaw.com

Douglas R. Weider
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932-0677
Telephone: 973.360.7900

Fax: 973.301.8410
weiderd@gtlaw.com


s/ Michael B. Levin
**Counsel for TD AMERITRADE, Inc. et al.**
**(Case No. 10-CV-883):**
Michael B. Levin
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
mlevin@wsgr.com

Steven P. Mandell
333 W. Wacker Drive, Suite 300
Chicago, IL 60606
smandell@mandellmenkes.com


s/ David J. Healey
**TradeStation, et al.**
**(Case No. 10-CV-884):**
David J. Healey
Fish & Richardson P.C.
One Houston Center
1221 McKinney, Suite 2800
Houston, TX 77010
healey@fr.com


s/Anthony B. Ullman
**Counsel for SunGard, et al.**
**(Case No. 10-CV-716):**
Anthony B. Ullman
SNR Denton Europe LLP
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
anthony.ulman@dentons.com

Lora A. Moffatt
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 1002-2544
lmoffatt@crowell.com

|  | Philippe Bennett<br>Alston & Bird, LLP<br>90 Park Avenue<br>New York, NY 10016-1387<br>pbennett@alston.com<br><br>**OF COUNSEL:**<br>Brian W. Norkett<br>BULLARO & CARTON PC<br>200 North LaSalle St., Suite 2420<br>Chicago, IL 60601<br>Tel: 312-831-1000 / Fax: 312-831-0647 |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2014, I electronically filed the foregoing PARTIES' PROPOSED SCHEDULES FOR CLAIM CONSTRUCTION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons at the given e-mail addresses:

**Counsel for Open E Cry, et al.**
**(Case No. 10-CV-885):**
Daniel D. Rubinstein
Greenberg Traurig, LLP
77 W. Wacker Drive
Suite 3100
Chicago, IL 60601
rubinsteindd@gtlaw.com

James J. Lukas , Jr
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
lukasj@gtlaw.com

Douglas Weider
Greenberg Traurig Llp
200 Park Avenue
Florham Park, NJ 07932
weiderd@gtlaw.com

**Counsel for CQG, et al.**
**(Case No. 10-CV-0718):**
Kara Cenar
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
kara.cenar@bryancave.com

Adam G. Kelly
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
akelly@loeb.com

**Counsel for FuturePath, Inc.**
**(Case No. 10-CV-0720):**
Lora A. Moffatt
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022-2544
lmoffatt@crowell.com

Philippe Bennett
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016-1387
pbennett@alston.com

**Counsel for Interactive**
**Brokers, et al.  (10-CV-721):**
Michael Levin
Wilson Sonsini Goodrich &
Rosati
650 Page Mill Road
Palo Alto, CA 94304
mlevin@wsgr.com

Steven P. Mandell
333 W. Wacker Drive, Suite 300
Chicago, IL 60606
smandell@mandellmenkes.com

**Counsel for TD Ameritrade, et**
**al.  (Case No.10-CV-883):**
Michael Levin
Wilson Sonsini Goodrich &
Rosati
650 Page Mill Road
Palo Alto, CA 94304
mlevin@wsgr.com

Steven P. Mandell
333 W. Wacker Drive, Suite 300
Chicago, IL 60606
smandell@mandellmenkes.com

**Counsel for TradeStation, et al.**
**(Case No. 10-CV-884):**
David J Healey
Fish & Richardson P.C.
One Houston Center
1221 McKinney, Suite 2800
Houston, TX 77010
healey@fr.com

George Summerfield
Stadheim & Grear
Wrigley Tower - 22nd Floor
400 North Michigan Avenue
Chicago, Illinois 60611
summerfield@stadheimgrear.co
m

**Counsel for SunGard, et al.**
**(Case No. 10-CV-716):**
Lora A. Moffatt
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022-2544
lmoffatt@crowell.com

Philippe Bennett
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016-1387
pbennett@alston.com

s/ Andrea K. Orth