IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | No. 10 C 715 (Consolidated with: 10 C 716, 10 C 718, 10 C 720, 10 C 721, 10 C 726, 10 C 882, 10 C 883, 10 C 884, 10 C 885, 10 C 929, 10 C 931) Judge Virginia M. Kendall |
| Plaintiff, | | |
| v. | | |
| BCG PARTNERS, INC, | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

In early 2010, Plaintiff Trading Technologies International, Inc. ("TT") filed a number of cases in this District alleging infringement of various patents concerning electronic trading software used on electronic commodity exchanges. The Court consolidated these cases in 2011. *See* Dkt. No. 73. After a number of amended pleadings, early summary judgment practice, and an appeal to the Federal Circuit, Defendants TD Ameritrade, IBG LLC, and TradeStation[1] (collectively, the "Moving Defendants") filed motions seeking a stay of this case pursuant to Section 18(b) of the America Invents Act ("AIA") pending the United States Patent and Trademark Office's ("PTO") review of a number of the asserted patents. *See* Dkt. Nos. 545, 549, and 558. For the following reasons, the Court grants the motions to stay. The consolidated cases are stayed in their entirety.

**BACKGROUND**

The instant motions stem from five petitions filed by TD Ameritrade on May 19 and 20, 2014 with the PTO seeking review under the transitional program for covered business method

---

[1] Defendants Sungard and CQG filed position statements stating that they did not oppose the motion to stay. *See* Dkt. Nos. 548 and 553. No defendant has objected to a stay being entered.

patents ("CBM review") of U.S. Patent Nos. 7,533,056 ("the '056 Patent"); 7,685,055 ("the '055 Patent"); 6,772,132 ("the '132 patent"); 7,676,411 ("the '411 Patent"); and 6,766,304 ("the '304 Patent") (collectively, the "CBM Patents"). TD Ameritrade challenged the patentability of all of the claims within the CBM Patents, arguing, among other things, that they are patent ineligible under 35 U.S.C. § 101. On December 2, 2014, the PTO determined that the petitions for (1) the '056 Patent, (2) the '055 Patent, (3) the '132 Patent, and (4) the '411 Patent demonstrate that it is more likely than not that all of the challenged claims are patent ineligible under 35 U.S.C. § 101 and therefore instituted CBM review of the 118 challenged claims.[2] The PTO declined to institute CBM review of the claims within the '304 Patent. CQG filed a petition with the PTO for CBM review of the '132 and '204 Patents on January 9, 2015.

## LEGAL STANDARD

Section 18 of the AIA provides for the establishment of transitional post-grant review proceedings to reexamine the validity of covered business method patents. Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 284 (Sept. 16, 2011). The AIA also establishes protocol with respect to related patent infringement actions and authorizes the district courts to stay such parallel litigation under certain circumstances. Specifically, § 18(b)(1) states:

> If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on--
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

---

[2] The PTO additionally concluded that it is more likely than not that all of the claims of the '056 Patent and all but one of the claims of the '055 Patent are unpatentable under 35 U.S.C. § 103.

2

> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.* The statutory test thus closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex part* reexamination by the PTO. *See, e.g.*, *Genzyme Corp. v. Cobrek Pharm., Inc.*, No. 10 CV 00112, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011) (applying three-factor stay test that considers "whether a stay will (1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in questions and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court"); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 WL 1882010, at *1 (N.D. Ill. May 11, 2010).

The AIA's inclusion of the fourth factor was included, in part, to favor the granting of stays. *See, e.g.*, *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 480 (E.D. Va. 2014) (fourth factor "designed to place a thumb on the scales in favor of a stay"); *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013) (fourth factor included "to ease the movant's task of demonstrating the need for a stay"). Congress signed the AIA into law on September 16, 2011, and CBM review came into effect in September 2012.

## DISCUSSION

The Moving Defendants seek a stay of the litigation brought against them, arguing that the PTO's decision on the CBM patents will thoroughly streamline the future litigation and affect the other asserted patents due to similar claim terms, inventors, and prior art shared amongst the patents. TT opposes the motion, primarily contending that because the PTO instituted review on only four of the fifteen patents in issue, any simplification is minimal and a stay is therefore unwarranted. But because the PTO instituted CBM review on 118 of the approximately 400 claims at issue in this litigation and PTO reasoning and determinations will necessarily affect how the Court views the remaining claims, the Court concludes that a stay of the consolidated

cases is most efficient for the parties, best conserves judicial resources, and avoids piecemeal litigation. The Court's decision is bolstered by the fact that at least one of the CBM Patents is asserted against each remaining defendant to this litigation. Here, the factors of the AIA test weigh in favor of a stay.

