**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC. | Case No. 10 C 715 (Consolidated with: 10 C 718, 10 C 720, |
| Plaintiff, | 10 C 721, 10 C 884) |
| v. | Judge Virginia M. Kendall |
| BGC PARTNERS, INC. | |
| Defendant. | |

## TRADING TECHNOLOGIES' COMBINED 1) PROPOSED DISCOVERY AND CASE MANAGEMENT SCHEDULE AND 2) MOTION TO DECONSOLIDATE

Pursuant to this Court's July 24, 2015 order, TT hereby submits its proposed discovery and case management schedule and requests that this Court apply the schedule set forth by the local patent rules to these cases. Since the parties in the *TradeStation* case have already exchanged all initial contentions, this case is more advanced and should be given a more advanced schedule. With respect to the three other Defendant groups, independent schedules that follow the Local Patent Rules should be applied.

Additionally, TT moves that this Court deconsolidate the consolidated action because consolidation of these cases has utterly failed to progress these cases. Although the cases are over five years old, there has been very little substantive progress made to date. While reassignment and consolidation was done with the best of intentions in order to facilitate judicial economy and efficiency for all parties and this Court, Defendants have improperly used the consolidation to delay and game the system and TT is being prejudiced as a result. Moreover, the number of defendants has drastically decreased as a result of settlements – dropping from the

original twelve groups of defendants to just four now (with the number likely to be three in short order). As consolidation is no longer serving its intended purpose and as the circumstances that led to the initial consolidation have changed, this Court should deconsolidate these cases now to ensure that these cases proceed without further delay.

## I. THESE CASES SHOULD BE DECONSOLIDATED

TT moves that this Court deconsolidate these actions because consolidation has failed to work here, and is actually impeding progress in these cases while unnecessarily prejudicing TT.

This Court is free to reconsider an order of consolidation when it is consonant with justice to do so. *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F.Supp.2d 587, 593 (S.D.N.Y.2012). Indeed, the court always retains the power to deconsolidate when the original order was entered before the court or the parties could consider the prejudice it would inflict; the order should be vacated when subsequent events reveal that consolidation is no longer appropriate. *See New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 9 n.9 (1st Cir.1988); *Liberty Media Corp.*, 842 F.Supp.2d at 593. Moreover, deconsolidation is appropriate where continued consolidation will delay resolution of the cases unnecessarily. *European Community v. RJR Nabisco, Inc.*, 150 F. Supp.2d 456, 461 (E.D.N.Y. 2001) (granting a motion to deconsolidate cases, holding that "[c]onsolidation promoted the fair and efficient resolution of various motions and housekeeping issues that have come up concerning these cases…. Continued consolidation, however, will delay the resolution of these cases unnecessarily, and the cost of such delay is not outweighed by the fact that the EC and Amazonas Cases to some extent share common legal and factual issues.").

Here, the circumstances that led to consolidation have dramatically changed. When TT first moved to reassign and consolidate these cases for limited purposes in 2010, there were

twelve different cases involving 11 different patents that had been assigned to six different judges. Since this Court granted reassignment and consolidation, the number of cases has dropped to just four, with one of these cases likely to settle shortly. Meanwhile, the number of patents asserted has increased, but the overlap of patents asserted in these remaining cases has decreased. For instance, now there are three patents that are only asserted against one party—CQG—whereas at the time of consolidation, there was just one outlier patent. In view of these changed circumstances, deconsolidation is appropriate and the best way to move each case forward.

Indeed, consolidation has unexpectedly led to great delay and corresponding prejudice to TT. For instance, the only discovery that has been taken in any of the cases occurred *prior* to reassignment/consolidation. Since that time, further activity has ground to a halt, as Defendants have used consolidation to gain an unfair tactical advantage and delay this litigation through piecemeal attacks on the patents. Progress in *all* of the cases has stopped to address *any single* Defendant's challenge to the patents. Indeed, discovery has completely stalled since consolidation. However, should this Court deconsolidate, it would be easier to focus on prompt resolution for each case based on the individual circumstances of each case. Of course, by virtue of having all of the cases before it, the Court would still have the ability to avoid duplicative effort, harassment of parties and witnesses, etc. where it makes sense and does not interfere with overriding goal of getting case to resolution.

