IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | No. 10 C 715 (Consolidated with: 10 C 716, 10 C 718, 10 C 720, 10 C 721, 10 C 726, 10 C 882, |
| Plaintiff, | ) ) | 10 C 883, 10 C 884, 10 C 885, |
| v. | ) ) | 10 C 929, 10 C 931) |
| BCG PARTNERS, INC., | ) ) | Judge Virginia M. Kendall |
| Defendant. | ) ) ) ) | |

## MEMORANDUM OPINION AND ORDER

In early 2010, Plaintiff Trading Technologies International, Inc. ("TT") filed a number of

cases in this District alleging infringement of various patents concerning electronic trading

software used on electronic commodity exchanges.  The Court consolidated these cases in 2011.

(*See* Dkt. No. 73.)  After a number of amended pleadings, early summary judgment practice, and

an appeal to the Federal Circuit, Defendants TradeStation ("TS") and IBG (collectively

"Defendants") filed the instant motion seeking a stay of this case pursuant to Section 18(b) of the

America Invents Act ("AIA") pending the United States Patent and Trademark Office's ("PTO")

review of a number of the asserted patents.  (*See* Dkt. Nos. 667, 675, 679, 682, 708, 726, 745.)

For the following reasons, the Court grants the motion to stay.  (Dkt. No. 667.)  The consolidated

cases are stayed in their entirety.

## BACKGROUND

The instant motion stems from a number of petitions filed by the Defendants with the

PTO seeking review under the transitional program for covered business method patents ("CBM

review") of U.S. Patent Nos. 6,766,304 ("the '304 Patent"); 6,772,132 ("the '132 Patent");

7,676,411 ("the '411 Patent"); 7,685,055 ("the '055 Patent"); 7,693,768 ("the '768 Patent");

7,813,996 ("the '996 Patent"); 7,904,374 ("the '374 Patent"); 7,212,999 ("the '999 Patent");

7,533,056 ("the '056 Patent"); 7,783,556 ("the '556 Patent") (collectively, the "CBM Patents").[1]

Defendants challenged the patentability of the CBM Patents arguing, among other things, that

they are patent ineligible under 35 U.S.C. § 101. (*See, e.g.,* Dkt. No. 726-1 at 11 (challenging

the '768 Patent on Section 101 grounds).) The PTO has instituted CBM reviews of the

challenged claims after determining that the petitions for (1) the '304 Patent, (2) the '132 Patent,

(3) the '411 Patent, (4) '056 Patent, (5) the '556 Patent, and (6) the '055 Patent demonstrate that

it is more likely than not that all of the challenged claims are patent ineligible under 35 U.S.C. §

101. The PTO will issue a decision regarding whether to institute additional CBM reviews for

the '996 and '999 Patents by August 19, 2016. Finally, the PTO must issue decisions on the

petitions for the '768 Patent by October 20, 2016 and the '374 Patent by October 4, 2016. (*See

also* Dkt. No. 745 at 2 (summarizing status of patents-in-suit).) In sum, at least one patent from

all three of the patent families at issue has a CBM review instituted or a CBM petition pending

against it.

The PTO additionally granted IBG's motions to join the CBM reviews that have already

been instituted. (Dkt. No. 726-2, 726-3.) Accordingly, all parties will be bound by the results of

the CBM proceedings. Defendants further represent that they "expect to file as co-petitioners or

request joinders in every CBM as permitted by law." (Dkt. No. 726 at 1.)

---

[1] The Defendants have not filed petitions for CBM review for only two out of the twelve asserted patents, *i.e.*
7,725,382 ("the '382 Patent") and 7,412,416 ("the '416 Patent"). However, Defendants have represented to the
Court, both in briefing and in open court, that they intend to file petitions for the remaining two patents shortly.
(*See, e.g.,* Dkt. No. 726 at 2 ("Defendants are preparing petitions for the remaining two patents and will submit those
to the Patent Office…"); Dkt. No. 745 at 2 (chart stating that CBM review "will be filed shortly.").)

