IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| *Plaintiff*, | ) ) | No. 10 C 715 |
| v. | ) ) | Judge Virginia M. Kendall |
| IBG LLC, *et al*, | ) ) ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

TT accuses an IBG product, TWS BookTrader, of infringement. A small portion of TWS BookTrader's user population is located outside of the United States. Although TT does not specifically contend that IBG is responsible for any foreign infringement, IBG now moves for summary judgment that foreign activities of TWS BookTrader do not constitute direct or indirect infringement of the patents-in-suit. For the reasons set forth below, the Motion (Dkt. 1390) is granted in part and denied in part.

**BACKGROUND**

TWS BookTrader is an IBG product that is available to users around the world, including in Europe, Asia, and the Americas. (Dkt. 1456 ¶ 9.) To obtain and use a copy of TWS BookTrader, a user must download the entire TWS software platform to her computer through download links on IBG's website. (*Id.* ¶ 10.) When a user launches and logs into the TWS software platform, the user opens TWS BookTrader by selecting a "Contract" on the landing page, then right-clicking on "Trading Tools," and then selecting "BookTrader." (*Id.* ¶ 16.) When using TWS BookTrader, the user must use a mouse or some other input device to place an order and send it to the electronic exchange. (*Id.* ¶ 17.) Naturally, a user located in a different country downloads the TWS software

1

platform to her computer located in that country and uses a mouse and a monitor located in that country to place orders and send them to the exchange. (*Id.* ¶ 19.)[1]

IBG's website includes a "Forms and Disclosures" page where users may access and download various customer forms. (Dkt. 1456 ¶ 20.) One of these forms is the "Customer Agreement." (*Id.* ¶ 22.) The Customer Agreement grants the user a license to use IB Software, but the license provision of the Agreement does not specifically list the name "TWS BookTrader." (Dkt. 1456 ¶ 24; Dkt. 1539 ¶ 20.) The Customer Agreement does not require users of IB software to make any payment in order to download the software; IBG makes it money through commissions and interest. (Dkt. 1456 ¶¶ 23–25; *see also* Dkt. 1539 ¶¶ 30–32.)[2] The Customer Agreement provides that commissions and fees will be charged at a specified rate, which will reduce account equity. (Dkt. 1456 ¶ 27; Dkt. 1539 ¶¶ 26–29.) The Customer Agreement is governed by New York or Connecticut law, depending on the version, and disputes over the Agreement are heard in New York or Connecticut courts, respectively. (Dkt. 1539 ¶¶ 17–19.) The Parties genuinely dispute whether the Customer Agreement becomes effective between IBG and the customer upon the opening of an account. (*Id.* ¶¶ 14–16.) The Parties also genuinely dispute whether any foreign customers have entered into the Customer Agreement. (*Id.* ¶ 36.) TT lists foreign customers who it believes have entered into the Customer Agreement, but IBG disputes that any of the evidence presented shows that they ever entered into the Customer Agreement. (*Id.*)

TT's alleges that IBG directly infringes the asserted claims of the patents-in-suit by making, using, selling, or offering to sell TWS BookTrader. (Dkt. 1456 ¶ 36.) TT does not make

---

[1] TT purports to dispute this, but its dispute is not that this statement is false but rather that the data pertaining to the number of foreign users is unreliable. Assuming that an individual is accurately identified as a foreign user, however, there is no dispute that this accurately describes the processes involved in downloading and using TWS BookTrader.
[2] As of September, 2019, IBG no longer charges commissions for US stock trading. (Dkt. 1456 ¶ 31.)

any specific allegations about foreign users, but instead alleges that all users have access to TWS BookTrader, regardless of their location. (*Id.* ¶ 39.)

The Parties dispute whether IBG makes a copy of TWS BookTrader on IB's server every time a user requests to download the software. (Dkt. 1539 ¶ 4.) The Parties also dispute how many foreign users IBG has and how many downloads of the software were made by users outside of the United States. (*Id.* ¶¶ 7–8.) TT's expert, Catherine Lawton, reviewed IBG's data and determined that IBG classifies 2,860 TWS BookTrader users as both U.S. and non-U.S. users. (*Id.* ¶ 9.) TT presents this piece of evidence, among others, in support of its contention that IBG's data regarding the location of its users is unreliable. The Parties dispute whether IBG's user location data is reliable. Finally, they also dispute whether IBG hosts TWS BookTrader on U.S.-based servers for users outside the United States. (*Id.* ¶ 2.) At least for some foreign users for whom U.S.-based servers would be the closest to their location, TT's evidence suggests that IBG hosts TWS BookTrader on U.S.-based servers. (*Id.*)

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). Parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether a genuine issue of material fact exists, the Court draws all reasonable inferences in favor of the party opposing the motion. *Anderson*, 477 U.S. at 255; *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018).

## DISCUSSION

As an initial matter, IBG divides its Motion into three parts by claim type. TT does not dispute that IBG's sales or offers to sell TWS BookTrader to foreign users cannot infringe TT's method and system claims. Accordingly, IBG's Motion is granted to the extent IBG seeks summary judgment related to infringement of the method and system claims caused by the activities of foreign users. The Parties only dispute pertains to the computer readable medium ("CRM") claims.

