**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| *Plaintiff*, | ) ) | No. 10 C 715 |
| v. | ) ) | Judge Virginia M. Kendall |
| IBG LLC, *et al*, | ) ) ) | |
| *Defendants*. | ) | |

**ORDER**

IBG contends that TT's patents are unenforceable on the grounds that this action is barred by the doctrine of equitable estoppel. In support of this unenforceability contention, IBG cites TT's "silence and inaction" between IBG's introduction of the accused BookTrader module in 2004 and TT's filing of this suit in 2010. IBG contends that this silence and inaction led IBG to reasonably infer that TT did not intend to assert its patents against IBG and that IBG reasonably relied on that inference to continue developing, marketing, and selling the accused products. TT now moves for summary judgment that the doctrine of equitable estoppel does not foreclose this patent infringement case. For the reasons set forth below, TT's Motion (Dkt. 1381) is denied.

**I.      Background**

IBG released the BookTrader module for the first time on March 22, 2004. (Dkt. 1521 ¶ 1.) TT's '304 and '132 Patents issued on July 20, 2004 and August 3, 2004, respectively. (*Id.* ¶¶ 2–3.) TT filed an infringement suit against eSpeed, Inc. on August 12, 2004, asserting those two patents. (*Id.* ¶ 6.)

On December 14, 2004, TT published an Open Letter to the Futures Industry that appeared in full-page advertisements in the Wall Street Journal and the London Financial Times. (Dkt. 1457 ¶ 10; Dkt. 1521 ¶ 12.) The Open Letter proposed that each of the "big four" exchanges should pay TT 2.5 cents for every future and future option transaction. (Dkt. 1384-1 at p. 21.) In exchange, TT explained that it "would forfeit the right to be the aggressor in any patent infringement lawsuit, permanently . . . ." (*Id.*) The Open Letter specifically mentions Interactive Brokers as a TT competitor. (Dkt. 1384-1 at p. 22.) The Open Letter also explains that "TT believes there is a lot of exposure floating around out there. While we are tied up during the eSpeed litigation, we may not be able to pursue other infringers. However, regardless of when we are freed up, we will enforce our rights, including the right to recover back damages." (Dkt. 1384-1 at p. 25.) The Open Letter does not identify any particular IBG product, nor does it specifically state that IBG infringed any TT patent. (Dkt. 1457 ¶¶ 16, 18.)

1

When IBG's founder, Thomas Peterffy, read the Open Letter, he thought "it was hard to understand," but that all he "could get out of it was that [TT was] threatening [him] with a lawsuit." (Dkt. 1457 ¶ 13; Dkt. 1521 ¶ 13.) Peterffy did not believe in 2004, however, that IBG was an infringer; rather, he suspected that TT might have been infringing IBG patents. (Dkt. 1457 ¶ 20.) Peterffy testified that if TT had sued IBG in 2004 instead of 2010, he "certainly would have thought about [stopping to offer BookTrader]." (*Id.* ¶ 22.)

About one year after publishing the Open Letter, TT filed over a dozen infringement lawsuits against competitors listed in the Open Letter. (Dkt. 1521 ¶ 11.) TT did not sue IBG at that time.

In the years between the publication of the Open Letter and the filing of this lawsuit, IBG continued to update, develop, and market the BookTrader software. (Dkt. 1521 ¶¶ 15, 21.)

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. Discussion

The doctrine of equitable estoppel, if applicable, "serves as an absolute bar to a patentee's infringement action." *John Bean Techs. Corp v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018) (citing *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed Cir. 1992)). "The defense consists of three elements (1) the patentee engages in misleading conduct that leads the accused infringer to reasonably infer that the patentee does not intend to assert its patent against the accused infringer; (2) the accused infringer relies on that conduct; and (3) as a result of that reliance, the accused infringer would be materially prejudiced if the patentee is allowed to proceed with its infringement action." *John Bean Techs. Corp.*, 887 F.3d at 1327 (citing *Scholle Corp v. Blackhawk Molding Co.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998)). Misleading conduct may include the patentee's "'statements, actions, inaction, or silence where there was an obligation to speak.'" *Id.*

TT's Motion only argues that IBG has failed to satisfy the first two equitable estoppel factors. Accordingly, the Court only addresses those two factors.

2

### a. Misleading Conduct

IBG contends that TT's publication of the Open Letter followed by the initiation of legal action against other competitors listed in the Letter was misleading conduct that led IBG to reasonably infer that TT did not intend to assert its patents against it.

First, a reasonable jury could read the Open Letter as constituting a threat of litigation against IBG. Although the Letter meanders in ways that make it difficult to follow, a reasonable jury could conclude, as Thomas Peterffy did, that the letter constituted a threat of litigation against IBG. The Letter specifically explains that "there is a lot of exposure floating out there" and that when TT "freed up" from the eSpeed litigation it would enforce its rights against other infringers. Although the product does not identify any IBG product as infringing, it does specifically mention IBG as one of its competitors. A reasonable person could infer from this letter that TT intended to threaten litigation against IBG and other competitors.

Second, about a year after the publication of the Open Letter, TT followed through on the Open Letter's threat to sue some of the competitors. But TT did not sue IBG. Approximately five years passed without a word on the matter. From this course of conduct—a threat of litigation against many, action against some of the threatened parties, and then five years of silence—a reasonable jury could conclude that TT engaged in misleading conduct from which IBG could reasonably infer that TT did not intend to bring legal action against it.

### b. Reliance

TT relies on disputed counterfactuals in support of its contention that there was no reliance. What is undisputed here is that during TT's five years of silence, IBG invested in updating and marketing the accused BookTrader system. A reasonable jury could conclude that IBG would not have done this but for its belief that TT did not intend to sue. In other words, a reasonable jury could conclude that IBG relied on TT's misleading course of conduct. That conclusion would be consistent with Peterffy's testimony that he would have considered no longer offering BookTrader had TT sued in 2004.

### CONCLUSION

TT's Motion for Summary Judgment of No Equitable Estoppel [1381] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: December 17, 2020