IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| *Plaintiff*, | ) ) | No. 10 C 715 |
| v. | ) ) | Judge Virginia M. Kendall |
| IBG LLC, *et al*, | ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM ORDER AND OPINION

One of IBG's unenforceability contentions in this case is that TT has misused its patents. Specifically, IBG contends that TT misused its patents by "forc[ing] many of its competitors who it sued and/or threatened to sue into agreements that tie licenses to the asserted patents . . . to sales of products in foreign jurisdictions where TT does not hold any patents." (Dkt. 1380-3 at p. 5.) TT now moves for summary judgment that it did not misuse its patents. Because TT and the licensees entered into licensing agreements that applied on a global basis for the purpose of administrative convenience, the Motion (Dkt. 1377) is granted.

### BACKGROUND

Between 2004 and 2018, TT and various third parties entered into thirty-five license and/or settlement agreements with respect to the four patents-in-suit. (Dkt. 1462 ¶ 7.) At least seven of these agreements include language explaining that the license granted is "worldwide and is based on worldwide usage of [the competitor's licensed products], as opposed to only usage in countries in which there is patent protection." (*Id.* ¶ 8.) These license agreements generally granted the licensees the right to make, use, or sell TT's licensed products. (*E.g.*, *id.* ¶¶ 13, 17, 21, 25, 29, 33, 38, 42, 47, 57, 65, 69.) The license agreements also contain the following or substantively identical

1

language: "WHEREAS, TT is willing to grant the discounted license granted herein for administrative convenience because the license is worldwide and requires payments of royalties for use of Licensed Products . . . anywhere in the world as opposed to royalties based only on the usage of Licensed Products in countries in which there is patent protection." (*E.g.*, *id.* ¶ 14, 18, 22, 30, 34, 39, 43, 48.)

Steve Borsand, counsel for TT, was primarily responsible for negotiating the settlement and license agreements on behalf of TT. (Dkt. 1462 ¶ 71.) Borsand testified that TT included the language about discounted royalty rates largely for administrative convenience. (*Id.* ¶ 72.) In his words, "they were going to pay a rate based on the worldwide usage. In many cases, that would land in countries where there was a patent but for—it could include use of a software in a country where there wasn't. So that's part of the reason for the discount." (*Id.*)

TT only has patent protections in a few jurisdictions around the world. Depending on the patent, those jurisdictions include the U.S., U.K., E.U., and Singapore. (*E.g.*, dkt. 1525 ¶¶ 5, 8, 11, 13, 17, 18.)

In TT's 2004 Open Letter, TT asserted that TT was responsible for over half of the trades that passed through the "big four" futures exchanges. (Dkt. 1525 ¶ 37.) In the summer of 2004, the Chicago Mercantile Exchange called TT's Harris Brumfield to its offices to explain that it was not comfortable with the "huge concentration" of trading volume for which TT was responsible. (*Id.* ¶ 38.)

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely

dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## DISCUSSION

Patent misuse is a patentee's act of "'impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect.'" *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed Cir 2010) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed Cir. 1986)). The "basic rule of patent misuse" is that a patentee "may exploit his patent but may not 'use it to acquire a monopoly not embraced in the patent.'" *Princo*, 616 F.3d at 1327 (quoting *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947)). Where a patentee imposes restrictive conditions on licenses to broaden the scope of the patent, an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim. *Princo*, 616 F.3d at 1328. The accused infringer bears the burden of establishing patent misuse by clear and convincing evidence. *St. Lawrence Commc'ns LLC v. Motorola Mobility LLC*, 15-CV-351, 2018 WL 915125 (E.D. Tex. Feb. 15, 2018) (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed Cir. 1998); *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1374 (Fed Cir. 2007)).

The Federal Circuit has identified certain practices, like "tying" arrangements and arrangements in which a patentee effectively extends the temporal scope of its patent, that may amount to patent misuse. *U.S Phillips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1185 (Fed.

3

Cir. 2005). The Parties here disagree about whether IBG's theory of patent misuse is a tying arrangement or whether it is more akin to an expansion of the temporal scope. IBG's position is that its contention that TT improperly expanded the geographic reach of its patent is akin to a temporal expansion claim. IBG cites no case law to support this interpretation. The only case that IBG cites in support of this proposition is inapposite, as it clearly pertains to a tying arrangement. *See Finjan, Inc. v. ESET, LLC*, No. 17-CV-183, 2017 WL 4358128, at *4 (C.D. Cal. Oct. 2, 2017) ("ESET is arguing that Finjan is impermissibly broadening the territorial scope of its patents by tying a *worldwide* license on sales of products that may be covered by a patent in some territories.") (emphasis in original). Indeed, IBG's own invalidity contentions state that TT misused its patents by tying licenses to the asserted patents to sales of products in foreign jurisdictions where TT does not hold any patents. (Dkt. 1380-3 at p. 5.) This contention clearly alleges a tying arrangement, not an expansion of the temporal scope. The Court's analysis proceeds accordingly.

"'A tying arrangement is the sale or lease of one product on the condition that the buyer or lessee purchase a second product.'" *Monsanto Co. v. Scruggs*, 493 F.3d 1328, 1338 (Fed Cir. 2006) (citing *Breaux Bros. Farms, Inc. v. Teche Sugar Co., Inc.*, 21 F.3d 83, 85 (5th Cir. 1994)). To prove that a tying arrangement exists, the accused infringer must show: "(1) the involvement of two separate products or services; (2) the sale of one product or services is conditioned on the purchase of another; (3) the seller has market power in the tying product; and (4) the amount of interstate commerce in the tied product is not insubstantial." *Monsanto Co.*, 459 F.3d at 1338 (citing *Eastman Kodak Co. v. Image Tech. Serv., Inc.*, 504 U.S. 451, 461–62 (1992)). Here, TT does not apparently dispute that the first two elements are satisfied.

