IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRIS BRUMFIELD, TRUSTEE FOR ASCENT TRUST, | ) ) ) |
| *Plaintiff*, | ) ) No. 10 C 715 |
| v. | ) ) Judge Virginia M. Kendall |
| IBG LLC, *et al*, | ) ) ) |
| *Defendants*. | ) |

## **MEMORANDUM OPINION AND ORDER**

Trading Technologies ("TT") [1] initially accused IBG of infringing twelve of its patents. (Dkt. 252). IBG asserted invalidity counterclaims against each asserted claim of the patents, (Dkt. 1106), and initiated covered business method ("CBM") review proceedings with the United States Patent Office ("USPTO"). The CBM proceedings resulted in eight of the twelve patents being invalidated. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019); *Trading Techs. Int'l, Inc. v. IBG LLC*, No. 18-1105, Dkt. 84 (Fed. Cir. May 21, 2019); *Trading Techs. Int'l, Inc. v. IBG LLC*, No. 18-1489, Dkt. 89 (Fed. Cir. July 1, 2019). TT subsequently filed an amended complaint accusing IBG of infringing the four remaining patents: the '304, '132, '411, and '996 patents. (Dkt. 1118). At summary judgment, the Court held that the '411 and '996 patents were patent ineligible and granted partial summary judgment in IBG's favor. (Dkt. 1971). Following a jury trial on the remaining patents ('304 and '132), the jury returned a verdict in TT's favor, finding that IBG infringed both patents, but did not do so willfully. (Dkt. 2134). The jury awarded TT

---

[1] Since the completion of trial and the filing of this motion, TT transferred its interest in the patents-in-suit to Harris Brumfield. (Dkt. 2188). The Court accordingly granted TT's motion to substitute Mr. Brumfield as the plaintiff in this action. (Dkt. 2216). For purposes of consistency and to avoid confusion, however, the Court continues to refer to TT the Plaintiff.

$6,610,985 in damages, representing less than one percent of the $962 million in damages it sought. (*Id.*); (Trial Transcript at 4006). The Court entered judgment in TT's favor and awarded costs. (Dkt. 2132) ("Plaintiff(s) shall recover costs from defendant(s)."). On October 5, 2021, IBG moved to correct or amend the judgment to include the Court's disposition of the '411 and '996 patents during summary judgment, but did not challenge the Court's award of costs. (Dkt. 2136). On October 7, 2021, TT filed a bill of costs seeking $3,293,662.24, which it subsequently amended to $2,151,913.59. (Dkt. 2142) (Dkt. 2154 at 7). IBG disputes both the award of costs and the amount of costs requested by TT. (Dkt. 2153). For the following reasons, TT's bill of costs is granted in the amount of $490,231.98.

**DISCUSSION**

**I.  The Court's Award of Costs**

The patent code contemplates an award of costs to a prevailing patent holder. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court *shall* award the claimant damages adequate to compensate for the infringement … together with interest and costs as fixed by the Court."). (emphasis added). Accordingly, the Court awarded costs to TT following the jury's infringement verdict in its favor. (Dkt. 2132). While district courts enjoy wide discretion in awarding costs, "section 284 requires the district court to refer to [Federal Circuit] precedent to determine the bounds of its discretion." *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993).

IBG argues no costs should have been awarded because TT cannot be said to be the prevailing party, where IBG successfully invalidated 10 of the 12 asserted patents, rebutted TT's claims of willful infringement, and convinced the jury that TT's damages request of $962 million was severely overstated. As a preliminary matter, IBG's challenge is inappropriately raised in

opposition to TT's bill of costs. If the Court were to accept IBG's arguments and rescind the award of costs, it would necessarily have to amend the final judgment. Thus, IBG should have raised this argument in a Rule 59(e) motion to amend the judgment. Fed. R. Civ. P. 59(e). Indeed, IBG filed a motion to correct or amend the judgment on other grounds, but failed to include its challenge to costs at that time. (*See* Dkt. 2136). As the time for filing such a motion has expired, IBG has effectively waived its challenge to the Court's award of costs. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

Notwithstanding waiver, IBG's argument that TT's failure to secure a robust victory prevents it from recovering costs is flawed. First, 8 of the 12 asserted patents were invalidated in *separate* proceedings before the USPTO and the Patent Trial Appeals Board and then, *voluntarily* withdrawn by TT from this case prior to any action by this Court. For purposes of the present action, TT did not lose on its claims premised on those patents because those patents were never evaluated as part of this case. It would, thus, be inappropriate to deny TT costs premised on IBG's victories in separate proceedings. While IBG claims invalidating these patents was "hard-fought and expensive," (Dkt. 2153 at 3), "recovery of costs therein must be decided in those proceedings, not in this Court." *Capella Photonics, Inc. v. Cisco Sys. Inc.*, No. 14-CV-03348-EMC, 2019 WL 4242665, at *4 (N.D. Cal. Sept. 6, 2019) (outcome of PTAB proceedings did not affect determination of which party prevailed in patent case).