### A. Simplification of the Issues

Section 18(b)(1)(A) instructs the Court to consider "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." Pub. L. No. 112-29, § 18(b)(1)(A). As courts in this district have previously noted, staying a patent infringement case pending administrative review of the asserted patents' validity can simplify litigation in several ways:

> 1. All prior art presented to the Court will have been first considered by an expert PTO examiner;
> 2. The reexamination may alleviate discovery problems relating to the prior art;
> 3. The suit will likely be dismissed if the reexamination results in effective invalidity of the patent;
> 4. The outcome of the reexamination may encourage settlement;
> 5. The record of the reexamination would likely be entered at trial and thus reduce the complexity and length of the litigation;
> 6. The reexamination will facilitate limitation of issues, defenses, and evidence in pre-trial conferences;
> 7. Litigation costs to the parties and the Court will likely be reduced.

*Genzyme*, 2011 WL 686807, at 3-4 (quoting *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at 2 (N.D. Ill. Feb. 2, 1987); *see also, e.g.*, *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004) (stay warranted because "[t]here is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope [due to reexamination] . . . [creating] a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings").

These benefits exist even if only some of the litigated claims are undergoing CBM review. *See Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1371-72 (Fed. Cir. 2014) (although the simplification factor "weighs more strongly in favor of stay when *all* of the litigated claims" are being reviewed, "stays can be warranted even when a CBM proceeding does not address all asserted patents, claims, or invalidity defenses"), *vacated*, No. 2014-1568[3]; *see also Versata Software, Inc. v. Dorado Software, Inc.*, No. 2:13-cv-00920-MCE-DAD, 2014 WL 1330652, at *3 n.2 (E.D. Cal. Mar. 27, 2014) (staying case where CBM review granted for only one of three asserted patents and for less than all claims); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 769 (E.D. Pa. 2014) ("courts have found significant potential for issue simplification even in cases where some but not all of the asserted claims are subject to PTO review"); *Genzyme*, 2011 WL 686807, at *3 (stay warranted even though "certain issues may remain in dispute even upon conclusion of the reexamination proceedings"). In this case, the PTO expressly determined that all of the claims in the '056 Patent, the '055 Patent, the '132 Patent, and the '411 Patent are more likely than not unpatentable. *See* Dkt. No. 572 Exs. A-D. The PTO further determined that the claims within the '056 and '055 Patents are more likely than not unpatentable on two separate, alternative grounds. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014) (evidence in the record weighed "heavily in favor of a stay" in part because the PTO determined that all of the challenged claims were more likely than not unpatentable on two grounds). Because the CBM review could dispose entirely of four of the asserted patents and 118 of the asserted claims, this factor weighs in favor of a stay.

---

[3] The Federal Circuit vacated its opinion on February 27, 2015, after recognizing that the original opinion was issued one day after the parties filed a joint request to dismiss the appeal. The vacate order did not disavow the reasoning of the original opinion. While the Court is aware that the vacated opinion is not binding, the Court finds its reasoning persuasive nonetheless.

Additionally, CBM review of the four CBM patents will undoubtedly shape future claim construction and litigation with respect to the other asserted patents. TT argues at length that the Court should deny the stay because eleven patents, regardless of the CBM review, will remain at issue. TT's position fails to recognize that even though some issues and claims will remain after CBM review, the cancellation of any claim "could significantly alter this action by clarifying and narrowing the claims and defenses available" to the parties here. *Dorado*, 2014 WL 1330652, at *2. The fact that the PTO is reviewing only a subset of the asserted patents, while lessening the potential simplification of the issues, does not eliminate the benefit of a stay in order to avoid duplicitous litigation on potentially moot claims and issues. *See VirtualAgility*, 759 F.3d at 1314 (disposing of the entire litigation is "the ultimate simplification of issues"). Moreover, TD Ameritrade points out, and TT does not dispute, that a majority of the non-CBM Patents share several common claim terms with the four CBM Patents. *See* Dkt. No. 561 at 8. Accordingly, the PTO's decisions will likely provide guidance on a number of the issues concerning the non-CBM Patents. *See, e.g.*, *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011) ("PTO has acknowledged expertise in evaluating prior art and assessing patent validity"); *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *4 (D. Del. Jan. 11, 2013) (courts benefit from the PTO's analysis of prior art that is later presented in litigation regardless of the outcome of the review).