Deconsolidation is necessary because Defendants' true motives are to delay this case as much as possible while dividing up a plethora of defenses among the Defendants to engage in piecemeal and serial litigation. Not only has this practice wasted years and prejudiced TT with lost sales and market erosion, but also has wasted significant amounts TT's money and

resources.  For example, Defendant Tradestation recently filed a CBM Petition for the '304 patents, which is duplicative of one of TD Ameritrade's CBM Petitions that was already terminated at the PTAB.[1]  Tellingly, none of the other Defendants participated or filed a joinder request for this CBM Petition, (let alone the earlier-filed TD Ameritrade Petition on the same patent, which would have allowed that proceeding to continue notwithstanding TT's settlement with TD Ameritrade).  Such actions evidence an interest in delay over the merits.[2]

In addition, Defendants' recent statement that they *now* plan on filing CBM Petitions on most, if not all, of the asserted patents is telling.  Defendants could have filed such Petitions anytime over the last *three years*.  Yet Defendants are only raising challenges to additional patents once this Court indicates it will proceed, which introduces as much delay in this litigation as possible.  This abuse would likely be reduced if the cases were deconsolidated because each Defendant would be required to focus on their best defenses, present or not present any petitions to the USPTO, and be bound by whatever happens before this Court.  Further, any delay caused by certain Defendants having unavailable fact witnesses or experts, would not have a cumulative delay effect on the rest of the proceedings.

Moreover, this Court should grant deconsolidation because it is inevitable.  Conducting a single consolidated trial of four cases with different defendants and different products would be logistically impossible.  Each Defendant will have separate issues that are only relevant to it at trial, and separate motions in limine and evidentiary and confidentiality issues.  While it took

---

[1] TradeStation's CBM Petition for the '304 patent also mirrored CQG's CBM Petition for the same patent.  CQG's Petition was terminated for lack of standing, so this is really Defendants' third bite at the same apple.

[2] Instead of all joining in challenges to TT's patents, Defendants are instead dividing up their challenges with each Defendant focusing on a handful of the asserted patents, presumably so as a group, they will not be estopped from raising such arguments before this Court and can engage in duplicative litigation before this Court as before the PTAB.

over three and a half weeks to litigate the *CQG* litigation where CQG presented no invalidity defenses before the jury, it would likely take months to conclude a trial with four defendants. Accordingly this Court should deconsolidate these cases to promote judicial economy and efficiency, while preventing further abuse of the judicial and administrative systems by Defendants.

## II.  THE CASES SHOULD PROCEED ACCORDING TO THE LOCAL PATENT RULES

TT proposes the following schedule that comports with the Local Patent Rules for *each* Defendant. Since filing the lawsuits against twelve different defendant groups in separate actions in 2010, eight of these defendant groups have settled with TT. With respect to the remaining four cases, one of these (FuturePath) is likely to settle soon. Thus, regardless of whether this Court decides to deconsolidate the actions, there is no need to deviate from the Local Patent Rules' schedule given that there are just four remaining defendants.

Further, because the parties in *TradeStation* have already exchanged initial contentions, TT proposes a more advanced schedule for *TradeStation* that takes this into account. The *CQG, FuturePath,* and *Interactive Brokers* cases are in similar postures, i.e., no initial contentions have been exchanged. Accordingly, they should initially be given the same schedule below, with any adjustments being made on an individual case basis so that any delay from one Defendant does not have a cumulative effect on the schedules with respect to the remaining Defendants.

Defendants' proposed schedule, displayed in the right-hand column below, adds *forty-two* additional weeks' time to the schedule set forth by the Local Patent Rules. This is unnecessary and should not be granted absent good cause. As there are very few Defendants remaining and the cases are now five years old, the cases should proceed as expeditiously as possible. While TT is open to discussing extensions of time as warranted, Defendants should not be given nearly

a years' extension of the LPR without this Court and the parties considering the facts that exist as the deadlines become closer.