## **LEGAL STANDARD**

Section 18 of the AIA provides for the establishment of transitional post-grant review proceedings to reexamine the validity of covered business method patents. Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 284 (Sept. 16, 2011). The AIA also establishes protocol with respect to related patent infringement actions and authorizes the district courts to stay such parallel litigation under certain circumstances. Specifically, § 18(b)(1) states:

> If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on--
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.* The statutory test thus closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the PTO. *See, e.g.*, *Genzyme Corp. v. Cobrek Pharm., Inc.*, No. 10 CV 00112, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011) (applying three-factor stay test that considers "whether a stay will (1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in questions and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court"); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 WL 1882010, at *1 (N.D. Ill. May 11, 2010).

The fourth factor was included, in part, to favor the granting of stays. *See, e.g.*, *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 480 (E.D. Va. 2014) (fourth factor

"designed to place a thumb on the scales in favor of a stay"); *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013) (fourth factor included "to ease the movant's task of demonstrating the need for a stay"). Congress signed the AIA into law on September 16, 2011, and CBM review process came into effect in September 2012.

## DISCUSSION

The Defendants seek a stay of the litigation contending that the PTO's determinations regarding the CBM patents will streamline this case and simplify the issues before the Court. The Defendants further argue that a stay is appropriate as the PTO has already instituted CBM reviews for six patents, petitions for four more patents are already pending before the PTO, and that petitions for the remaining two patents will be filed shortly. TT, in opposing the stay, contends that the Defendants overstate the significance of CBM reviews, are using the stay provision to gain an unfair advantage, and that the Court, rather than the PTO, is in the best position to promptly evaluate the asserted patents under Section 101.

## A.    Simplification of the Issues

Section 18(b)(1)(A) instructs the Court to consider "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." Pub. L. No. 112-29, § 18(b)(1)(A). Staying a patent infringement case pending administrative review of the asserted patents' validity can simplify litigation in several ways:

> 1. All prior art presented to the Court will have been first considered by an expert PTO examiner;
> 2. The reexamination may alleviate discovery problems relating to the prior art;
> 3. The suit will likely be dismissed if the reexamination results in effective invalidity of the patent;
> 4. The outcome of the reexamination may encourage settlement;
> 5. The record of the reexamination would likely be entered at trial and thus reduce the complexity and length of the litigation;

6. The reexamination will facilitate limitation of issues, defenses, and evidence in pre-trial conferences;

7. Litigation costs to the parties and the Court will likely be reduced.

*Genzyme*, 2011 WL 686807, at 3-4 (quoting *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at 2 (N.D. Ill. Feb. 2, 1987); *see also, e.g.*, *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004) (stay warranted because "[t]here is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope [due to reexamination] . . . [creating] a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings").

Here, the PTO, through instituting CBM reviews for the '304 Patent, the '132 Patent, the '411 Patent, the '056 Patent, the '556 Patent, and the '055 Patent has expressly determined that all of the challenged claims in those patents are more likely than not unpatentable. (*See* Dkt. Nos. 669-13, 669-14, 675-1, 679-1, 682-1.) The benefits of a stay certainly exist where all of the claims are under review, and would even exist if only *some* of the litigated claims were undergoing review. *See, e.g, Versata Software, Inc. v. Dorado Software, Inc.*, No. 2:13-cv-00920-MCE-DAD, 2014 WL 1330652, at *3 n.2 (E.D. Cal. Mar. 27, 2014) (staying case where CBM review granted for only one of three asserted patents and for less than all claims); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 769 (E.D. Pa. 2014) ("courts have found significant potential for issue simplification even in cases where some but not all of the asserted claims are subject to PTO review"); *Genzyme*, 2011 WL 686807, at *3 (stay warranted even though "certain issues may remain in dispute even upon conclusion of the reexamination proceedings"). Even assuming that the PTO chooses not to institute any of the pending applications for review, the already instituted CBM reviews could potentially dispose of