Title 35 U.S.C. § 271(a) prohibits making, using, offering to sell, and selling any patented invention within the United States. The plain implication of the statute is that a claim of foreign infringement is not cognizable in this Court. Thus, the title of instant Motion ("Motion for Summary Judgment of No Direct or Indirect Infringement for Foreign Activities") is something of a misnomer. TT never alleges that foreign activities cause an infringement. It does allege, however, that IBG committed domestic acts of infringement via its alleged contractual relationship with customers located outside of the United States. TT also seeks recovery for foreign damages proximately caused by domestic acts of infringement. *C.f. WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138–39 (2018) (explaining that 25 U.S.C. §§ 271(f)(2) & 284 allow patent owners to recover lost foreign profits).[3]

To resolve this Motion as to the CRM claims, the Court must only determine whether the parties genuinely dispute that IBG sells or offers to sell TWS BookTrader to its foreign users and if so, whether the acts of selling or offering to sell occur within the United States. IBG contends that the Court should not even entertain that question because TT did not "articulate in its infringement contentions any theory of infringement based on alleged 'sales' or 'offers to sell'

---

[3] This is not a § 271(f) case, so *WesternGeco* is of limited value here.

BookTrader." (Dkt. 1390 at p. 16.) IBG is mistaken. TT's Amended Final Infringement Contentions state in multiple locations that Defendants infringe the patent claims by selling and offering to sell TWS BookTrader. (Dkt. 1456-3 at pp. 4, 23, 29.) These statements clearly put IBG on notice of TT's contention that IBG infringed the patent claims by offering to sell and selling TWS BookTrader.

Before reaching the question about the location of any sale or offer to sell, the Court must evaluate whether any such offer or sale occurred. According to TT, the sale here is the grant of a license to use TWS BookTrader, as laid out in the Customer Agreement. The license contained within the Customer Agreement reads:

> IB grants Customer a non-exclusive, nontransferable license to use IB Software solely as provided herein. Title to IB Software and updates shall remain the sole property of IB, including all patents, copyrights and trademarks. Customer shall not sell, exchange or transfer the IB Software to others. Customer shall not copy, modify, translate, decompile, reverse engineer, disassemble or reduce to a human readable form, or adapt, the IB Software or use it to create a derivative work, unless authorized in writing by an officer of IB. IB is entitled to immediate injunctive relief for threatened breaches of these undertakings.

(Dkt. 1401-66 at p. 9.) Other sections of the Customer Agreement mention TWS, which gives rise to an inference that the "IB Software" referenced within the licensing provision includes TWS.[4] A commercial transaction arranged as a license, "*e.g.*, a standard computer software license," may be "tantamount to a sale" because the product is "just as immediately transferred to the buyer as if it were sold." *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1378 (Fed. Cir. 2003) (internal citations and quotations omitted). IBG contends that no such license was granted here, but that instead the Customer Agreement constituted a mere "general agreement" that cannot, as a matter of law, constitute a sale or an offer. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d

---

[4] Whether the parties to the Customer Agreement would have understood the term "IB Software" to include TWS BookTrader is a question of fact that the Court need not resolve at this stage.

5

1371, 1375 (Fed. Cir. 2014), *rev'd on other grounds by* 136 S. Ct. 1923 (2016). IBG reads too much into *Halo*'s discussion of the "general agreement" at issue in that case. This Court reads *Halo* as providing that a sale does not occur within the United States within the meaning of § 271(a) when the product at issue was manufactured abroad, shipped abroad, and delivered to buyers abroad. *Id.* at 1379. That the agreement in *Halo* happened to be a general business agreement rather than an agreement for a specific product does not appear to have had a significant impact on the Federal Circuit's analysis. *See id.* In any event, the instant case contains a license agreement for "IB Software." Clearly, TWS BookTrader is such software. Reading the Customer Agreement as a whole and considering that it contains specific references to TWS in sections other than the license section, the Agreement and a user's acceptance of the Agreement can constitute an offer and a sale. Assuming that foreign users entered into the Customer Agreement by using TWS BookTrader, TT has presented sufficient evidence to create a disputed issue of fact as to whether IBG sold or offered to sell TWS BookTrader to foreign users.

For the sale or offer to sell created by the Customer Agreement to constitute an infringing act, it must be a domestic sale or offer to sell. To determine whether there has been a domestic offer to sell an infringing product, courts do not focus "on the location of the offer, but rather [on] the location of the future sale that would occur pursuant to the offer." *Transocean Offshore Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed Cir. 2010). Determining whether a sale occurs within the United States for purposes of § 271(a) requires consideration of a variety of factors such as the place of performance, the location of negotiation, and the location of contracting. *Id.* at 1310. A sale generally "does not only occur at a 'single point where some legally operative act took place.'" *Id.* (quoting *Litecubes*, *LLC v. N. Light Prods., Inc.* 523 F.3d 1353, 1369–70 (Fed Cir. 2008)).

6

Viewing the evidence in the light most favorable to TT, the Customer Agreement is between IBG, a U.S.-based company, and the user. Every time a new user downloads the TWS software, a duplicate copy is created on a U.S.-based server. TWS BookTrader was developed in the U.S. At least for some foreign users, IBG hosts TWS BookTrader on servers in the United States. When a user pays a commission for placing a trade using the software, that payment goes to IBG, a U.S-based company. The Customer Agreement is governed by Connecticut and New York law and any disputes over the Customer Agreement must be litigated in New York or Connecticut courts. Taking all of this together, TT has presented sufficient factual detail to give rise to a reasonable inference that the transaction or series of transactions involved when a foreign user downloads and uses TWS BookTrader is in significant part a U.S.-based sale or offer to sell. Accordingly, IBG is not entitled to summary judgment that its activities vis-à-vis foreign users of TWS BookTrader do not infringe the CRM claims at issue.

## CONCLUSION

IBG's Motion for Summary Judgment of No Direct or Indirect Infringement for Foreign Activities of TWS BookTrader [1390] is denied as to the CRM claims and granted as to the system and method claims.

_____
Virginia M. Kendall
United States District Judge

Date: December 17, 2020