The Parties disagree about the third prong—namely, they dispute whether IBG has shown that TT has market power in the futures trading industry. In the absence of market power, a tying

4

arrangement does not constitute patent misuse. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed Cir. 1997). A defendant alleging a tying arrangement must offer evidence "defining the relevant market and proving that [the patent holder] has market power within it." *Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45–46 (2006). In response to this Motion, IBG relies on testimony from Mr. Brumfield that TT was responsible for approximately half of the futures transactions conducted at the Chicago Mercantile Exchange. That testimony is consistent with a statement TT made in its 2004 Open Letter. Brumfield also testified that CME was worried about the heavy concentration of trades that used TT's trading platform. Indeed, according to Brumfield, CME called him into their offices to tell him that TT's market concentration was "very much a problem." (Dkt. 1525 ¶ 38.)[1] Assuming the admissibility of this evidence, it is more than sufficient to establish that TT had substantial market power in electronic futures trading. The evidence is not just that TT had a substantial market share but that industry players were concerned by its large influence in the market. Assuming the accuracy of this uncontroverted evidence, the amount of interstate commerce in the tied product was not insubstantial.

TT contends that the Court should not accept IBG's evidence of market power because IBG did not specifically mention it in its invalidity contentions. Local Patent Rule 3.4 requires a party claiming unenforceability to "identify the acts allegedly supporting and all bases for the assertion of unenforceability." N.D. Ill. LPR 2.3(c). IBG's invalidity contentions do not run afoul of that mandate. The invalidity contentions list three bases for unenforceability: equitable estoppel, patent misuse, and inequitable conduct. With respect to patent misuse, the only act IBG needed to have alleged was that TT entered into tying arrangements. IBG made that contention. That IBG

---

[1] Brumfield's testimony about what people at CME told him about TT's market concentration may be inadmissible hearsay, but the briefings did not address that issue. The Court will consider this evidence for purposes of this Motion because the Parties did not brief whether it is admissible evidence.

5

did not specifically explain the evidence its relies on for an element of a patent misuse claim is not a violation of the rule. The *basis* for unenforceability is patent misuse, and the only *act* that is an element of a patent misuse claim is entering into a tying arrangement. Having market power is neither an act nor a basis for unenforceability, so it need not be included in the unenforceability contentions. By contending that TT had entered into tying arrangements that constituted patent misuse, IBG put TT on notice that it believed the evidence revealed during the discovery process was sufficient to establish each of the elements of a tying arrangement claim, including market power.

Even assuming that IBG establishes the existence of a tying arrangement, TT contends that the provisions providing for discounted royalties for worldwide licenses do not constitute patent misuse because the parties to the agreements agreed to these provisions for reasons of administrative convenience. In support of this theory, TT cites cases finding no patent misuse where the patentees entered into licensing agreements that covered unpatented components of an invention where doing so was a convenient way to measure the value of the licenses. *See, e.g.*, *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1408 (Fed. Cir. 1996); *see also Zenith Radio Corp. v. Hazeltin Res., Inc.*, 39 U.S. 100, 138 (1969) ("If convenience of the parties rather than patent power dictates the total-sales royalty provision, there are no misuse of the patents and no forbidden conditions attached to the license."). This line of cases allows a patentee to license unpatented components of an invention in the interest of administrative convenience. In the instant case, the licenses do not cover unpatented components of the invention. Instead, they give licenses to use TT's invention in jurisdictions where TT does not have patent protection. The licensing agreements explain that this was done for the purpose of promoting administrative convenience.[2]

---

[2] IBG disputes the idea that the parties to the agreements entered into them for purposes of administrative convenience by citing settlement negotiations between TT and certain license holders. Federal Rule of Evidence 408 prohibits the

There is no binding case law that extends the administrative convenience exception to licensing agreements that effectively expand the territorial reach of patent protection. That being said, however, the Court agrees that "seeking a worldwide license helps both parties avoid the extraordinary transaction costs of litigating or licensing a global patent portfolio on a country-by-country basis." *St. Lawrence Comm'ns.*, 2018 WL 915125, at *9. If a party takes a license to use a product that is patented in many of the jurisdictions in which it does business, it might just be more convenient for both parties to allow the license to apply on a global basis, at a discounted rate. IBG has not presented any admissible evidence in support of its belief that this arrangement was not administratively convenient nor that TT coerced parties to enter into the agreement. As such, the only evidence before the Court is the text of the agreements themselves, which explicitly indicate that the arrangement is administratively convenient, and Mr. Borsand's testimony that the parties agreed to these arrangements for purposes of administrative convenience. The Court must therefore conclude that administrative convenience was the motivating force behind these agreements. As such, TT did not misuse its patents by entering into these agreements.

## CONCLUSION

For the reasons set forth above, TT's Motion for Summary Judgment of No Patent Misuse [1377] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: January 4, 2021

---

Court from considering evidence of this nature. In any event, if the parties had not entered into these agreements for reasons of administrative convenience, they would not have entered into agreements that state that they entered into them for reasons of administrative convenience.