Further, while TT did not prevail on the '411 and '996 patents, its willful infringement claims, or its ultimate damages request, courts are not required to consider the relative success of the parties when awarding costs under § 284. *See e.g., Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1348 (Fed. Cir. 2006) ("[T]here is no rule requiring courts to apportion costs according to the relative success of the parties."); *Rosco, Inc. v. Mirror Lite Co.*,

3

No. CV-96-5658CPS, 2009 WL 3587344, at *3 (E.D.N.Y. Oct. 26, 2009), *aff'd,* 394 F. App'x 714 (Fed. Cir. 2010) ("The amount of costs that can be recovered by a prevailing party is not related to the amount damages awarded for infringement."). IBG's cited cases are non-Federal Circuit cases that do not involve costs awarded for patent infringement under § 284, which requires the Court to defer to Federal Circuit precedent. *Delta-X*, 984 F.2d at 414. § 284 explicitly contemplates an award of costs for a patent holder who prevails on its infringement claims and TT did just this—TT proved IBG infringed two of its patents, for which the jury awarded it more than $6 million dollars, a substantial victory, although TT hoped for more. The Court stands by its award of costs under § 284.

## II. Apportionment

Relatedly, IBG argues TT's significant setbacks on the merits of its case warrant apportioning its costs according to the parties' relative successes. Apportionment is "appropriate, only under limited circumstances, such as when the costs incurred are greatly disproportionate to the relief obtained." *Kemin*, 464 F.3d at 1348. Even then, "there is no rule requiring courts to apportion costs." *Id*. This case does not present the limited circumstances under which apportionment would be appropriate. First, while TT did not prevail entirely, TT demonstrated IBG's infringement of two patents, defeated IBG's assertions of invalidity and unenforceability at summary judgment, and obtained a money damages award of more than $6 million dollars. This is a substantial victory militating against apportionment, particularly because TT does not seek costs related to the CBM proceedings or the 8 patents invalidated therein. *See id.* (affirming district court's decision to decline apportionment where plaintiff had prevailed on one of its two infringement claims, as well as defendant's invalidity and unenforceability claims); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 986 (N.D. Ill. 2010) (declining to

4

apportion costs where "TT demonstrated eSpeed's infringement of two patents, defeated assertions of invalidity and unenforceability, obtained a money damage award of more than S2.5 million, and obtained a permanent injunction against eSpeed's future production and sale of the infringing products."). Moreover, as IBG acknowledges, it would be nearly "impossible to disentangle … aspects of the case on which [TT] did not prevail" and on which it did. (*See* Dkt. 2153 at 15); *see also eSpeed*, 750 F.Supp. 2d at 986 (declining to apportion costs where there was no "principled way to perform the apportionment."). Finally, as discussed below, the amount of costs awarded to TT is substantially less than its $6 million jury award. For these reasons, the Court declines to apportion TT's costs in this case.

### III. Amount of Costs

TT seeks $2,151,913.59 in costs under 28 U.S.C. §§ 1920 and 1924 and Local Rule 54.1 for (1) fees of the clerk and marshal, (2) deposition and hearing transcript fees, (3) printing fees, (4) copies and exemplification fees, (5) interpretation and translation fees, and (6) witness fees. "Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir.2000). Generally, the claimed expenses must be reasonable and necessary, not merely incurred for convenience. *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993) (superseded on other grounds). TT has "the burden of demonstrating the amount of its recoverable costs." *Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2006).

#### A. Fees of Clerk and Marshall

The Court has authority under 28 U.S.C. 1920(1) to tax fees of the clerk and marshal, which include disbursement related to filing fees, service of process for witnesses, and witness

5

appearance fees. *See e.g., Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005); *Manson v. City of Chicago*, 825 F.Supp.d 952, 956 (N.D. Ill. 2011). TT seeks $3,155.50 in such fees and IBG does not oppose this request. Therefore, TT's request for fees of the clerk and marshal is granted in the amount of $3,155.50.