Finally, the Court does not find that the non-petitioning defendants' refusal to consent to be estopped from raising arguments offered during CBM review eliminates the simplification of the issues. A reading of the AIA leads to the conclusion that Congress explicitly chose to estop *petitioners* of CBM review while allowing any *party* to a case to seek a stay pending CBM review. *See* Pub. L. No. 112-29, §§ 6(e)(1), 18(b)(1). Moreover, a review of the Senate's hearing

on the AIA confirms that whether or not a party to a patent proceeding agrees to be estopped from raising a co-defendant's arguments is irrelevant to the stay analysis. *See* 157 Cong. Rec. S1360, 2011 WL 797877 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) ("By codifying the exclusive set of factors that courts are to consider when granting stays, the [AIA] precludes courts from inventing new factors such as extra-statutory estoppel tests.").

Because the PTO instituted review on all of the claims in four asserted patents, "there will . . . be [at least] some amount of simplification for the court and the parties." *Cf. Moneycat Ltd. v. Paypal Inc.*, No. 14 CV 02490 JST, 2014 WL 5689844, at *3 (N.D. Cal. Nov. 4, 2014). A stay here could eliminate the need to litigate 118 of TT's claims and prevent the parties from litigating any defenses that may ultimately be mooted or significantly altered by a PTO decision. Therefore, the first factor weighs in favor of a stay.

B.     **Stage of Litigation**

This factor weighs heavily in favor of staying the consolidated cases. "Staying a case at an early juncture 'can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.' " *Trading Techs., Inc. v. CQG, Inc.*, No. 05 CV 4811, 2015 WL 161639, at *2 (N.D. Ill. Jan. 13, 2015) (quoting *Market-Alerts*, 922 F. Supp. 2d at 494). Although the consolidated cases were filed over four years ago, the parties have not engaged in any discovery beyond, at the most, initial disclosures between TT and some of the defendants.[4] The Court ruled on a number of summary judgment motions early in the proceedings, but these motions were brought before discovery began and the case stagnated while the Federal Circuit considered an appeal. Since the Federal Circuit's mandate issued on December 4, 2013, the parties have exchanged no discovery and no schedule

---

[4] TT asserts that it has exchanged initial disclosures with four of the defendants to date. TD Ameritrade disputes this characterization, arguing that there has been no discovery whatsoever in any of the consolidated cases since TT expanded its infringement claims. Either way, the discovery in the consolidated cases is in its infancy.

has been set. Because the consolidated cases, despite their age, have not progressed with discovery nor begun claim construction, this factor strongly favors staying the cases. *Compare VirtualAgility*, 759 F.3d at 1317 (stage of litigation factor favored stay where "discovery had not yet begun and no trial date had been set"); *Dorado*, 2014 WL 1330652, at *3 (factor supported stay because court had not entered a scheduling order and the parties had only exchanged initial disclosures); *and Norred v. Medtronic, Inc.*, No. 13-2061, 2014 WL 554685, at *2 (D. Kan. Feb. 12, 2014) (granting stay where case was "still in its early stages"); *with Trading Techs.*, 2015 WL 161639, at *2 (factor weighed strongly against a stay because the case was 73 days from trial, pretrial dates were set, claim construction was complete, and only rebuttal experts were left outstanding). The stage of the litigation therefore strongly supports a stay.

  **C.** **Undue Prejudice or Tactical Advantage**

When assessing the third factor in determining whether to grant a stay pending CBM review, courts consider a variety of factors to determine the prejudice to the non-movant, "including the timing of the stay request, the status of review proceedings, and the relationship between the parties." *Trading Techs.*, 2015 WL 161639, at *3. TD Ameritrade asserts that a stay would not unduly prejudice TT or provide TD Ameritrade with a tactical advantage because it filed its CBM petitions soon after the Federal Circuit's mandate came down and there is no evidence in the record of dilatory motive. TT argues primarily that it would be unduly prejudiced by a stay because TD Ameritrade is a direct competitor and TD Ameritrade improperly waited to submit its CBM petitions to the PTO. Because the Court notes that the parties are competitors, but TT never sought preliminary injunctive relief and there is no evidence that TD Ameritrade submitted its petitions when it did only to delay, this factor weighs neither for nor against a stay.