Further, this Court should not delay the litigation for the parties to exchange all documents from a previous litigation. Previously Defendants had requested that TT serve as a clearinghouse for all discovery that had occurred to date. Such a request is both onerous and unfair to TT because it fails to take into account the burden on TT, cost sharing, and other confidentiality considerations owed to other Defendants/non-parties under the protective orders, including parties' objections to Defendants seeing their competitors' information. To the extent that Defendants request information from other cases or request this from third parties, the parties should work to resolve this *during* discovery, not as a precursor to discovery beginning.

Moreover, this Court should reject Defendants' request to have TT narrow the asserted claims, which Defendants propose occurs *before* discovery begins in earnest. While Defendants have cited *In re Katz* in the past in support of their argument for a narrowing of claims, *Katz* "neither approves of nor authorizes the exclusion of viable causes of action based on nothing more than efficiency concerns" and notes that this process would "pose a significant risk that the patent holder will be erroneously deprived of its property rights." *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2012 WL 4903270, at *1 (W.D. Wash. May 29, 2012) (finding that, under *Katz*, defendants have the initial burden of making a "convincing showing" that at least some asserted claims are duplicative). Instead, *In re Katz* dealt with the consolidation of 25 patent actions involving 31 patents with 1,975 asserted claims. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011). There the court required the patentee to narrow the number of selected claims before discovery and to then further narrow the asserted claims at the close of discovery. *Id.* at 1309. However, it was well known in the industry

that all of the Katz patents were highly duplicative and drawn to the same invention and Katz did

not dispute this. As the court stated, "Katz could have sought to demonstrate that some of its

unselected claims presented unique issues as to liability or damages. If, notwithstanding such a

showing, the district court had refused to permit Katz to add those specified claims, that decision

would be subject to review and appeal." *Id.* at 1312-1313. Here, TT *does* dispute the narrowing

of asserted claims.

Notably, in the present case there are only 15 patents and around 400 claims at issue,

which equates to 20 percent of the claims asserted in *In re Katz*. Further, TT's patents are

directed to different aspects and features of the accused products, unlike the claims asserted in *In

re Katz*. So the case management justification that existed in *In re Katz* to narrow patent claims

prior to discovery is simply not present in the litigation at hand. *In re Katz* even acknowledged

that it is "conceivable that a claim selection order could come too early in the discovery process,

denying the plaintiff the opportunity to determine whether particular claims might raise separate

issues of infringement or invalidity in light of the Defendants' accused products and proposed

defenses." *Id.* at 1313 n.9. Indeed, most cases/orders that do limit claims do so in later stages of

litigation (e.g., in the context of preparing for a *Markman* Hearing or trial).

Thus, this Court should decline to enter any deadline for a narrowing of claims because a

narrowing will naturally happen as the cases progress. For instance, in the recent *CQG* case, the

parties negotiated ways to narrow the case before trial, which included CQG agreeing that TT

could prove infringement of representative versions of products, and TT agreeing to limit

assertion of claims to just a handful. Requiring just TT to narrow claims without also requiring

Defendants to make concessions about the number of versions of software that TT is required to

prove infringement would provide Defendants with an upper hand, and may lead to *less* eventual

streamlining of the cases for trial. Thus, the parties should try to resolve these issues on their own without Court intervention, and certainly, not be required to do so before the case has even gotten off the ground. Accordingly, TT requests that the Court enter the following schedule:

| Event | TT's Proposed Date for FP, CQG, & IB | TT's Proposed Date for TS | Defendants' Proposal<br><br>Each event is "no later than" If specified event is completed earlier, next event is triggered based on the specified duration |
|---|---|---|---|
| 1. Parties shall exchange/supplement Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1). (LPR 1.3, 2.1) | 9/24/2015 | 9/24/2015 (supp) | 4 weeks after Scheduling Order is entered<br><br>(TT: this adds 4 weeks to LPR. LPR 2.1 requires these to be exchanged 2 weeks after answers—which have all been filed)[3] |
| 2. Exchange all documents from previous litigations | TT objects to the addition of this deadline as a basis to delay the case. *See* above. | TT objects to the addition of this deadline as a basis to delay the case. *See* above. | 4 weeks after Initial Disclosures (1)<br><br>(TT: this adds 4 weeks, not in LPR, 8 extra weeks total) |
| 3. TT shall serve a list of narrowed list asserted claims. | TT objects to entry of a deadline for narrowing at this juncture. At a minimum, any narrowing should occur only after complete discovery. | TT objects to entry of a deadline for narrowing at this juncture. At a minimum, any narrowing should occur only after complete discovery. | 4 weeks after completion of document production from previous litigation (2)<br><br>(TT: this adds 4 weeks, not in LPR, 12 extra weeks total) |
| 4. To the extent not already served, TT shall serve initial infringement contentions on all Defendants. (LPR 2.2) | 9/24/2015 | N/A | 11 weeks after service of narrowed list of asserted claims (3)<br><br>(TT: this adds 3 weeks to LPR 2.2, 15 extra weeks total) |