six patents (and all of their collective asserted claims) entirely, weighing heavily in favor of a stay. This finding is bolstered by the fact that the PTO, through CBM proceedings, routinely finds reviewed patents unpatentable. (*See* Dkt. No. 669 at 7 (Defendants citing statistics indicating that "forty-three out of forty-five final written decisions on Section 101 grounds invalidated all instituted claims, one invalidated some claims, and in the last case the patentee surrendered the original claims through amendment.").) Although TT argues that these statistics are meaningless as "Defendants have failed to establish that any of the decisions they cite are even closely related to this case," *see* Dkt. No. 691 at 13, this counterargument does nothing to controvert the fact a significant majority of CBM reviews lead to findings of unpatentability. *See, e.g., Norred v. Medtronic, Inc.*, No. 13-2061-EFM/TJJ, 2014 WL 554685, at *3 (D. Kan. Feb. 12, 2014) (finding that factor weighed in favor of stay "based on the historical statistics cited by Defendants and the Court's understanding of the bases for Defendants' petitions filed with the PTAB, the Court finds that there are issues in this cases which would likely be simplified or eliminated altogether if the PTAB grants Defendants' petitions for an *inter partes* review.").

Moving beyond the patents that are already under instituted CBM reviews, the fact that the Defendants have filed four additional petitions – and have represented to the Court on multiple occasions that they plan to file petitions for the two remaining patents – also counsel in favor of granting a stay of these proceedings.[2] As an initial point, this undermines TT's principal argument in opposing the stay, *i.e.* "the CBM review will not dispose of the entire litigation."

---

[2] In its Sur-Reply, TT argues that the Court should ignore the Defendants' statements that they are going to file CBM petitions for every patent in suit on the grounds that the Defendants improperly raised the issue for the first time in their Reply brief. (Dkt. No. 715-1 at 2.) However, given that TT has had the opportunity to reply, any impropriety has been resolved. *See, e.g.,* Busenbark v. Panhandle E. Pipe Line Co., No. 1:13-CV-01663-WTL, 2014 WL 6977204, at *2 (S.D. Ind. Dec. 8, 2014) ("In light of the fact that the Defendant has been given the proper opportunity to reply to Plaintiffs' Declaration in its surreply to Plaintiffs' motion to enforce the settlement agreement, any impropriety of Plaintiffs' having used the Declaration to introduce new evidence in a reply brief has been resolved, and the Court will not strike any portion of Plaintiffs' Declaration.").

(*See* Dkt. No. 691 at 14.)  While it is certainly the case that merely filing a petition for CBM review in no way ensures that a CBM review will in fact follow (or that even if a review were to follow, the patent would be found unpatentable), it is equally the case that the burden on the Court and the parties would be significantly lessened if any (or all) of these petitions led to additional CBM institutions.

TT's argument that a stay is inappropriate as only some subset of the patents may be subjected to CBM reviews similarly misses the point.  Even if it comes to fruition that only eight[3] or some similar number of patents survive CBM review, the cancellation of the other patents or claims "could significantly alter this action by clarifying and narrowing the claims and defenses available" to the parties here.  *Versata*, 2014 WL 1330652, at *2.  The fact that the PTO is reviewing only a subset of the asserted patents, with the potential of additional institutions in the future, does not eliminate the benefit of a stay in order to avoid duplicitous litigation on potentially moot claims and issues.  *See VirtualAgility*, 759 F.3d at 1314 (disposing of the entire litigation is "the ultimate simplification of issues"); *see also, e.g.*, *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 548 (Fed. Cir. 2011) ("PTO has acknowledged expertise in evaluating prior art and assessing patent validity"); *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *4 (D. Del. Jan. 11, 2013) (courts benefit from the PTO's analysis of prior art that is later presented in litigation regardless of the outcome of the review).  Furthermore, at least one patent from each of the asserted patent families is now under review, lending credence to the Defendants' contentions that the underlying claims, although different, may be reviewed for the same abstract idea, *i.e.* "providing information for market trades."  (Dkt. No. 669 at 8.)  Indeed, the very purpose of the AIA is to avoid litigation on patents and claims that may themselves become moot through CBM review.  *See, e.g., JAB Distribs.*, 2010 WL

---

[3] TT raised this as a hypothetical number in its own briefing.  (*See* Dkt. No. 691 at 14.)