### B. Deposition and Hearing Transcript Fees

The Court has authority under 28 U.S.C. § 1920(2) to tax fees and disbursements for transcripts necessarily obtained in the case. Recovery is limited under Local Rule 54.1(b) to the copy rate provided by the Judicial Conference of the United States at the time the deposition was taken or hearing was held.

#### i. Deposition Costs

Beginning with deposition costs, TT seeks costs for (1) deposition transcripts, (2) deposition video recording, and (3) court reporter attendance. First, IBG argues TT taxes transcript copies at an unauthorized rate, but TT has demonstrated that for these transcripts, the rate provided by the Judicial Conference for expedited delivery was necessary due to court-imposed deadlines in the case. For example, twelve depositions were taken less than 30 days before the deadline for opening expert reports. (Dkt. 2154 at Ex. 17 A). TT had to expedite transcripts for these depositions so that its experts could rely on them for their reports. (*Id*.) Thus, TT properly taxes these transcripts at the higher expedited rate. IBG also objects to taxing costs related to Kawashima's deposition, which was primarily related to the CBM proceedings. Nonetheless, TT demonstrates that IBG read portions of Kawashima's deposition at trial. (Trial Transcript at 2396–2427). The related costs are thus properly taxed. IBG also takes issue with four depositions for which TT failed to provide sufficient information to allow IBG to evaluate the reasonableness of the costs. TT fails to respond to this position and admits, at least with respect to two of these

6

depositions, that it lacks detailed invoices. (Dkt. 2154 at Ex. 17 A). Thus, the Court declines to tax the costs associated with the depositions of Galik on June 13, 2016, Pirrong on February 21, 2020, Thomas on October 7, 2020, and Lawton on October 9, 2020. In total, the Court awards TT $54,267.23 in deposition transcript costs. [2]

Next, the Court may award costs for video-recorded transcriptions of a deposition, so long as they are reasonable and necessary. *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 701-02 (7th Cir. 2008). IBG concedes that some costs are warranted, but that the Court should decline to tax costs for video-recorded depositions where the deponent is within the Court's subpoena power. *See e.g.*, *Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, No. 11 C 4574, 2016 WL 612792, at *4 (N.D. Ill. Feb. 16, 2016) (finding that such recordings are not necessary). TT argues this approach lacks merit because at least one witness in this case, R. Walters, was within the Court's subpoena power at the time of his deposition, but moved outside of the Court's jurisdiction prior to trial, necessitating that use of his video deposition. The fact that a witness resides outside the Court's subpoena jurisdiction, however, does not necessitate a video deposition either. *See e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 977 (N.D. Ill. 2010) ("[W]e reject TT's claim that the video-recorded deposition of every witness residing outside the court's subpoena power was automatically necessary."). Moreover, IBG does not contest an award of costs for Walter's video deposition. (*See* Dkt. 2153 at Ex. D). The Court must draw a line and does so in this case by declining to tax costs associated with the depositions of individuals who resided within the Court's subpoena jurisdiction at the time of their depositions and at the time of trial. Namely, the Court declines to tax the costs associated with the video-recorded depositions

---

[2] In a footnote, IBG also asks that the Court decline to tax ancillary deposition costs such as real-time transcripts and exhibits because such costs are a matter of convenience, rather than necessity. IBG fails to specify, however, what costs presented by TT are related to these ancillary costs. Thus, the Court declines to consider this issue.

7

of H. Brumfield, T. Geonnopulos, M. Ryan, F. Owens, and S. Borsand. (*See* Dkt. 2153 at fn. 7). IBG also asks the Court to decline awarding costs for the video depositions of those witnesses that TT knew would testify at trial. While there is some authority for IBG's position, *Black v. Wrigley*, No. 17 C 101, 2020 WL 4437677, at *26 (N.D. Ill. Aug. 3, 2020), in a complex case such as this one, where the parties' positions evolved over time, it would not have been feasible for TT to have known which witnesses would and would not testify at trial. The Court accordingly awards TT $71,895.04 in video-recorded deposition costs. (*See* Dkt. 2154 at Ex. 17 C). Finally, the parties agree that TT is entitled to $4,380.00 in court reporter attendance fees. (*See* Dkt. 2154 at Ex. 17 D).