Here, the PTO's review of the CBM Patents is required to be completed by December 2015, so the delay is not extreme. Moreover, the potential for delay, by itself, does not establish undue prejudice. *See VirtualAgility*, 759 F.3d at 1319; *Trading Techs.*, 2015 WL 161639, at *3; *Genzyme*, 2011 WL 686807, at *3 ("Any delay that inheres in the reexamination process does not by itself constitute undue prejudice."). While evidence of a dilatory motive may counsel against a stay, the record does not establish that TD Ameritrade acted maliciously by filing its CBM petitions. TT contends that TD Ameritrade could have pursued CBM review since September 2012, and its failure to do so until May 2014 constitutes gamesmanship. But CBM review became available only after TT appealed this Court's Order invalidating four of the asserted patents, including the '056 and '411 Patents. The Federal Circuit resolved the appeal and issued its mandate on December 4, 2013, and TD Ameritrade filed its CBM petitions in May 2014. Considering the number of claims at issue, such a length of time was not unreasonable. *See VirtualAgility*, 759 F.3d at 1319 (noting that defendant filed for CBM review less than four months after infringement action instituted); *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 5530573, at *7 (W.D. Wash. Oct. 7, 2013) (not unreasonable for party to defer seeking CBM review until motion affecting challenged patents was resolved). TT's argument that it will suffer prejudice in the event of a stay because of evidentiary loss is similarly unpersuasive. *See VirtualAgility*, 759 F.3d at 1319 ("It is undoubtedly true . . . that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions are not sufficient to justify a conclusion of undue prejudice.").

Moreover, TT's cries of undue prejudice are belied by its approach to this litigation. TT never sought a preliminary injunction and waited more than a year after TD Ameritrade released its accused technology to institute its infringement action. TT's earlier conduct therefore

9

contradicts its contentions that a stay now would cause undue prejudice. *See id.* at 1319-20 (while not dispositive, "patentee's delays in pursuing suit and seeking preliminary injunctive relief belie its claims that it will be unduly prejudiced by a stay"); *see also, e.g.*, *Zillow*, 2013 WL 5530573, at *6 ("attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief"); *Ever Win Intern. Corp. v. Radioshack Corp.,* 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *BodyMedia, Inc. v. Basis Science, Inc.,* No. 12–cv–133 (GMS), 2013 WL 2462105, at *1, n. 1 (D. Del. June 06, 2013); *Hill–Rom Servs., Inc. v. Stryker Corp.,* No. 1:11–cv–1120–JMS–DKL, 2012 WL 5878087, at *2 (S.D. Ind. Nov. 20, 2012) ("[A]ttempts by a patentee to argue undue prejudice are undermined if it has elected not to pursue a preliminary injunction."); *JAB Distribs.*, 2010 WL 1882010, at *4 ("Plaintiff's claim that it will suffer irreparable harm is undermined by the fact that its complaint . . . does not seek preliminary injunctive relief"). The Court nevertheless notes, however, that TT and TD Ameritrade are competitors and "competition between parties can weigh in favor of finding undue prejudice." *VirtualAgility*, 759 F.3d at 1318. This factor therefore weighs neither for nor against a stay.

      D.      **Burden of Litigation**

The Court finds that this factor also favors a stay. If the PTO cancels some or all of the claims in the four CBM Patents, then those claims will no longer be at issue. *See Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *4 (N.D. Ill. May 29, 2014). The PTO may also narrow claims in response to prior art, which may not only affect the CBM Patents, but a majority of the other asserted patents that utilize similar claim terms.

Without a stay, "simultaneous proceedings present substantial risks that the parties and [C]ourt will expend resources unnecessarily." *Id.* The PTO has made the preliminary conclusion that all of the claims in the '056, '055, '132, and '411 Patents are more likely than not unpatentable. Without a stay, if the PTO maintains this position, the parties will have engaged in unnecessary litigation of up to 118 asserted claims. Accordingly, the Court concludes that a likely reduced litigation burden also favors a stay of the consolidated cases.

## CONCLUSION

For the reasons stated herein, the Court grants the Moving Defendants' Motions to Stay and stays the consolidated cases in their entirety.

_____
Virgir
United States District Court Judge
Northern District of Illinois

Date:  3/25/2015