---

[3] TT's objections, if any, to Defendants' proposed dates are underlined and set off in parentheses.

| Event | TT's Proposed Date for FP, CQG, & IB | TT's Proposed Date for TS | Defendants' Proposal<br><br>Each event is "no later than" If specified event is completed earlier, next event is triggered based on the specified duration |
|---|---|---|---|
| 5. Defendants shall serve initial non-infringement, unenforceability and invalidity contentions on TT. (LPR 2.3) | 10/8/2015 | N/A | 13 weeks after service of initial infringement contentions (4) |
| 6. Document production accompanying initial invalidity contentions required under Local Patent Rule 2.4. | 10/8/2015 | N/A | 13 weeks after service of initial infringement contentions (4)<br><br>**served with non-infringement, unenforceability and invalidity contentions |
| 7. TT shall serve initial responses to invalidity contentions on all Defendants. (LPR 2.5) | 10/29/2015 | N/A | 15 weeks after service of non-infringement, unenforceability and invalidity contentions (5) |
| 8. TT shall serve final infringement contentions on all Defendants. (LPR 3.1) | 3/17/2016 | 2/11/2016 | 22 weeks after service of initial responses to invalidity contentions (7)<br><br>(TT: this adds 1 extra week to LPR 3.1, 16 extra weeks total) |
| 9. Defendants shall serve final invalidity and unenforceability contentions on TT. (LPR 3.1) | 3/17/2016 | 2/11/2016 | 22 weeks after service of initial responses to invalidity contentions (7)<br><br>**served at the same time as final infringement contentions<br><br>(TT: this adds 1 extra week to LPR 3.2, 16 extra weeks total) |
| 10. TT shall serve final response to invalidity and unenforceability contentions on Defendants. (LPR 3.2) | 4/14/2016 | 3/10/2016 | 13 weeks after service of final invalidity contentions (9)<br><br>(TT: this adds 10 extra weeks to LPR 3.1, 26 extra weeks total) |
| 11. Defendants shall serve final non-infringement contentions on Plaintiff. (LPR 3.2) | 4/14/2016 | 3/10/2016 | 13 weeks after service of final infringement contentions (8)<br><br>**served at the same time as |

| Event | TT's Proposed Date for FP, CQG, & IB | TT's Proposed Date for TS | Defendants' Proposal<br><br>Each event is "no later than" If specified event is completed earlier, next event is triggered based on the specified duration |
|---|---|---|---|
| | | | invalidity responses<br><br><u>(TT: this adds 10 extra weeks to LPR 3.1, 26 extra weeks total)</u> |
| 12. Parties shall exchange claim terms needing construction pursuant to Local Patent Rule 4.1(a). | 4/28/2016 | 3/24/2016 | 2 weeks after final non-infringement contentions (11) |
| 13. Parties shall meet and confer regarding claims to be construed and submission of terms to the court pursuant to Local Patent Rule 4.1(b). | 5/5/2016 | 3/31/2016 | 1 week after exchange of claim terms (12) |
| 14. Fact discovery temporarily closes pending claim construction ruling. (LPR 1.3) | 5/26/2016 | 4/28/2016 | 3 weeks after the exchange of claim terms (12) |
| 15. Defendants shall file opening claim construction brief. (LPR 4.2(a)) | 6/2/2016 | 5/5/2016 | 5 weeks after the exchange of claim terms (12) |
| 16. Parties shall file joint appendix for claim construction. (LPR 4.2(b)) | 6/2/2016 | 5/5/2016 | 5 weeks after the exchange of claim terms (12)<br><br>**filed same day as opening briefs |
| 17. TT shall file responsive claim construction brief. (LPR 4.2(c)) | 6/30/2016 | 6/2/2016 | 5 weeks after filing open claim construction brief (15)<br><br><u>(TT: this adds 1 extra week to LPR 4.2(b), 27 extra weeks total)</u> |
| 18. Defendants shall file reply claim construction brief. (LPR 4.2(d)) | 7/14/2016 | 6/16/2016 | 2 weeks after filing responsive claim construction brief (18) |
| 19. Parties shall file joint claim construction chart and joint claim construction status report | 7/21/2016 | 6/23/2016 | 2 weeks after filing reply brief (18)<br><br><u>(TT: this adds 1 extra week to</u> |