1882010, at *1. As such, and because the Court may, in its discretion, decide to institute a stay even before the PTO acts on such petitions, *see Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1378-79 (Fed. Cir. 2015) ("[i]mportantly, moreover, our conclusion that we do not have jurisdiction over an interlocutory appeal before the PTAB grants a petition and institutes a CBMR proceeding does not affect the district court's ability to exercise its discretion in deciding a motion to stay at any time; i.e., our holding does not prevent a district court from choosing to decide a motion before the PTAB acts on a CBMR petition."), the first factor counsels in favor of granting a stay.

### B.      Stage of Litigation

"Staying a case at an early juncture can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2015 WL 1396632, at *4 (N.D. Ill. Mar. 25, 2015), *appeal dismissed* (July 27, 2015) (citations omitted). "On the other hand, when confronted with a motion to stay in the later stages of a case, 'the [c]ourt and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.'" *See, e.g., Mkt.-Alerts Pty.*, 922 F. Supp. 2d at 494 (quoting *SenoRx*, 2013 WL 144255, at *5 ("On the other hand, when a request for reexamination comes after discovery is complete or nearly complete, and a trial is imminent, a stay is less likely to be granted")).

Although this case has been pending before this Court for six years, due to previous stays in proceedings, early summary judgment motion practice, an appeal to the Federal Circuit, and

the parties' numerous discovery conflicts[4], this case is still in its early stages substantively. While discovery is slightly further along than it was when the Court instituted the prior stay, the case still stands with significant discovery yet to be completed[5], claim construction has not occurred, and a trial date has yet to be set. In such cases, a stay is appropriate. *See, e.g., Smartflash LLC v. Apple Inc.,* 621 F. App'x 995, 1005-06 (Fed. Cir. 2015) ("Despite the substantial time and effort already spent in this case, the most burdensome task is yet to come. A determination from the PTAB that all the asserted claims are patent ineligible will spare the parties and the district court the expense of any further litigation, including a trial."); *VirtualAgility*, 759 F.3d at 1317 (stage of litigation factor favored stay where no trial date had been set, fact discovery had yet to be completed, and claim construction statements had yet to be filed); *Versata*, 2014 WL 1330652, at *3 (factor supported stay in part because neither a *Markman* claim construction nor a trial date had been set).

In opposition, TT contends that the case is not in its infancy, pointing to the amount of written discovery that has been issued and the fact that this is a six-year-old litigation. Yet, TT takes the *exact opposite* position in its co-pending motion to file a third amended complaint in which it seeks to add even more patents and claims to this litigation, actions which will only add to the amount of work to be done between now and a potential trial. (*See, e.g.,* Dkt. No. 643 at 4 (TT stating "[w]ith nearly two years before a trial could occur, and several months of discovery yet to transpire…there can be no prejudice to Defendants."); Dkt. No. 654 at 3 (TT stating

[4] The parties have filed numerous discovery motions, and in particular motions to compel, throughout the discovery process. Even in the instance where the parties were able to agree to a stipulation to moot a motion to compel, *see* Dkt. No. 709 (joint stipulation regarding source code production), the Defendants subsequently filed a motion alleging that TT was not acting pursuant to the stipulation. (*See* Dkt. No. 720 at 2 ("While the parties have now agreed on a Joint Stipulation Regarding Source Code Production (Dkt. No. 709) (Mar. 29, 2016), and the Defendants have agreed to produce their source code pursuant to this stipulation, TT refuses to undertake a mutual production.").) That motion is now pending before the Court and is in the midst of briefing. (Dkt. No. 728.)

[5] Although written discovery is underway, *see* Dkt. No. 691 at 11, there has been no oral discovery (the first deposition notices were sent only in early February), infringement, invalidity, and responsive charts have yet to be finalized, and third party discovery has not begun. (Dkt. No. 669 at 10-11.)