  ii.  **Hearing Transcript Costs**

IBG disputes the hearing transcript costs sought by TT before December 13, 2017, for failure to provide adequate documentation. While TT provided a summary chart providing some information about these costs (*see* Dkt. 2154 at Ex. 18), it did not provide the underlying invoices to IBG. (*See* Dkt. 2165 at 3–4). For this reason, the Court declines to tax these costs. IBG also disputes the cost of expedited transcripts. As with the deposition transcripts, however, TT these transcripts needed to be expedited for use in various filings throughout the case. (*See* Dkt. 2154 at Ex. 18). Finally, IBG argues TT is not entitled to real-time hearing transcript costs, because such costs are a matter of convenience, rather than necessity. *See e.g., Cascades*, 2016 WL 612792 at *4. TT argues these costs are necessary because the case is complex and COVID-19 protocols limited the number of individuals who could be present in the courtroom. Even under these circumstances, however, real-time transcripts are a nontaxable, matter of convenience. The Court declines to award costs for TT's real-time transcripts for the hearings on February 28, 2011, May

8

26, 2011, and March 15, 2012. (*See* Dkt. 2154 at Ex. 18). In total, the Court awards TT **$53,101.90** in hearing transcript costs.

### C. Printing Costs

Title 28 Section 1920(3) authorizes the taxing of costs for printing. IBG argues, TT's printing costs should be reduced because TT failed to provide adequate information regarding certain costs. Specifically, TT claims various costs for binding, document reproduction, tabs, etc. associated with "Williams Lea Inc." but does not specify for what purpose such costs were incurred. (*See* Dkt. 2154 at Ex. 19). Without such information, "the Court can[not] discern whether the costs were reasonable and necessary[.]" *Rodriguez v. City of Chicago*, No. 18-CV-372, 2019 WL 5184079, at *2 (N.D. Ill. Oct. 15, 2019). Accordingly, the Court declines to tax costs associate with Williams Lea Inc. and awards TT $8,539.45 in printing costs. (*See* Dkt. 2154 at Ex. 19).

### D. Exemplification Costs

Section 1920(4) authorizes the taxing of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). TT seeks two types of exemplification costs: (1) electronic discovery costs and (2) graphics and animation costs.

#### a. Electronic Discovery

While the Seventh Circuit has not fully addressed the extent of e-discovery costs which may be taxed under § 1920, it has confirmed that some subset of e-discovery costs are compensable. *See Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming award of costs associated with "converting computer data into a readable format in response to plaintiffs' discovery requests."). Court in this district have concluded that "ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a

9

paper version to an electronic version or converting native files to TIFF (if agreed upon by the parties to be the production format), are compensable under § 1920(4)[,]" while costs related to the "gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to 'making copies" and therefore, are not compensable. *Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) (collecting cases); *see accord Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-01973, 2021 WL 3489813, at *13 (N.D. Ill. Aug. 6, 2021) (collecting cases).

Under this framework, the Court finds TT's costs for "reprographics" from Williams Lea Inc. are similar to copying are thus, recoverable, while the costs associated with "CD mastering," "data processing services," and "document production database and materials for access to confidential client documents via web-based search tool" are not compensable. (*See* Dkt. 2154 at Ex. 20); *see e.g., Engineered Abrasives, Inc. v. Am. Mach. Prod. & Serv. Inc.*, No. 13 C 7342, 2015 WL 1281460, at *13 (N.D. Ill. Mar. 18, 2015) ("Processing Defendants' production so as to allow it to be more easily searchable, loading it into a review platform, and preparing searches for [Plaintiff]'s counsel to use in reviewing those documents, however, cannot be compared to making copies and is thus not compensable."). TT may also not recover the "miscellaneous" costs charged by Williams Lea Inc. because the Court cannot decipher what those costs are for or whether the services performed amount to copying. (*See* Dkt. 2154 at Ex. 20). Similarly, TT may not recover for the "document production" costs charged by Bluestar Computer Solutions, Inc., (*see id*.), as TT fails to provide any insight into what services Bluestar performed.

Next, TT's costs from Catalyst Repository Systems/Opentext associated with the "restoration of tapes, working copies of extracted data, RACKits for remote collection, [and] processing of extracted PSTs" are recoverable as akin to copying. (*See id*.) The remaining e-

discovery costs from Catalyst/Opentext, however, are noncompensable costs associated with consulting, processing and uploading data. (*See id.*) (listing services for "OCR, Production, [and] Catalyst Professional Consulting Services;" "Upload for Production, OCR, Professional Technical/Consulting Services, Processing & Loading;" "Image Production of Documents, Upload of incoming production; technical services related to data," etc.). While some courts have awarded OCR costs, *see e.g., Motorola*, 2021 WL 3489813, at *12–14, TT provides no way for the Court to separate out the OCR services associated with these invoices from the other noncompensable services. Likewise, TT lists costs for "[h]osting and [a] monthly license fee[,]" but without more information, TT cannot establish these services "were anything more than storage on its vendors' servers," which is noncompensable. *Artunduaga v. Univ. of Chicago Med. Ctr.*, No. 12 C 8733, 2017 WL 1355873, at *5 (N.D. Ill. Apr. 13, 2017) (declining to award e-discovery hosting costs). In total, the Court awards TT $117,666.33 in e-discovery costs. (*See* Dkt. 2154 at Ex. 20).