| Event | TT's Proposed Date for FP, CQG, & IB | TT's Proposed Date for TS | Defendants' Proposal<br><br>Each event is "no later than" If specified event is completed earlier, next event is triggered based on the specified duration |
|---|---|---|---|
| pursuant to Local Patent Rule 4.2(f). | | | LPR 4.2(f), 28 extra weeks total) |
| 20. Parties shall exchange exhibits, including demonstrative exhibits, to be used at claim construction hearing. (LPR 4.3) | 3 days before Markman hearing | 3 days before Markman hearing | 3 days before *Markman* hearing |
| 21. Markman Hearing. [4] (LPR 4.3) | TBD | TBD | TBD |
| 22. Parties shall disclose reliance on opinion of counsel pursuant to Local Patent Rule 3.6(b). | 35 days prior to fact discovery close | 35 days prior to fact discovery close | 5 weeks after *Markman*<br><br>(TT: this delays disclosure of opinion of counsel by 4 weeks under LPR 3.6) |
| 23. Deadline for completion of fact discovery. (LPR 1.3) | 42 days after Markman ruling | 42 days after Markman ruling | 9 weeks after *Markman*<br><br>(TT: this adds 3 extra weeks to LPR 1.3 for 31 weeks total while improperly compressing the fact discovery allowed for opinion of counsel by 1 week) |
| 24. Each party shall make its initial expert witness disclosures required by Federal Rule of Civil Procedure 26 on issues for which it bears the burden of proof. (LPR 5.1(b)) | 21 days after close of fact discovery[5] | 21 days after close of fact discovery | 8 weeks after close of fact discovery (23)<br><br>(TT: this adds 5 weeks to LPR 5.1, 36 extra weeks total) |
| 25. Each party shall make its rebuttal expert witness disclosures required by | 35 days after date of initial expert reports | 35 days after date of initial expert reports | 8 weeks after the date of the initial expert disclosures (24) |

---

[4] To the extent that the cases are in the same procedural posture at the same time, TT would not object to a coordinated *Markman* hearing. However, Defendants should not be entitled to introduce delay into their cases by staying progress until the other Defendants catch up.

[5] Expert discovery is one area where additional time may be required. However, whether additional time is required to complete expert discovery should be determined when the parties are closer to these dates.

| Event | TT's Proposed Date for FP, CQG, & IB | TT's Proposed Date for TS | Defendants' Proposal<br><br>Each event is "no later than" If specified event is completed earlier, next event is triggered based on the specified duration |
|---|---|---|---|
| Federal Rule of Civil Procedure 26 on issues for which the opposing party bears the burden of proof. (LPR 5.1(c)) | | | (TT: this adds 3 weeks to LPR 5.2, 39 extra weeks total) |
| 26. Deadline for completion of expert depositions. (LPR 5.2) | 35 days after exchange of expert rebuttal disclosures | 35 days after exchange of expert rebuttal disclosures | 8 weeks after the date of the rebuttal expert disclosures (25)<br><br>(TT: this adds 3 weeks to LPR 5.2, 42 extra weeks total) |
| 27. Deadline for filing dispositive motions. (LPR 6.1) | 28 days after end of discovery | 28 days after end of discovery | |

## III.    THE FOLLOWING DISCOVERY LIMITS SHOULD APPLY

### A.  The Court Should Adopt the Local and Federal Rules if It Deconsolidates the Cases

If this Court deconsolidates the actions, the discovery limits set forth under the Federal and Local Rules should apply absent a showing of good cause.  That being said, Defendants should be ordered to coordinate to avoid duplicative discovery in order to prevent burdening the witnesses or parties, so long as doing so does not interfere with case progress.  To the extent that Defendants share or participate in other Defendants' discovery, that should count against the default discovery limits for each Defendant.