"[a]lthough the case is old, discovery is in its infancy" and "while the case is over five years old, discovery is in its very early stages because of the early summary judgment briefing and two subsequent appeals that occurred in this case. Indeed, for the first time, a discovery schedule for the consolidated case has been established, with the parties recently exchanging initial disclosures and TT serving its initial infringement contentions on Defendants….").  TT "cannot have it both ways" and given the Court's finding on this issue above, TT's counterargument is rejected.  *See, e.g., McCluney v. Jos. Schlitz Brewing Co.*, 515 F. Supp. 700, 702 (E.D. Wis. 1981).  The stage of the litigation therefore supports a stay.

## C.     Undue Prejudice or Tactical Advantage

"When assessing the third factor in determining whether to grant a stay pending CBM review, courts consider a variety of factors to determine the prejudice to the non-movant, including the timing of the stay request, the status of review proceedings, and the relationship between the parties."  *Trading Techs.*, 2015 WL 1396632, at *5.  Although the potential for delay "does not, by itself, establish *undue* prejudice," the Court recognizes that "that waiting for the administrative process to run its course risks prolonging the final resolution of the dispute and thus may result in some inherent prejudice to the plaintiff."  *See, e.g., Mkt.-Alerts*, 922 F. Supp. 2d at 494 (emphasis in original).  The Defendants argue that, while it is certainly the case that any delay may prejudice the Plaintiff (though not unduly so), they are seeking a stay to allow the CBM proceedings to act as an "alternative to litigation – exactly as Congress intended." (Dkt. No. 669 at 14.)  TT primarily contends that it will be prejudiced because the Defendants improperly waited to file their CBM petitions to gain a tactical advantage and because the parties are direct competitors.  (Dkt. No. 691 at 9-10.)

It is certainly the case that the timing of the CBM petitions that underlie the motion to stay, filed some three-and-a-half years after the CBM proceeding was introduced, the early stage of the CBM proceedings, and the fact that the parties are direct competitors all counsel in favor of denying the stay. In fact, Defendants fail to address TT's contention that they could have filed the petitions, raising the same exact issues, years in advance. In addition, that TT and the Defendants are direct competitors in this space can support a finding of undue prejudice. *VirtualAgility*, 759 F.3d at 1318 ("competition between parties can weigh in favor of finding undue prejudice."). TT surmises, based on the above, that the Defendants' motivation in filing the "CBMs [has] never been about the merits, but instead about the gamesmanship and delay." (Dkt. No. 715-1 at 4.) However, based on the PTO's high patent invalidation rates through CBM proceedings and the fact that the Defendants present reasons for why they only recently filed (and are still filing) the CBM petitions – principally the amount of money required to institute the proceedings and the time needed to prepare the petitions following the TT and TD Ameritrade settlement – a finding of dilatory intent or other gamesmanship is inappropriate. Defendants' decisions to not join TD Ameritrade's prior CBM petitions similarly do not cause alarm because Defendants have argued on multiple occasions that they did not have intimate knowledge of TD Ameritrade's CBM preparations.[6] TT's argument that it will suffer prejudice in the event of a stay because of evidentiary loss is likewise unpersuasive.[7] *See VirtualAgility*,

---

[6] TT's argues that the Defendants "choice in not joining in any of TD's earlier-filed CBM Petitions, despite having plenty of chances, and despite TD and IB even being represented by the ***same counsel***, was an obvious dilatory move." (Dkt. No. 691 at 9) (emphasis in original). Yet, Defendants clearly state that TD Ameritrade was "represented in [the] CBM proceedings by separate and different counsel not present in this litigation" and further state that they did not receive any drafts of the petitions nor did the Defendants and TD "discuss the bases, grounds, or arguments raised in the petitions." (Dkt. No. 708 at 10 n. 7.) As such, based on the disputed record, the Court declines to find any dilatory intent.