### b. Graphics and Animations

Exemplification costs may also be awarded under 28 U.S.C. § 1920(4) for graphic services used to prepare exhibits for hearings and trial. *See e.g., Cefalu v. Village of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000); *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir. 1994). TT submits a chart listing various charges from vendors TT used to design, create, and prepare slides, graphics, and animations for use at the Markman hearing and jury trial. (*See* Dkt. 2154 at Ex. 20). While the chart includes descriptions of the services performed, it does not include any information about the specific exhibit, slide deck, etc. that would allow the Court to determine whether it was reasonably necessary for the case. *See e.g., eSpeed*, 750 F.Supp.2d at 981 ("TT fails to provide sufficient information for the Court to show

11

that TT's exemplifications were reasonably necessary for the case. TT does not identify the exhibits created or indicate whether they were admitted at trial. Nor does TT identify the number of work hours attributed to each exhibit. Instead, TT merely provides a bill for general items such as 'Production Expenses' and 'Graphics and Animation Design' and asserts that whatever exhibits were created using these methods were necessary for use in the case."). In an attempt to cure this deficiency, TT submits internal timesheets from its vendors which, in some instances, contain specific reference to the witness and/or issue for which a slide deck, graphic, animation, video, or exhibit was created. (*See* Dkt. 2154 at Ex. 26). Nonetheless, it is unclear which of these timesheet entries relate to the costs TT seeks. Without more information, the Court declines to award TT graphics and animations costs, apart from the $98.09 in trial exhibit costs agreed by the parties. (*See* Dkt. 2154 at Ex. 20).

### E. Interpretation and Translation Fees

The Court has authority to tax the compensation of interpreters under 28 U.S.C. § 1920(6). TT seeks interpretation costs related to A. Kawashima's deposition. IBG challenges this request because Kawashima's deposition is primarily related to the CBM proceedings. As the Court has already observed, however, IBG used Kawashima's deposition at trial. (*See* Trial Transcript at 2396–2427). TT may thus recover the $788.34 in interpretation costs associated with the interpretation of Kawashima's deposition.

### F. Witness Fees

The Court has authority to tax costs for the time expert witnesses spend testifying at trial and preparing for and attending depositions. *See* 28 U.S.C. § 1920(3); Fed. R. Civ. P. 26(b)4)(E). For deposition preparation time, the Court "look[s] to the preparation time in relation to the deposition time, and the nature or complexity of a case, to establish a reasonable ratio of

preparation time to actual deposition time for the case." *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, 873 F. Supp. 2d 939, 956 (N.D. Ill. 2012) (internal quotations omitted). IBG proposes the Court tax costs at a ratio of 3 to 1. While TT challenges this ratio, it fails to propose an alternative ratio and with respect to certain expert witnesses, seemingly agrees that a 3 to 1 ratio is appropriate. (*See* Dkt. 2154 at 13). Multiple courts in this district have found that in complex, technical patent infringement cases, such as this one, a ratio of 3 to 1 preparation to deposition time is appropriate. *See e.g.*, *Se-Kure*, 873 F. Supp. 2d at 956; *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 0242, 2011 WL 5008425, at *5 (N.D. Ill. Oct. 20, 2011); *Nilssen v. Osram Sylvania, Inc.*, No. 01 C 3585, 2007 WL 257711, at *5 (N.D.Ill. Jan.23, 2007). Accordingly, the Court accepts IBG's proposed 3 to 1 rate. The Court addresses the parties' disputes with respect to each expert witness in turn.

Beginning with Christopher Thomas, the parties' only dispute concerns whether preparation costs associated with Mr. Thomas' second and third depositions may be taxed. IBG requested these subsequent depositions, which covered different topics than Mr. Thomas' initial deposition. Mr. Thomas attended and prepared for these depositions. Accordingly, these costs are properly taxed. In total, the Court awards TT $38,735.76 for Mr. Thomas' costs. (*See* Dkt. 2154 at Ex. 22).