### B.  The Court Should Enter the Following Scheduling Order If It Declines to Deconsolidate the Cases

If this Court is not inclined to deconsolidate the litigations at this juncture, TT proposes that the Court enter the following order regarding discovery:

1. Depositions are limited to the following:

   a. TT may take **10** depositions of each defendant and **20** third party depositions. These limits do not apply to expert depositions.

   b. Defendants shall coordinate deposition discovery and, as a group, may take **15** depositions of TT including inventors of the patents-in-suit. In addition, each defendant may take **5** depositions of third parties. These limits do not apply to expert depositions. To reduce the burden on witnesses, the defendants will cooperate and take the deposition of witnesses that are common to more than one defendant (e.g. patent inventors) at a single deposition of that deponent. Where possible, defendants shall cooperate and serve common Rule 30(b)(6) notices on TT.

2. Interrogatories are limited to the following:

   a. TT may serve **25** interrogatories on each defendant.

   b. Defendants shall coordinate written discovery and, as a group, serve **20** interrogatories on TT. Each defendant group may also serve **5** additional interrogatories on TT.

3. Requests for admission ("RFA") are limited to the following:

   a. TT may serve **35** RFAs on each defendant.

   b. Defendants shall coordinate written discovery and, as a group, may serve **25** RFAs on TT. Each defendant group may also serve **10** additional RFAs on TT.

The parties have exchanged discovery proposals in the event that this Court declines to deconsolidate the actions. With respect to Defendants' discovery proposal, the limits proposed are excessive and would lead to burdensome and unnecessary litigation. For instance,

Defendants have requested 14 hours of additional deposition testimony from Harris Brumfield when they already have access to four deposition transcripts and two trial transcripts of Mr. Brumfield's testimony.  Similarly, Defendants want to be entitled to an unidentified number of depositions of "prosecuting attorneys" and inventors.  Meanwhile, Defendants want to limit TT to *half* the depositions TT is entitled to under the Federal Rules.  Defendants' proposal is one-sided and fails to acknowledge that for each Defendant, TT needs to take depositions regarding marketing, development, functionality, and sales of the accused products, and then depose direct infringers with respect to each accused product.  Accordingly, in the event that this Court declines to deconsolidate the actions, it should enter the above discovery limits.


Respectfully submitted,


Date:   August 31, 2015                        By:  s/ Jennifer M. Kurcz
                                               Leif R. Sigmond, Jr. (ID No. 6204980)
                                               (sigmond@mbhb.com)
                                               Matthew J. Sampson (ID No. 6207606)
                                               (sampson@mbhb.com)
                                               Michael D. Gannon (ID No. 6206940)
                                               (gannon@mbhb.com)
                                               S. Richard Carden (ID No. 6269504)
                                               (carden@mbhb.com)
                                               Jennifer M. Kurcz (ID No. 6279893)
                                               (kurcz@mbhb.com)
                                               **McDonnell Boehnen Hulbert & Berghoff LLP**
                                               300 South Wacker Drive
                                               Chicago, Illinois 60606
                                               Tel.: (312) 913-0001
                                               Fax: (312) 913-0002

                                               Steven F. Borsand (ID No. 6206597)
                                               (Steve.Borsand@tradingtechnologies.com)
                                               **Trading Technologies International, Inc**.
                                               222 South Riverside

Suite 1100
Chicago, IL 60606
Tel: (312) 476-1000
Fax: (312) 476-1182

**Attorneys for Plaintiff,**
**TRADING TECHNOLOGIES**
**INTERNATIONAL, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2015 I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to all counsel of record.

s/ Jennifer M. Kurcz