[7] The Court is cognizant of TT's contentions that the petitions will take anywhere between 12-24 more months to be completed and that such a delay will cause it undue prejudice. (Dkt. No. 691 at 15.) At the same time, TT's pending motions to amend to add more parties, more patents, and more claims to this litigation run contrary to its delay concerns. Its actions further undermine its contention that the Court, rather than the PTO, will be able to

759 F.3d at 1319 ("It is undoubtedly true . . . that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions are not sufficient to justify a conclusion of undue prejudice.").

Moreover, TT's allegations that it will suffer undue prejudice continue to be undermined by its failure to pursue a preliminary injunction and its decision to bring this infringement action six to seven years after the Defendants released their accused technology. (Dkt. No. 708 at 13.) TT's decision to forego seeking a preliminary injunction is particularly detrimental to its claim. *See, e.g., Trading Tech.,* 2015 WL 1396632, at *5 ("TT's cries of undue prejudice are belied by its approach to this litigation. TT never sought a preliminary injunction and waited more than a year after TD Ameritrade released its accused technology to institute its infringement action."); *VirtualAgility*, 759 F.3d at 1319-20 (while not dispositive, "patentee's delays in pursuing suit and seeking preliminary injunctive relief belie its claims that it will be unduly prejudiced by a stay"); *see also, e.g.*, *Zillow*, 2013 WL 5530573, at *6 ("attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief"); *Ever Win Intern. Corp. v. Radioshack Corp.,* 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *BodyMedia, Inc. v. Basis Science, Inc.,* No. 12–cv–133 (GMS), 2013 WL 2462105, at *1, n. 1 (D. Del. June 06, 2013); *Hill–Rom Servs., Inc. v. Stryker Corp.,* No. 1:11–cv–1120–JMS–DKL, 2012 WL 5878087, at *2 (S.D. Ind. Nov. 20, 2012) ("[A]ttempts by a patentee to argue undue prejudice are undermined if it has elected not to pursue a preliminary injunction.");

---

decide these issues more quickly, particularly as it continues to seek to add more disputes to this litigation. In any event, while the potential delay is notable, it is outweighed by the other considerations discussed herein.

*JAB Distribs.*, 2010 WL 1882010, at *4 ("Plaintiff's claim that it will suffer irreparable harm is undermined by the fact that its complaint . . . does not seek preliminary injunctive relief").

**D.      Burden of Litigation**

At least one court has found that the fourth factor was designed to place "a very heavy thumb on the scale in favor of a stay being granted" where a review has been instituted. *See, e.g., Landmark Tech., LLC v. iRobot Corp.*, No. 6:13CV411 JDL, 2014 WL 486836, at *4 (E.D. Tex. Jan. 24, 2014) ("if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination.") (quoting 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer)).  Moreover, if the PTO "cancels all or some of the claims, then those claims will no longer be at issue," reducing the litigation burden on the Court and the parties. *See, e.g., Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *4 (N.D. Ill. May 29, 2014) ("Again, if the USPTO cancels all or some of the claims, then those claims will no longer be at issue."); *Black & Decker Inc. v. Positec USA, Inc.*, No. 13 C 3075, 2013 WL 5718460, at *1 (N.D. Ill. Oct. 1, 2013) ("a stay at this early stage of the litigation could significantly limit litigation expenses and streamline the proceedings, particularly should the PTO invalidate the claim at issue").  As discussed above, there is high likelihood at that least six of the asserted patents will be found unpatentable.  Four more petitions are already pending and two are, based on the Defendants' representations, soon to be filed.  While it is true that the nature of this litigation has been "stop-and-go," both parties have been responsible for the near-constant delays.  Moreover, given that a good portion – and potentially each and every one – of the asserted patents may be under CBM review, the Court is well within its discretion to find a

stay appropriate to lessen the burden of litigation. Accordingly, the Court concludes that a likely reduced litigation burden also favors a stay of the consolidated cases.

## CONCLUSION

For the reasons stated herein, the Court grants the Defendants' Motion to Stay and stays the consolidated cases in their entirety. (Dkt. No. 667.) Status hearing is set for October 13, 2016 at 10:00 a.m. The parties are directed to inform the Court of each CBM review order within two days of the order being entered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 5/9/2016