Next, IBG takes issue with Craig Pirrong's block-billed invoice, which does not separate out the time he spent preparing for and attending depositions and time related to preparing a rebuttal expert report, which is not compensable. While TT presents evidence that Dr. Pirrong's deposition lasted 10.2 hours (Dkt. 2154 at Ex. 29), it does not provide any way for the Court to determine how many hours Dr. Pirrong spent preparing for his deposition. Thus, the Court only awards deposition attendance fees for Dr. Pirrong. IBG also challenges Dr. Pirrong's rate of $950

13

an hour and asks the Court to reduce it to match Mr. Thomas' rate of $350 per hour because Mr. Thomas and Dr. Pirrong testified on overlapping issues regarding infringement and invalidity. Dr. Pirrong, however, also uniquely testified as to indefiniteness, and unlike Mr. Thomas, holds a doctorate in economics. (*See id.* at Ex. 30). IBG also paid its own expert, Bernard Donefer, $650 per hour to opine on similar issues as Dr. Pirrong, and unlike Dr. Pirrong, Mr. Donefer does not have a doctorate degree. (*See id.* at Ex. 31). Considering Dr. Pirrong's qualifications, his rate of $950 per hour is reasonable. The Court awards TT $9,690.00 for Dr. Pirrong's costs.

Similarly, while IBG agrees that TT may recover for 34 hours of Larry Nixon's times, IBG challenges Mr. Nixon's rate of $875 per hour. Mr. Nixon's rate is similar to IBG's own comparable expert, Thomas Smegal, who charged $650 an hour. (*See id.* at Ex. 33). In light of Mr. Nixon's qualifications, which include 50 years of patent law experience and prosecuting over 3,000 patent applications, his rate of $650 per hour is reasonable. Accordingly, the Court awards TT $28,900.00 for Mr. Nixon's costs.

Next, IBG agrees that TT may recover costs for Dr. Mark Holder's deposition costs and trial appearance, but disputes the taxation of Dr. Holder's airfare from Hong Kong to Chicago for the trial. "A witness who travels by common carrier shall be paid for the actual expenses of travel" but must "utilize a common carrier at the most economical rate reasonably available." 28 U.S.C. 1821(c)(1). Dr. Holder, however, flew business class and first class. TT presents some evidence that an economy ticket from Hong Kong to Chicago is 1/4 to 1/6 the price of a business class ticket. (*See id*. at Ex. 34). Accordingly, the Court awards TT 1/6 of the cost of Dr. Holder's flight. In total, the Court awards TT $14,213.80 for Dr. Holder's costs. (*See* Dkt. 2154 at Ex. 22) (*see also* Dkt. 2154 at 14).

14

IBG maintains TT may not recover trial costs for Stephen Kunin because he never testified at trial. Recovery for witnesses who are prepared to testify at trial, but ultimately are never called is, however, permitted in this Circuit. *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987). As Mr. Kunin was available and ready to testify at trial, his trial costs are appropriately taxed. IBG also takes issue with Mr. Kunin's hourly rate of $875 for deposition preparation and attendance. Mr. Kunin opined on patent office procedure based on his 35 years of experience, including serving as the USPTO's Deputy Commissioner of Patent Examination and Policy for a decade. (*See* Dkt. 2154 at Ex. 37). IBG paid its own patent office expert, Nicholas Godici, $750 per hour, and unlike Mr. Godici, Mr. Kunin has a law degree. (*Id.* at Ex. 37, Ex. 38). Considering Mr. Kunin's qualifications, his hour rate is reasonable. The Court awards TT $19,162.50 for Mr. Kunin's costs. [3]

Finally, the parties agree TT may recover $35,080.83 for Ms. Lawton's costs and $30,557.21 for Mr. Fenn's costs, respectively.

## **CONCLUSION**

For the foregoing reasons, TT's bill of costs [2142] is granted in the amount of $490,231.98.

_____
Virginia M. Kendall
United States District Judge

Date: March 31, 2022

---

[3] IBG disputed taxing costs related to Mr. Kunin and Mr. Fenn's trial transportation and incidental expenses because TT did not provide receipts for these expenses. (Dkt. 2153 at 14). TT subsequently provided adequate support for these expenses. (Dkt. 2154 at Ex. 35). Accordingly, there is no dispute that these costs are taxable. (*See* Dkt. 2165 at 4).